CYNDY DAY-WILSON (SBN 135045)
cday-wilson@ci.eureka.ca.gov
**CITY ATTORNEY, EUREKA**
531 K Street
Eureka, CA 95501
Telephone:    707-441-4147
Facsimile:    707-441-4148

MICHAEL A. SWEET (SBN 184345)
msweet@foxrothschild.com
NATHAN A. SCHULTZ (SBN 223539)
nschultz@foxrothschild.com
JACK PRAETZELLIS (SBN 267765)
jpraetzellis@foxrothschild.com
**FOX ROTHSCHILD LLP**
345 California Street, Suite 2200
San Francisco, CA 94104
Telephone:    415-364-5540
Facsimile:    415-391-4436

Attorneys for CITY OF EUREKA
Creditor and Real Party in Interest

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>FLOYD E. SQUIRES III AND<br>BETTY J. SQUIRES,<br><br>               Debtors. | CASE NO. 17-10828 WJL 11<br><br>Chapter 11<br><br>**CHAPTER 11 PLAN OF LIQUIDATION<br>PROPOSED BY CITY OF EUREKA,<br>DATED MARCH 9, 2018** |

ACTIVE\53968989v2\5/18

# **TABLE OF CONTENTS**

**Page**

ARTICLE I DEFINITIONS AND RULES OF INTERPRETATION ......................................... 1

1.1    Definitions ....................................................................................................... 1

1.2    Rules of Interpretation .................................................................................... 1

1.3    Appendices and Operative Documents ......................................................... 2

ARTICLE II CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .......... 2

2.1    Introduction. ................................................................................................... 2

2.2    Unclassified Claims ....................................................................................... 3

    (a)    Administrative Claims ................................................................. 3

    (b)    Priority Tax Claims ..................................................................... 4

2.3    Classified Claims and Interests. .................................................................... 5

    (a)    Class 1:  Other Priority Claims ................................................... 5

    (b)    Class 2:  Secured Claims ............................................................. 5

    (c)    Class 3:  General Unsecured Claims ........................................... 5

    (d)    Class 4:  Debtors' Interests ......................................................... 6

2.4    Retention of Defenses Regarding Claims ..................................................... 6

2.5    Disputed, Contingent and Unliquidated Claims and Interests ...................... 6

ARTICLE III ACCEPTANCE OR REJECTION OF THIS PLAN ......................................... 7

3.1    Acceptance by an Impaired Class .................................................................. 7

3.2    Summary of Classes Voting on this Plan ...................................................... 7

3.3    Elimination of Vacant Classes ...................................................................... 7

3.4    Tabulation of Votes ....................................................................................... 7

3.5    Nonconsensual Confirmation ........................................................................ 7

ARTICLE IV EXECUTORY CONTRACTS ........................................................................ 8

4.1    No Assumption of Executory Contracts Under Plan ..................................... 8

4.2    Rejection of Executory Contracts .................................................................. 8

4.3    Filing of Rejection Claims ............................................................................ 8

4.4     Reservation of Rights ................................................................................. 8

ARTICLE V PLAN IMPLEMENTATION .......................................................................... 9

5.1     Plan Implementation .................................................................................. 9

5.2     Estate Manager .......................................................................................... 9

5.3     Debtors' Professionals ............................................................................... 9

5.4     Liquidating Trust ........................................................................................ 9

5.5     Vesting of Trust Assets ........................................................................... 11

5.6     Exempt Assets .......................................................................................... 11

5.7     Satisfaction of Allowed Claims and Debtors' Interests ......................... 11

5.8     Exemption from Certain Transfer Taxes and Further Transactions ...... 11

5.9     Final Decree ............................................................................................. 11

5.10    Effectuating Documents, Further Transactions ...................................... 12

ARTICLE VI PROCEDURES FOR RESOLVING DISPUTED CLAIMS ..................... 12

6.1     Allowance of Claims ............................................................................... 12

6.2     Claims Administration Responsibilities ................................................. 12

6.3     Claim Objection Deadline ....................................................................... 13

6.4     Contingent Claims .................................................................................... 13

6.5     Estimation of Claims ................................................................................ 13

6.6     Payments .................................................................................................. 13

ARTICLE VII PROVISIONS CONCERNING PLAN DISTRIBUTIONS ................... 14

7.1     Distributions on Account of Claims Allowed as of the Effective Date ............... 14

7.2     Distributions on Account of Claims Allowed After the Effective Date ............. 14

        (a)     Payments and Distributions on Disputed Administrative, Priority Tax
                and Other Priority Claims ......................................................... 14

        (b)     Vesting of Class 3 Beneficial Interests for Holders of Disputed
                General Unsecured Claims ........................................................ 14

7.3     Manner of Payment Under this Plan ....................................................... 14

7.4     Whole Dollars .......................................................................................... 14

| | | | |
|---|---|---|---|
| 7.5 | | Stop Payment | 14 |
| 7.6 | | Delivery of Distributions | 15 |
| | (a) | Record Date for Distributions | 15 |
| | (b) | Delivery of Distributions in General | 15 |
| 7.7 | | Returned Distributions | 15 |
| 7.8 | | Setoffs | 16 |
| 7.9 | | Withholding Taxes | 16 |
| 7.10 | | Allocation of Distributions | 16 |

ARTICLE VIII RESERVATION OF RIGHTS PENDING CONFIRMATION AND EFFECTIVE DATE ............................................................................................. 16

| | | |
|---|---|---|
| 8.1 | Withdrawal of Plan; Rights if Plan Not Confirmed or Effective Date Does Not Occur | 16 |
| 8.2 | No Admissions or Waiver | 17 |
| 8.3 | Term of Bankruptcy Injunction or Stays | 17 |

ARTICLE IX CONDITIONS TO EFFECTIVE DATE .............................................. 17

| | | |
|---|---|---|
| 9.1 | Conditions to Occurrence of Effective Date | 17 |

ARTICLE X RETENTION OF JURISDICTION .......................................................... 17

| | | |
|---|---|---|
| 10.1 | Retention of Jurisdiction | 17 |
| 10.2 | Jurisdiction Unaffected | 19 |
| 10.3 | Failure or Inability of Bankruptcy Court to Exercise Jurisdiction | 19 |

ARTICLE XI EFFECT OF CONFIRMATION OF PLAN ........................................ 20

| | | |
|---|---|---|
| 11.1 | Discharge | 20 |
| 11.2 | Binding Effect of Plan/Injunction | 21 |
| 11.3 | Exculpation | 23 |
| 11.4 | Injunction Against Interference with Plan | 23 |
| 11.5 | Judgments Void | 23 |
| 11.6 | Preservation of Causes of Action | 24 |
| 11.7 | Maintenance of Administrative Claim Status Post Discharge | 24 |

ACTIVE\53968989.v2-3/9/18

| 11.8 | No Limitation on Effect of Confirmation | 24 |
|------|-----------------------------------------|-----|

ARTICLE XII MISCELLANEOUS PROVISIONS .......................................................... 24

| 12.1 | Modification of this Plan | 24 |
|------|--------------------------|-----|
| 12.2 | Notices | 25 |
| 12.3 | Limitation of Notice | 26 |
| | (a) Notice of Confirmation | 26 |
| | (b) Post-Confirmation Date Service List—Additional Persons Entitled to Notice | 26 |
| | (c) Notice of Effective Date | 26 |
| 12.4 | Subordination | 27 |
| 12.5 | Headings | 27 |
| 12.6 | Nonseverability of Plan Provisions | 27 |
| 12.7 | Waiver or Estoppel | 27 |
| 12.8 | Conflicts | 27 |
| 12.9 | Computation of Time | 28 |
| 12.10 | Governing Law | 28 |
| 12.11 | Successors and Assigns | 28 |
| 12.12 | Good Faith | 28 |
| 12.13 | Post Confirmation Conversion or Dismissal | 28 |
| 12.14 | Post Confirmation Quarterly Fees | 29 |

The City of Eureka (the "City"), creditor and party-in-interest in the above-captioned case (the "Chapter 11 Case"), hereby proposes this Chapter 11 Plan of Liquidation dated March 9, 2018 (the "Plan") for the Estate of debtors Floyd E. Squires III and Betty J. Squires ("Debtors") pursuant to section 1121(b) of title 11 of the United States Code (the "Bankruptcy Code").

## DISCLAIMER

Reference is made to the Disclosure Statement accompanying this Plan, including the exhibits appended thereto, for a discussion of Debtors' history, business, financial condition, and summary and analysis of this Plan. All parties are encouraged to consult the Disclosure Statement and to read this Plan carefully and completely before voting to accept or reject this Plan.

## ARTICLE I

## DEFINITIONS AND RULES OF INTERPRETATION

1.1     Definitions.  The capitalized terms used herein and in the accompanying Disclosure Statement shall have the respective meanings set forth in the Glossary of Defined Terms attached as **Exhibit "A"** hereto, such meanings to be equally applicable to the singular and the plural forms of the terms defined, unless the context otherwise requires.  If capitalized terms used in this Plan are not defined in the Glossary of Defined Terms, then they are as defined in any other section of this Plan.  Unless otherwise provided in this Plan, all terms used herein shall have the meaning assigned to them under the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The rules of construction applicable to the Bankruptcy Code and the Bankruptcy Rules shall be applicable to this Plan.

1.2     Rules of Interpretation.  Any term used in this Plan that is not defined in this Plan, either in this Article I or elsewhere, but that is defined in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.  For purposes of this Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) to the extent a reference or description in this Plan to an Operative Document is inconsistent with the terms or conditions of that Operative Document, the terms and conditions of the Operative Document shall govern over the reference or description contained in this Plan; (c) any reference in this Plan to an existing document, schedule, Operative Document or exhibit Filed or to be Filed means such document, schedule, Operative Document, or exhibit, as it may have been or

1

may be amended, modified or supplemented as of the Confirmation Date in accordance with the terms hereof; (d) unless otherwise specified in a particular reference, all references in this Plan to Sections, Articles and exhibits are references to Sections, Articles and exhibits of or to this Plan; (e) the words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan in its entirety rather than to only a particular portion of this Plan; (f) the word "all" shall mean "any and all;" (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretations of this Plan; (h) the rules of construction set forth in Bankruptcy Code section 102 shall apply, including that the terms "includes," "shall include," and "including" are not limiting; (i) any exhibits and schedules to this Plan are incorporated into this Plan, and shall be deemed to be included in this Plan, regardless of when they are Filed; (j) any service or notice provided for in this Plan shall be provided as specified in Article XII hereof; (k) except to the extent that the Bankruptcy Code or other state or federal law is applicable, or to the extent the exhibits, or Operative Documents provide otherwise, the rights, duties and obligations under this Plan shall be governed, construed and enforced in accordance with the laws of the State of California; and (l) to the extent a reference or description in the Disclosure Statement to this Plan or an Operative Document is inconsistent with the terms or conditions of this Plan or the Operative Document, the terms and conditions of this Plan or the Operative Document(s), as applicable, shall govern over the reference contained in the Disclosure Statement.

       1.3     <u>Appendices and Operative Documents</u>. The Operative Documents are incorporated into and are a part of this Plan as if set forth in full herein.

**ARTICLE II**

**<u>CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS</u>**

       2.1     <u>Introduction</u>.

       (a)     The Debtors' Interests and all Claims, except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below. In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims and Priority Tax Claims are not required to be, and have not been, placed in any Class under the Plan.

       (b)     A Claim or interest is placed in a particular Class only to the extent that the Claim or interest falls within the description of that Class and is classified in other Classes to the extent

2

that any portion of the Claim or interest falls within the description of such other Classes. A Claim or interest is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or interest is Allowed in that Class and such Claim or interest has not been paid, released or otherwise settled prior to the Effective Date.

2.2 <u>Unclassified Claims</u>.

(a) <u>Administrative Claims</u>.

(1) <u>Pre-Confirmation Administrative Claims Bar Date</u>. The Holder of a Pre-Confirmation Administrative Claim must File with the Bankruptcy Court and serve on the Estate Manager, counsel for the Debtors, and counsel for the City, notice of such Pre-Confirmation Administrative Claim on or before the Pre-Confirmation Administrative Claims Bar Date. Such notice must include, at a minimum, (i) the name of the Holder of such Pre-Confirmation Administrative Claim, (ii) the basis of the Pre-Confirmation Administrative Claim, including why it is entitled to administrative priority under the Bankruptcy Code, and (iii) the amount of the Pre-Confirmation Administrative Claim. Failure to File and serve such notice timely and properly shall result in the Pre-Confirmation Administrative Claim being forever barred and discharged.

(2) <u>Post-Confirmation Administrative Claims Bar Date</u>. The Holder of a Post-Confirmation Administrative Claim must File with the Bankruptcy Court and serve on Liquidating Trustee, counsel for the Debtors, and counsel for the City, notice of such Post-Confirmation Administrative Claim on or before the Post-Confirmation Administrative Claims Bar Date. Such notice must include, at a minimum, (i) the name of the Holder of such Post-Confirmation Administrative Claim, (ii) the basis of the Post-Confirmation Administrative Claim, including why it is entitled to administrative priority under the Bankruptcy Code, and (iii) the amount of the Post-Confirmation Administrative Claim. Failure to File and serve such notice timely and properly shall result in the Post-Confirmation Administrative Claim being forever barred and discharged.

(3) <u>Payment Provisions</u>. Subject to the provisions of Bankruptcy Code sections 330(a), 331 and 503(b), each Holder of an Administrative Claim shall, either:

3

(A)     be paid from the Effective Date Funds in the Allowed amount of such Administrative Claim on, or as soon as reasonably practicable after, the later of (i) the Effective Date, or (ii) the date upon which such Administrative Claim becomes Allowed; or

(B)     receive such other treatment for its Administrative Claim as may be agreed by the Holder and the Estate Manager (from the Confirmation Date until the Effective Date) or Liquidating Trustee (from and after the Effective Date).

(4)     <u>US Trustee Fees</u>.  Notwithstanding the foregoing or anything to the contrary in this Plan:

(A)     Debtors (prior to the Confirmation Date) or the Estate Manager (from the Confirmation Date until the Effective Date) shall pay, or cause to be paid, all accrued US Trustee Fees on or before the Effective Date; and following the Effective Date, Liquidating Trustee shall be responsible for timely payment of all US Trustee Fees until such time as the Final Decree closing the Chapter 11 Case is entered and all US Trustee Fees due are paid in full.  US Trustee Fees are not subject to an allowance process; and

(B)     The Estate Manager (from the Confirmation Date until the Effective Date) or Liquidating Trustee (from and after the Effective Date) shall File with the Bankruptcy Court and serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) that the Chapter 11 Case remains open in such format as reasonably may be required by the United States Trustee.

(b)     <u>Priority Tax Claims</u>.  The legal and equitable rights of the Holders of Allowed Priority Tax Claims are unaltered by this Plan.  Each Holder of an Allowed Priority Tax Claim shall be entitled to receive, on account of such Allowed Priority Tax Claim, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Priority Tax Claim, equal quarterly, consecutive Cash payments from the Liquidating Trust beginning on the Effective Date, and continuing until completed no later than five (5) years after the Petition Date totaling the principal amount of such Claim plus interest on any outstanding balance from the Petition Date.  The rate of interest on such payments shall be determined under applicable nonbankruptcy law, pursuant to Bankruptcy Code section 511.

4

ACTIVE\53968989v2\

2.3     Classified Claims and Interests.

      (a)     Class 1:  Other Priority Claims.

*Claims in Class*:  Class 1 consists of Other Priority Claims against Debtor.

          (A)     *Treatment*:     The legal and equitable rights of the Holders of Allowed Other Priority Claims are unaltered by this Plan.  Each Holder of an Allowed Other Priority Claim shall, either:  (i) be paid from the Effective Date Funds in the Allowed amount of such Other Priority Claim on, or as soon as reasonably practicable after, the later of (x) the Effective Date, or (y) the date upon which such Other Priority Claim becomes Allowed; or (ii) receive such other treatment for its Other Priority Claim as may be agreed by the Holder and the Estate Manager (from the Confirmation Date until the Effective Date) or Liquidating Trustee (from and after the Effective Date).

*Impairment and Voting*:  Class 1 Claims are not Impaired, and the Holders of Allowed Other Priority Claims are conclusively deemed to have accepted this Plan, pursuant to Bankruptcy Code section 1126(f).  Therefore, the Holders of Allowed Class 1 Claims are not entitled to vote to accept or reject this Plan.

      (b)     Class 2:  Secured Claims.

*Claims in Class*:  Class 2 consists of the Secured Claims of Secured Parties.  Class 2 will be separated into sub-classes for each of the specific Secured Parties.

*Treatment*.  On the Effective Date, each Secured Party that is the Holder of a Secured Claim that is or becomes Allowed shall (i) retain the Lien securing such Secured Claim pending the sale, abandonment or other disposition of the collateral to which such Lien applies, and such Lien shall attach to any proceeds of such collateral to the same extent as it attached to the collateral, or (ii) otherwise be provided with the indubitable equivalent of such Secured Claim or such other treatment as is agreed by the Estate Manager or Liquidating Trustee and such Secured Party.

*Impairment and Voting*:  Class 2 Claims are Impaired under the Plan.  Therefore, the Holders of Allowed Class 2 Secured Claims are entitled to vote to accept or reject this Plan.

      (c)     Class 3:  General Unsecured Claims.

*Claims in Class*:  Class 3 consists of General Unsecured Claims against Debtor.

*Treatment*:  Unless otherwise agreed to by the Holder, each Holder of an Allowed Class 3 General Unsecured Claim shall receive on the later of the Effective Date or the date such Claim becomes Allowed, in full satisfaction, settlement, release and exchange of such Allowed General Unsecured Claim, its Pro Rata share of Class 3 Beneficial Interests in the Liquidating Trust.

*Impairment and Voting*:  Class 3 Claims are Impaired under the Plan.  Therefore, Holders of Allowed Class 3 General Unsecured Claims are entitled to vote to accept or reject this Plan.

(d)     Class 4:  Debtors' Interests.

*Claims in Class*:  Class 4 consists of the Debtors' Interests.

*Treatment*:     On the Effective Date, on behalf of the Debtors' Interests: (i) Debtors shall be re-vested with all Exempt Assets (or the value thereof, at the Estate Manager's election), and (ii) each of the Debtors shall receive 50% of the Class 4 Beneficial Interests in the Liquidating Trust.

*Impairment and Voting*:  The Plan treats Class 4 Interests as not Impaired and Debtors as being conclusively deemed to have accepted this Plan.  However, the City will provide a Ballot to Debtors for them to submit a provisional vote to accept or reject this Plan.  If Debtors provisionally vote to accept the Plan, then the Section 1129(a)(15)(B) Requirement will be waived and Debtors will receive their discharge on the Effective Date of the Plan without any obligation to contribute disposable income in accordance with section 1129(a)(15)(B) of the Bankruptcy Code.  If Debtors provisionally vote to reject the Plan and the Court determines that the Class 4 Interests are Impaired, then (i) the City intends to seek to confirm the Plan under section 1129(b) of the Bankruptcy Code, and (ii) the Section 1129(a)(15)(B) Requirement will remain in effect and Debtors will not receive their discharge unless and until they have satisfied any obligation to contribute disposable income in accordance with section 1129(a)(15)(B) of the Bankruptcy Code or as otherwise ordered by the Bankruptcy Court.

2.4     Retention of Defenses Regarding Claims.  Except as otherwise provided in this Plan, nothing shall affect the rights and defenses of Debtors, the Estate Manager or Liquidating Trustee, both legal and equitable, with respect to any Claims.

2.5     Disputed, Contingent and Unliquidated Claims and Interests.  Any Claim or interest that has been or is hereafter listed in the Schedules as disputed, contingent or unliquidated, and for which no Proof of Claim or Proof of Interest has been timely Filed by the Bar Date, is not considered Allowed and

shall be expunged without further action and without any further notice to or action, order or approval of the Bankruptcy Court.

## ARTICLE III

## ACCEPTANCE OR REJECTION OF THIS PLAN

3.1 <u>Acceptance by an Impaired Class</u>. In accordance with Bankruptcy Code section 1126(c) and except as provided in Bankruptcy Code section 1126(e), an Impaired Class of Claims shall be deemed to have accepted this Plan if this Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

3.2 <u>Summary of Classes Voting on this Plan</u>.

(a) The votes of Holders of Allowed Claims in Classes 2 and 3 will be solicited with respect to this Plan.

(b) Classes 1 and 4 shall be conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f). Acceptances of the Plan will not be solicited from the Holders of Class 1 Claims. The vote of Debtors will be provisionally solicited as set forth in section 2.3(d) of this Plan.

3.3 <u>Elimination of Vacant Classes</u>. Any Class of Claims that does not contain any Allowed Claims as of the Voting Record Date or any Claims temporarily Allowed under Bankruptcy Rule 3018(a) or otherwise shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Bankruptcy Code section 1129(a)(8).

3.4 <u>Tabulation of Votes</u>. The City will tabulate all votes on this Plan for the purpose of determining whether this Plan has been accepted by each Impaired Class entitled to vote.

3.5 <u>Nonconsensual Confirmation</u>. If any Impaired Class of Claims entitled to vote shall not accept the Plan by the requisite statutory majorities provided in Bankruptcy Code section 1126(c), the City reserves the right to amend the Plan in accordance with Section 12.1 hereof or undertake to have the Bankruptcy Court confirm the Plan under Bankruptcy Code section 1129(b) or both. With respect to any

7

ACTIVE/93768989.02/G75/18

Impaired Classes of Claims that are deemed to reject the Plan, the City shall request that the Bankruptcy Court confirm the Plan under Bankruptcy Code section 1129(b).

## ARTICLE IV

## EXECUTORY CONTRACTS

4.1 <u>No Assumption of Executory Contracts Under Plan</u>. This Plan does not provide for the assumption of any Executory Contracts under section 365 of the Bankruptcy Code. To the extent that the Estate Manager determines it would be necessary or otherwise in the best interests of the Estate for any Executory Contracts to be assumed or assigned under section 365 of the Bankruptcy Code, any such relief shall be the subject of a separate motion or other request to the Bankruptcy Court.

4.2 <u>Rejection of Executory Contracts</u>.

(a) Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to Bankruptcy Code sections 365(a) and 1123(b)(2), of the rejection of the Rejected Contracts.

(b) Any Holder of an Allowed Claim whose Claim arises from the rejection of a Rejected Contract shall have the rights of a Holder of an Allowed General Unsecured Claim and shall receive the treatment provided to Holders of Allowed Class 3 General Unsecured Claims as set forth in this Plan.

4.3 <u>Filing of Rejection Claims</u>. Any Person or Entity who believes they are entitled to assert a Claim against the Estate by virtue of the rejection of a Rejected Contract pursuant to this Article IV or a Final Order entered after the Confirmation Date, may File a Claim not later than thirty (30) days after Confirmation Date. If such Claim is not so Filed, it shall be forever barred. Nothing in this Section 4.3 shall affect the right of any party-in-interest to object to any Claim which has been improperly Filed or not Filed on a timely basis.

4.4 <u>Reservation of Rights</u>. Nothing contained in this Plan shall constitute an admission by any party that any contract or lease is an Executory Contract or that Debtors or the Liquidating Trust has any liability thereunder.

**ARTICLE V**

**PLAN IMPLEMENTATION**

5.1    Plan Implementation.  This Plan shall be implemented in all respects in a manner that is consistent with the requirements of section 1123(a) and other applicable provisions of the Bankruptcy Code.

5.2    Estate Manager.  The Estate Manager shall be appointed as of the Confirmation Date with the authority to administer the Estate pending the occurrence of the Effective Date.  The principal tasks for the Estate Manager from the Confirmation Date through the Effective Date will be to (a) stabilize the Assets, (b) provide to all potential Holders of Pre-Confirmation Administrative Claims notice of the Pre-Confirmation Administrative Claims Bar Date, (c) review and assess Administrative Claims, Priority Tax Claims and Other Priority Tax Claims to determine the amount of Cash necessary as of the Effective Date to satisfy or reserve for such Claims that may be Allowed, (d) obtain sufficient Cash via the sale of Assets pursuant to section 363 or obtaining credit pursuant to section 364 to satisfy or reserve for such Administrative Claims, Priority Tax Claims and Other Priority Claims that may be Allowed, and (e) take such other actions as may be necessary to satisfy the conditions to the Effective Date.  The Estate Manager may seek to employ professionals under sections 327 and 328 of the Bankruptcy Code to assist the Estate Manager in its duties.  The Estate Manager will be discharged on the Effective Date.

5.3    Debtors' Professionals.  On the Confirmation Date, the employment of Debtors' counsel and any other professional(s) employed by Debtors at the expense of the Estate, under sections 327 or 328 of the Bankruptcy Code or otherwise, shall terminate.

5.4    Liquidating Trust. On the Effective Date, the Liquidating Trust will be formed, and the Liquidating Trustee will be appointed all in accordance with the terms of the Liquidating Trust Agreement.

The Liquidating Trust is intended to qualify as a "liquidating trust" for United States federal income tax purposes under Treasury Regulations 301.7701-4(d).  For all United States federal income tax purposes, Trust Assets transferred to the Liquidating Trust (other than Assets allocable to Disputed Claims) shall be treated as (i) transferred, subject to any obligations relating to those Assets, directly to the Trust Beneficiaries (or, in the case of Debtors, as retained, subject to any obligations relating to those Assets), with each Trust Beneficiary receiving or retaining, as the case may be, an undivided interest in such Assets

Case: 17-10828    Doc# 153    Filed: 03/09/18    Entered: 03/09/18 15:44:24    Page 14 of 44
ACTIVE/93768989.v2/3/9/18

in accordance with their economic interests in such Assets, followed by (ii) a transfer of the Trust Assets by such Trust Beneficiaries to the Liquidating Trust in exchange for the Liquidating Trust beneficial interests, with Trust Beneficiaries being treated as grantors and owners of the Liquidating Trust. Accordingly, for United States federal income tax purposes all parties must treat (i) the Liquidating Trust as a grantor trust of which the holders of Liquidating Trust beneficial interests are the owners and grantors, and (ii) the Trust Beneficiaries as the direct owners of their respective undivided interests in the Trust Assets (other than any Assets allocable to Disputed Claims), consistent with their economic interests therein.

The sole purpose of the Liquidating Trust will be to liquidate the Trust Assets for the benefit of Trust Beneficiaries. The Liquidating Trust shall have a duration that is reasonably necessary for accomplishing its purpose, and in any event will be not be more than (5) five years from the date of creation of the Liquidating Trust, except that the term of the Liquidating Trust may be extended for a finite term, subject to the approval of the Bankruptcy Court upon a finding that the extension is necessary to the liquidating purpose of the Liquidating Trust, and each extension must be approved by the Bankruptcy Court within six (6) months of the beginning of the extended term. The Liquidating Trust will be required to distribute Distributable Net Proceeds at least annually to the Trust Beneficiaries, except as reasonably necessary to maintain the value of the Liquidating Trust assets or meet the claims and contingent liabilities (including Disputed Claims). The investment powers of Liquidating Trustee, other than those reasonably necessary to maintain the value of the Trust Assets and to further the liquidating purpose of the Liquidating Trust, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, or other temporary liquid investments, such as Treasury bills.

Liquidating Trustee will file the United States federal tax returns for the Liquidating Trust consistent with its classification as a grantor trust pursuant to Treasury Regulations section 1.671-4(a).

Liquidating Trustee, the Trust Beneficiaries and all other relevant parties shall be required to use consistent valuations of all Trust Assets for all United States federal income tax purposes. Liquidating Trustee shall make a good faith valuation of the Trust Assets as of the Effective Date.

All income of the Liquidating Trust shall be treated as subject to the United States federal income tax on a current basis. Allocations of taxable income of the Liquidating Trust (other than taxable income allocable to any Assets allocable to, or retained on account of, Disputed Claims) among the Trust

Beneficiaries shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all its Assets (valued at their tax book value, and other than Assets allocable to Disputed Claims) to the Trust Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Trust Assets. The tax book value of the Trust Assets for this purpose shall equal their fair market value on the Effective Date, adjusted in accordance with the United States federal income tax accounting principles. Liquidating Trustee may elect to treat any Trust Assets allocable to, or retained on account of, Disputed Claims as a "disputed ownership fund" within the meaning of Treasury Regulations section 1.468B-9 for United States federal income tax purposes.

5.5     Vesting of Trust Assets.  On the Effective Date, the Trust Assets will be vested in the Liquidating Trust.

5.6     Exempt Assets.  On the Effective Date, the Exempt Assets will be re-vested in the Debtors.

5.7     Satisfaction of Allowed Claims and Debtors' Interests.  On and after the Effective Date, unless such Claims shall be paid on or prior to such date, (i) Administrative Claims, Priority Tax Claims and Other Priority Claims shall be paid or reserved from the Effective Date Funds; (ii) Class 3 Beneficial Interests shall be vested in or reserved for Holders of Allowed General Unsecured Claims; and (iii) Class 4 Beneficial Interests shall be vested in Debtors.

5.8     Exemption from Certain Transfer Taxes and Further Transactions.  Pursuant to Bankruptcy Code section 1146(a), the issuance or exchange of any security, or the making or delivery of any instrument of transfer under, in furtherance, or in connection with this Plan, including, but not limited to, any deeds, bills of sale, assignments or other instruments of transfer, shall not be subject to any stamp tax, real estate transfer tax or similar tax.

5.9     Final Decree.  Notwithstanding otherwise applicable law, no party shall request entry of the Final Decree with respect to the Chapter 11 Case, unless and until:

(a)     The Effective Date has occurred;

11

(b)     All adversary proceedings and contested matters pending in the Chapter 11 Case have been resolved by entry of a Final Order;

(c)     All Claims have either: (i) become Allowed Claims and been paid in accordance with the treatment to be given such Allowed Claims pursuant to this Plan; or (ii) been disallowed by a Final Order or deemed to be a Disallowed Claim, in accordance with the terms of this Plan or the Bankruptcy Code;

(d)     If Debtors did not vote to accept this Plan, Debtors have satisfied the section 1129(a)(15)(B) Requirement unless otherwise ordered by the Bankruptcy Court; and

(e)     All distributions to be made under this Plan shall have been made to Holders of Allowed Claims and to Debtors in accordance with the requirements of this Plan.

5.10     <u>Effectuating Documents, Further Transactions</u>.  On and after the Confirmation Date, Debtors are authorized and directed to execute, deliver, file or record such contracts, securities, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of this Plan in the name of and on behalf of Debtors, without the need for any approvals, authorizations or consents except for those expressly required pursuant to this Plan.

**ARTICLE VI**

**<u>PROCEDURES FOR RESOLVING DISPUTED CLAIMS</u>**

6.1     <u>Allowance of Claims</u>.  The Estate Manager (from the Confirmation Date until the Effective Date) and Liquidating Trustee (on and after the Effective Date), shall have and retain the right to assert any and all rights and defenses Debtors had with respect to any Claim immediately prior to the Confirmation Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Case allowing such Claim.

6.2     <u>Claims Administration Responsibilities</u>.  Except as otherwise specifically provided in the Plan, the Estate Manager (from the Confirmation Date until the Effective Date) and Liquidating Trustee (on and after the Effective Date) shall have the sole authority: (1) to File, withdraw or litigate to judgment

12

any objections to Claims; (2) to settle or compromise any Disputed Claim without any further notice to, or action, order or approval by, the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to, or action, order or approval by, the Bankruptcy Court.

6.3     Claim Objection Deadline.  As soon as practicable, but in no event later than one hundred and eighty (180) days after the Effective Date (subject to being extended by the order of the Bankruptcy Court upon motion of Liquidating Trustee without notice or a hearing), objections to Claims shall be Filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made.

6.4     Contingent Claims.  Until such time as a Contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to distributions under the Plan.  The Holder of a Contingent Claim will only be entitled to a distribution under the Plan when and if such Contingent Claim becomes an Allowed Claim.

6.5     Estimation of Claims.  The Estate Manager (from the Confirmation Date until the Effective Date) or Liquidating Trustee (on and after the Effective Date) shall be permitted, at any time, to request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to  Bankruptcy Code section 502(c), regardless of whether any party previously had objected to such Claim or whether the Bankruptcy Court had ruled on such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during any litigation concerning any objection to such Claim, including during the pendency of any appeal relating to such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If such estimated amount constitutes a maximum limitation on the amount of such Claim, the Estate Manager or Liquidating Trustee may elect to pursue any supplemental proceedings to object to the allowance of such Claim.

6.6     Payments.  Payments and distributions to each Holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provision of this Plan with respect to the Class of Claims to which the Allowed Claim of such Holder belongs.

13

**ARTICLE VII**

**PROVISIONS CONCERNING PLAN DISTRIBUTIONS**

7.1     Distributions on Account of Claims Allowed as of the Effective Date.  Distributions under this Plan on account of Claims that are Allowed on or before the Effective Date, shall be made on the Effective Date, or on the first date thereafter as is reasonably practicable.

7.2     Distributions on Account of Claims Allowed After the Effective Date.

(a)     Payments and Distributions on Disputed Administrative, Priority Tax and Other Priority Claims.  Except as otherwise provided in this Plan, or any Final Order in the Chapter 11 Case, any Disputed Administrative Claim, Disputed Priority Tax Claim or Disputed Other Priority Claim that becomes Allowed after the Effective Date shall be satisfied from a reserve funded with the Effective Date Funds or by the Liquidating Trust.

(b)     Vesting of Class 3 Beneficial Interests for Holders of Disputed General Unsecured Claims.  Class 3 Beneficial Interests shall vest in the Holder of a Disputed General Unsecured Claim only at such time as and to the extent that such General Unsecured Claim is Allowed. Pending a determination of whether a Disputed General Unsecured Claim will be Allowed, Liquidating Trustee will reserve the Holder's share of any Distributable Proceeds in accordance with the Liquidating Trust Agreement.  Except as otherwise agreed by the relevant parties, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.

7.3     Manner of Payment Under this Plan.  Distributions of Cash to be made by the pursuant to this Plan shall be made by check drawn on the Estate's bank account, the Liquidating Trust's bank account, or by wire transfer from a domestic bank.

7.4     Whole Dollars.  Any other provision of this Plan to the contrary notwithstanding, no payments of cents will be made in connection with a distribution.  Whenever any payment of cents would otherwise be called for, the actual payment may reflect a rounding of such fraction to the nearest whole dollar (up or down).

7.5     Stop Payment.  Holders of Allowed Claims and Trust Beneficiaries shall have ninety (90) days from the check date to negotiate distribution checks issued under the terms of this Plan or the

14

Liquidating Trust Agreement, otherwise payment on such checks may be stopped, the applicable Claim or Beneficial Interest forfeited, and the funds shall be available for distribution in accordance with this Plan and the Liquidating Trust Agreement.

   7.6   Delivery of Distributions.

      (a)   Record Date for Distributions.  On the Distribution Record Date, the Claims Register shall be closed and any Person responsible for making distributions shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

      (b)   Delivery of Distributions in General.  Except as otherwise provided in this Plan, and notwithstanding any authority to the contrary, distributions to all Holders of Allowed Claims and Trust Beneficiaries shall be made to Holders of record as of the Distribution Record Date: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the signatory set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or Liquidating Trustee has been notified in writing of a change of address); (c) at the addresses set forth in any written notices of address changes delivered to the Estate Manager or Liquidating Trustee after the date of any related Proof of Claim; (d) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Estate Manager or Liquidating Trustee has not received a written notice of a change of address; or (e) on any counsel that has appeared in the Chapter 11 Case on the Holder's behalf.  Except as otherwise provided in this Plan, distributions under this Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in this Plan.  Absent willful misconduct or gross negligence, the Estate Manager and Liquidating Trustee shall not incur any liability on account of any distributions made under this Plan.

   7.7   Returned Distributions.  In the case of distributions to the Holders of Allowed Claims or Trust Beneficiaries that are returned due to an incorrect or incomplete address, Liquidating Trustee shall reserve for any such returned distribution for three (3) months from the date on which such distribution was returned.  Unless the Holder to which any such returned distribution was sent provides the Liquidating

Case: 17-10828   Doc# 153   Filed: 03/09/18   Entered: 03/09/18 15:44:24   Page 20 of 44
ACTIVE/93068989.02/SV/9/18

Trustee with acceptable proof of identity and an accurate address before the expiration of such three (3) month period, such Holder shall forfeit all rights thereto, and to any and all future distributions or rights under this Plan. In such event, the Claim for which such distributions were issued shall be treated as a Disallowed Claim and the funds shall be available for distribution in accordance with this Plan and the Liquidating Trust Agreement.

7.8     <u>Setoffs</u>.  The Liquidating Trustee may, but shall not be required to, set-off against any distributions to be made pursuant to this Plan to a Holder of an Allowed Claim or a Trust Beneficiary, Claims of any nature whatsoever that Estate may have, or may have had, against such Holder that have not been previously released, but neither the failure to do so, nor the allowance of any Claim held by such Holder, shall constitute a waiver or release by Debtors or the Liquidating Trustee of any such Claim the Estate may have, or may have had, against such Holder.

7.9     <u>Withholding Taxes</u>.  The Liquidating Trustee shall be entitled but not required to deduct any applicable federal or state withholding taxes from any payments made with respect to Allowed Claims or Beneficial Interests, as appropriate, and shall otherwise comply with Bankruptcy Code section 346.

7.10     <u>Allocation of Distributions</u>.  Distributions on account of Allowed Claims shall, for tax purposes, be treated as allocated first to principal, and thereafter to interest only to the extent that the entire principal amount has been recovered, if applicable.

**ARTICLE VIII**

**<u>RESERVATION OF RIGHTS PENDING CONFIRMATION AND EFFECTIVE DATE</u>**

8.1     <u>Withdrawal of Plan; Rights if Plan Not Confirmed or Effective Date Does Not Occur</u>. The City reserves the right to revoke or withdraw this Plan prior to the Confirmation Date and to File amended or alternative plans of reorganization.  If the City revokes or withdraws this Plan prior to the Confirmation Date then:  (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), rejection of Executory Contracts affected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims or interests by or against Debtors, the Estate or any Person or Entity; (b) prejudice in any manner the rights of any Person or Entity in any further proceedings

Case: 17-10828   Doc# 153   Filed: 03/09/18   Entered: 03/09/18 15:44:24   Page 21 of
44
ACTIVE\53968989.v2-3/9/18

involving Debtors; or (c) constitute an admission, acknowledgment, offer or undertaking of any sort by any Person or Entity.

8.2     No Admissions or Waiver.  Without limiting the generality of any similar provision in this Plan, notwithstanding anything in the Plan to the contrary, nothing contained in the Plan or in the Disclosure Statement shall be deemed an admission any Person or Entity with respect to any matter set forth herein.

8.3     Term of Bankruptcy Injunction or Stays.  All injunctions or stays provided for in the Chapter 11 Case under Bankruptcy Code sections 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date unless the Bankruptcy Court shall order otherwise.

## ARTICLE IX

## CONDITIONS TO EFFECTIVE DATE

9.1     Conditions to Occurrence of Effective Date.  Each of the following is a condition precedent to the occurrence of the Effective Date, unless waived in writing by the City:

(a)     The Confirmation Order, which shall be in form and substance reasonably acceptable to Debtor, shall have been entered by the Bankruptcy Court and shall have become a Final Order;

(b)     The Pre-Confirmation Administrative Claims Bar Date shall have passed;

(c)     The Estate Manager shall have sufficient Cash to pay or reserve for all Pre-Confirmation Administrative Claims and all estimated Post-Confirmation Administrative Claims;

(d)     The Liquidating Trust Agreement shall have been executed; and

(e)     Any outstanding US Trustee Fees shall have been paid in full.

## ARTICLE X

## RETENTION OF JURISDICTION

10.1     Retention of Jurisdiction.  Except to the extent otherwise expressly set forth herein, the Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case following the Confirmation Date for the following purposes, it being expressly intended that such retention of jurisdiction shall in all cases hereafter set forth, extend to any actions or proceedings commenced prior or subsequent to the Confirmation Date

17

and/or the Effective Date whether by Debtor, the Estate Manager, Liquidating Trustee or the parties specified herein:

(a) To hear and determine any objections to the allowance of Claims, including any objections with respect to any Claims which have been reinstated or assumed in accordance with the terms of this Plan;

(b) To determine any and all applications for the rejection or assumption and assignment of Executory Contracts to which either or both of the Debtors is/are a party or with respect to which either or both of the Debtors may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

(c) To modify this Plan pursuant to Bankruptcy Code section 1127 or to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order to the extent authorized by the Bankruptcy Code;

(d) To hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of this Plan;

(e) To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of the Bankruptcy Court entered in the Chapter 11 Case;

(f) To adjudicate all controversies concerning the classification of any Claim or interest;

(g) To liquidate or estimate damages in connection with any disputed, contingent or unliquidated Claim;

(h) To adjudicate all Claims to a security or ownership interest in any of the Assets, or in any proceeds thereof,

(i) To adjudicate all Claims or controversies arising out of any purchases, sales or contracts made or undertaken by Debtor;

(j) To determine all questions and disputes regarding recovery of, and entitlement to, any property of Debtor, or in any proceeds thereof;

(k)     To adjudicate all Causes of Action with respect to which Debtors, the Estate Manager, or Liquidating Trust is a party, whether or not such Claim or controversy is raised or filed before or after the Effective Date;

(l)     To determine issues and disputes concerning entitlement to distributions to be made under and pursuant to this Plan;

(m)     To enter any order, including injunctions, necessary to enforce the title, rights and powers of Debtors, the Estate Manager or Liquidating Trustee or the rights of any Person or Entity hereunder and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Bankruptcy Court may deem necessary or appropriate;

(n)     To determine such other matters as may be provided for in the Confirmation Order and this Plan, or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(o)     To enter a Final Decree closing the Chapter 11 Case;

(p)     To enforce the provisions of the Pre-Confirmation Administrative Claims Bar Date, the Post-Confirmation Administrative Claims Bar Date or any other Bar Date entered by the Bankruptcy Court;

(q)     To make such orders as are necessary or appropriate to carry out the provisions of this Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions hereof; and

(r)     Without limiting the generality of any of the foregoing, to hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code sections 345, 505 and 1146.

10.2    <u>Jurisdiction Unaffected</u>.  The occurrence of the Effective Date and/or the entry of a Final Decree shall not divest the Bankruptcy Court of any jurisdiction otherwise retained under this Article X or the Confirmation Order.

10.3    <u>Failure or Inability of Bankruptcy Court to Exercise Jurisdiction</u>. If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising under, arising in or related to the Chapter 11 Case, including any of the matters set forth in

19

ACTIVE/93968989.02/2/9/18

the Plan, the Plan shall not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction with respect to such matter.

## ARTICLE XI

### EFFECT OF CONFIRMATION OF PLAN

11.1 Discharge.

(a) IN CONJUNCTION WITH BANKRUPTCY CODE SECTION 1141, EXCEPT AS OTHERWISE PROVIDED FOR HEREIN, THE RIGHTS AFFORDED HEREIN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION, DISCHARGE AND RELEASE OF CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER AGAINST DEBTORS, THE ESTATE MANAGER, THE LIQUIDATING TRUST, LIQUIDATING TRUSTEE, THE TRUST ASSETS, THE EXEMPT ASSETS, AND ANY OTHER ASSETS OF THE ESTATE, INCLUDING ANY INTEREST ACCRUED ON SUCH CLAIMS FROM AND AFTER THE PETITION DATE; **PROVIDED, HOWEVER, THAT IF DEBTORS DO NOT PROVISIONALLY VOTE TO ACCEPT THE PLAN, THEN THEY SHALL NOT BE INDIVIDUALLY DISCHARGED UNLESS AND UNTIL (1) THEY HAVE SATISFIED ANY OBLIGATION TO CONTRIBUTE DISPOSABLE INCOME IN ACCORDANCE WITH SECTION 1129(a)(15)(B) OF THE BANKRUPTCY CODE, OR (2) AS OTHERWISE ORDERED BY THE BANKRUPTCY COURT**.

(b) WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EXCEPT AS PROVIDED IN THE CONFIRMATION ORDER, ON THE EFFECTIVE DATE, DEBTORS, THE ESTATE MANAGER, THE LIQUIDATING TRUST, LIQUIDATING TRUSTEE, THE TRUSTE ASSETS, THE EXEMPT ASSETS, AND ANY OTHER ASSETS OF THE ESTATE SHALL BE DISCHARGED FROM ALL CLAIMS OR OTHER DEBTS THAT AROSE BEFORE THE EFFECTIVE DATE, AND ALL DEBTS OF THE KIND SPECIFIED IN BANKRUPTCY CODE SECTIONS 502(g), 502(h) OR 502(i), WHETHER OR NOT: (X) A PROOF OF CLAIM BASED ON SUCH A DEBT HAS BEEN FILED, OR DEEMED TO HAVE BEEN FILED, UNDER BANKRUPTCY CODE SECTIONS 501 OR 1111(a); (Y) A CLAIM BASED ON SUCH DEBT IS

Case: 17-10828 Doc# 153 Filed: 03/09/18 Entered: 03/09/18 15:44:24 Page 25 of 44
ACTIVE\53968989.v2\3/9/18

ALLOWED UNDER BANKRUPTCY CODE SECTION 502; OR (Z) THE HOLDER OF A CLAIM BASED ON SUCH DEBT HAS ACCEPTED THE PLAN; **PROVIDED, HOWEVER, THAT IF DEBTORS DO NOT PROVISIONALLY VOTE TO ACCEPT THE PLAN, THEN THEN THEY SHALL NOT BE INDIVIDUALLY DISCHARGED UNLESS AND UNTIL (1) THEY HAVE SATISFIED ANY OBLIGATION TO CONTRIBUTE DISPOSABLE INCOME IN ACCORDANCE WITH SECTION 1129(a)(15)(B) OF THE BANKRUPTCY CODE, OR (2) AS OTHERWISE ORDERED BY THE BANKRUPTCY COURT**.

(c)     EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, (I) ON THE EFFECTIVE DATE, ALL CLAIMS AGAINST DEBTORS WHICH AROSE BEFORE THE EFFECTIVE DATE SHALL BE SATISFIED, DISCHARGED AND RELEASED IN FULL, AND (II) ALL PERSONS SHALL BE PRECLUDED FROM ASSERTING AGAINST DEBTORS, THE ESTATE MANAGER, THE LIQUIDATING TRUST, LIQUIDATING TRUSTEE, THE TRUST ASSETS, THE EXEMPT ASSETS, AND ANY OTHER ASSETS OF THE ESTATE ANY OTHER OR FURTHER CLAIMS OR INTERESTS BASED UPON ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE, AS WELL AS ANY DEBT OF A KIND SPECIFIED IN BANKRUPTCY CODE SECTIONS 502(g), 502(h) OR 502(i), IRRESPECTIVE OF WHETHER (X) A PROOF OF CLAIM BASED ON SUCH A DEBT HAS BEEN FILED, OR DEEMED TO HAVE BEEN FILED, UNDER BANKRUPTCY CODE SECTIONS 501 OR 1111(a), (Y) SUCH CLAIM IS ALLOWED UNDER BANKRUPTCY CODE SECTION 502, OR (Z) THE HOLDER OF THE CLAIM HAS ACCEPTED THE PLAN; **PROVIDED, HOWEVER, THAT IF DEBTORS DO NOT PROVISIONALLY VOTE TO ACCEPT THE PLAN, THEN THEY SHALL NOT BE INDIVIDUALLY DISCHARGED UNLESS AND UNTIL (1) THEY HAVE SATISFIED ANY OBLIGATION TO CONTRIBUTE DISPOSABLE INCOME IN ACCORDANCE WITH SECTION 1129(a)(15)(B) OF THE BANKRUPTCY CODE, OR (2) AS OTHERWISE ORDERED BY THE BANKRUPTCY COURT**.

11.2     Binding Effect of Plan/Injunction.

ACTIVE\53968989.v2-3/9/18

(a)     UPON THE EFFECTIVE DATE, BANKRUPTCY CODE SECTION 1141 SHALL BECOME APPLICABLE WITH RESPECT TO THE PLAN AND THE PLAN SHALL BE BINDING ON ALL PARTIES TO THE FULLEST EXTENT PERMITTED BY BANKRUPTCY CODE SECTION 1141(a).  IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1141, (i) THE TRUST ASSETS SHALL BE VESTED IN THE LIQUIDATING TRUST FREE AND CLEAR OF ALL CLAIMS, LIENS AND INTERESTS OF CREDITORS AND DEBTORS, EXCEPT WITH RESPECT TO LIENS HELD BY HOLDERS OF ALLOWED SECURED CLAIMS, AND (ii) THE EXEMPT ASSETS SHALL BE VESTED IN DEBTORS FREE AND CLEAR OF ALL CLAIMS, LIENS AND INTERESTS OF CREDITORS; **PROVIDED, HOWEVER, THAT IF DEBTORS DO NOT PROVISIONALLY VOTE TO ACCEPT THE PLAN, THEN THEY SHALL NOT BE INDIVIDUALLY DISCHARGED UNLESS AND UNTIL (1) THEY HAVE SATISFIED ANY OBLIGATION TO CONTRIBUTE DISPOSABLE INCOME IN ACCORDANCE WITH SECTION 1129(a)(15)(B) OF THE BANKRUPTCY CODE, OR (2) AS OTHERWISE ORDERED BY THE BANKRUPTCY COURT**.

(b)     UPON THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES SHALL BE PERMANENTLY ENJOINED BY THE PLAN FROM (1) COMMENCING OR CONTINUING ANY ACTION, EMPLOYING ANY PROCESS, ASSERTING OR UNDERTAKING AN ACT TO COLLECT, RECOVER, OR OFFSET, DIRECTLY OR INDIRECTLY, ANY CLAIM, RIGHTS, CAUSES OF ACTION, LIABILITIES OR INTERESTS IN OR AGAINST DEBTORS, THE ESTATE MANAGER, THE LIQUIDATING TRUST, LIQUIDATING TRUSTEE, THE TRUSTE ASSETS, THE EXEMPT ASSETS, AND ANY OTHER ASSETS OF THE ESTATE, BASED UPON ANY ACT, OMISSION, TRANSACTION OR OTHER ACTIVITY THAT OCCURRED BEFORE THE EFFECTIVE DATE, (2) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST ANY ASSETS DISTRIBUTED OR TO BE DISTRIBUTED UNDER THE PLAN OTHER THAN AS PERMITTED UNDER THE PLAN, AND (3) WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ASSERTING ANY CLAIMS AGAINST DEBTORS, THE ESTATE MANAGER, THE LIQUIDATING TRUST, LIQUIDATING TRUSTEE, THE TRUSTE ASSETS, THE EXEMPT ASSETS, AND ANY OTHER ASSETS OF THE ESTATE

ACTIVE/93068989.v2

BASED ON SUCCESSOR LIABILITY OR SIMILAR OR RELATED THEORY; **PROVIDED, HOWEVER, THAT IF DEBTORS DO NOT PROVISIONALLY VOTE TO ACCEPT THE PLAN, THEN THEY SHALL NOT BE INDIVIDUALLY DISCHARGED UNLESS AND UNTIL (1) THEY HAVE SATISFIED ANY OBLIGATION TO CONTRIBUTE DISPOSABLE INCOME IN ACCORDANCE WITH SECTION 1129(A)(15)(B) OF THE BANKRUPTCY CODE, OR (2) AS OTHERWISE ORDERED BY THE BANKRUPTCY COURT**.

(c)     ON AND AFTER THE EFFECTIVE DATE, EACH HOLDER OF ANY CLAIM AGAINST OR INTEREST IN DEBTOR IS PERMANENTLY ENJOINED FROM TAKING OR PARTICIPATING IN *ANY* ACTION THAT WOULD INTERFERE OR OTHERWISE HINDER IMPLEMENTION OF THIS PLAN, THE CONFIRMATION ORDER OR THE LIQUIDATING TRUST AGREEMENT IN ACCORDANCE WITH THE TERMS THEREOF.

11.3     Exculpation.     None of the Exculpated Parties shall have or incur any liability to Debtors or any Holder of a Claim or interest, or any other party-in-interest, or any of their successors or assigns, for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of the Chapter 11 Case, the pursuit of confirmation of this Plan, or the Consummation of this Plan, except and solely to the extent such liability is based on fraud, gross negligence or willful misconduct.  The Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to any of their duties and responsibilities under this Plan or in the context of the Chapter 11 Case.  Neither Debtors nor any Holder of a Claim or interest, or any other party-in-interest, shall have any right of action against the Exculpated Parties, for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of this Plan, the Consummation of this Plan or the administration of this Plan, except to the extent arising from fraud.

11.4     Injunction Against Interference with Plan.  Upon the Effective Date, Debtors and all Holders of Claims against the Estate and any successors or assigns thereof shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.

11.5     Judgments Void.  Any judgment obtained before or after the Effective Date in any court other than the Bankruptcy Court shall be null and void as a determination of liability of Debtors with respect to any debt treated by the Plan.

23

11.6 <u>Preservation of Causes of Action</u>. Pursuant to Bankruptcy Code section 1123(b), Liquidating Trustee as representative of the Estate shall retain and reserve the right to enforce all rights to commence and pursue Causes of Action whether arising prior to or after the Petition Date, and whether pending as of or Filed after the Effective Date, in any court or other tribunal. Unless a Cause of Action is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, Liquidating Trustee expressly reserves all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to any Causes of Action upon Confirmation or the Effective Date. No Person or Entity may rely on the absence of a specific reference in the Plan, or the Disclosure Statement to any Cause of Action against them as an indication that Liquidating Trustee will not pursue any and all available Causes of Action against such Person or Entity. Liquidating Trustee expressly reserves all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan.

11.7 <u>Maintenance of Administrative Claim Status Post Discharge</u>. Notwithstanding any discharge granted to Debtors, Allowed Administrative Claims shall maintain their administrative priority status under Bankruptcy Code section 507(a)(2) until paid in full.

11.8 <u>No Limitation on Effect of Confirmation</u>. Nothing contained in the Plan or the Disclosure Statement will limit, waive or restrict in any way the effect of Confirmation as set forth in Bankruptcy Code section 1141. Confirmation will bind Debtors, all Creditors, and other parties in interest to the provisions of the Plan, whether or not the Claim of such Creditor is Impaired under the Plan and whether or not such Creditor has accepted the Plan and whether or not a Proof of Claim has been Filed or deemed to have been Filed under Bankruptcy Code sections 501 or 1111(a), or such Claim is Allowed under Bankruptcy Code section 502.

**ARTICLE XII**

**<u>MISCELLANEOUS PROVISIONS</u>**

12.1 <u>Modification of this Plan</u>.

24

ACTIVE\53768989.v2 3/9/18

(a)     The City may alter, amend or modify the Plan at any time before the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Bankruptcy Code sections 1122 and 1123, and the City shall have complied with Bankruptcy Code section 1125.  However, the Bankruptcy Court may require a new Disclosure Statement and/or re-voting on the Plan if the City modifies the Plan before Confirmation.

(b)     The City may also seek to alter, amend or modify the Plan at any time after Confirmation so long as (1) the Plan has not been substantially consummated, (2) the Plan, as altered, amended or modified, satisfies the conditions of Bankruptcy Code sections 1122 and 1123, and (3) the Bankruptcy Court authorizes the proposed alteration, amendment or modification after notice and a hearing under Bankruptcy Code section 1129.

(c)     A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.  The City may make appropriate technical, non-material modifications to the Plan or the Disclosure Statement without further order or approval of the Bankruptcy Court, provided that such technical modifications do not adversely affect the treatment of Debtors or Holders of Claims.

(d)     The City further reserves the right to modify the treatment of any Allowed Claims at any time after the Effective Date of the Plan upon the consent of the Creditor whose Allowed Claim treatment is being modified, so long as no other Creditors are materially adversely affected.

(e)     The City reserves the right, in accordance with the Bankruptcy Code, to amend, alter or modify this Plan before or after the Confirmation Date, including to make any amendments, alterations or modifications necessary to satisfy the requirements of Bankruptcy Code section 1129(b).

12.2    <u>Notices</u>.  Except as otherwise set forth in Section 13.3 below, all notices, requests, elections or demands in connection with this Plan, including any change of address of any Holder of a Claim for the purposes of receiving any distributions under this Plan, shall be in writing and shall be delivered personally or by facsimile, electronic mail or overnight courier (confirmed by first class mail or express mail) or mailed by first class mail.  Such notice shall be deemed to have been given when received or, if mailed by first class mail, seven (7) days after the date of mailing, or if express mailed, the next Business Day

following the date of mailing and addressed to the Estate Manager (from the Confirmation Date until the Effective Date) or Liquidating Trustee (from and after the Effective Date) at the address set forth in the Plan Supplement.

All notices and requests to Holders of Claims of any Class shall be sent to them at their known address. Any Holder of a Claim of any Class may designate in writing any other address for purposes of this Section 12.2, which designation shall be effective upon receipt.

12.3    Limitation of Notice.

(a)    Notice of Confirmation.   The Estate Manager shall serve notice of the Confirmation and the Pre-Confirmation Administrative Claims Bar Date, which notice shall be deemed to be good and sufficient notice, with no requirement for any additional or further notice, if mailed to all known Holders of Claims (which have not become Disallowed Claims), all known Holders of Administrative Claims, and the Debtors within ten (10) Business Days after the Confirmation Date.

(b)    Post-Confirmation Date Service List—Additional Persons Entitled to Notice. Except as set forth in Sections 12.3(a) and 12.3(c) hereof, from and after the Confirmation Date, notices of appearances and demands for service of process Filed with the Bankruptcy Court prior to such date shall no longer be effective, and no further notices, shall be required to be sent to such parties, unless such parties File a new notice of appearance and demand for service of process dated subsequent to the Confirmation Date, which subsequent notice and demand must be Filed with the Bankruptcy Court and served upon the Estate Manager (from the Confirmation Date until the Effective Date) or Liquidating Trustee (from and after the Effective Date).

(c)    Notice of Effective Date.  When all the conditions contained in Section 9.1 have been satisfied or waived, the Estate Manager shall File with the Bankruptcy Court and serve a notice of the occurrence of the Effective Date of the Plan, which notice shall (i) include notice of the Post-Confirmation Administrative Claims Bar Date, and the rejection of the Rejected Contracts, and (ii) be deemed to be good and sufficient notice, with no requirement for any additional or further notice, if mailed to all known Holders of Claims (which have not become Disallowed Claims), all known Holders of Administrative Claims, and the Debtors.

12.4     Subordination.  Nothing in this Plan shall in any way be deemed to have impaired, altered or otherwise affected the rights of Debtors, Estate Manager or Liquidating Trustee to enforce any right of subordination that may exist by agreement or otherwise, including under Bankruptcy Code section 510.

12.5     Headings.  The headings used in this Plan are inserted for convenience only and neither constitutes a portion of this Plan nor in any manner affect the provisions of this Plan.

12.6     Nonseverability of Plan Provisions.  If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power, at the request of the City and subject to the consent of any Person or Entity adversely affected thereby, to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (a) valid and enforceable pursuant to its terms; (b) integral to this Plan and may not be deleted or modified without the consent of the City and any other Person or Entity affected by such provision; and (c) nonseverable and mutually dependent.

12.7     Waiver or Estoppel.  Debtors and each Holder of a Claim shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Debtors' Interests should be Allowed or treated in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the City, Debtors or their respective counsel, or any other Entity, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

12.8     Conflicts.  To the extent that any provision of the Disclosure Statement, any amendments to the Plan, the Liquidating Trust Agreement, the Plan Supplement, or any order (other than the Confirmation Order) referenced in this Plan (or any exhibits, schedules, appendices, supplements or

amendments to any of the foregoing), conflict with or is in any way inconsistent with any provision of this Plan, this Plan shall govern and control, unless expressly set forth herein.

12.9    Computation of Time.  In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

12.10    Governing Law.  Except to the extent that the Bankruptcy Code or any other federal law is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California.

12.11    Successors and Assigns.  The rights and obligations of any Person or Entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person or Entity.

12.12    Good Faith.  Confirmation of the Plan will constitute a finding that the Plan has been proposed by the City in good faith and in compliance with all applicable provisions of the Bankruptcy Code.

12.13    Post Confirmation Conversion or Dismissal.  The Debtors, a Creditor or party in interest may bring a motion to convert or dismiss the Chapter 11 Case under Bankruptcy Code section 1112(b), after the Plan is confirmed, if there is a default in performance of the Plan or if cause exists under Bankruptcy Code section 1112(b).  If the Bankruptcy Court orders the Chapter 11 Case converted to a case under chapter 7 of the Bankruptcy Code after the Confirmation Date but before the Effective Date, then all property that had been Assets, and that has not been disbursed or distributed pursuant to the Plan, will re-vest in the chapter 7 estate, and the automatic stay pursuant to Bankruptcy Code section 362(a) will be re-imposed as to such re-vested property only to the extent that relief from stay was not previously granted by the Bankruptcy Court during the Chapter 11 Case.  In addition, any Allowed Administrative Claims which are not paid as of the date of any conversion shall continue to be entitled to administrative priority under Bankruptcy Code section 507(a)(1) in any such subsequent chapter 7 case to which the Chapter 11 Case is converted.

///

///

///

ACTIVE/93768989.v2

1      12.14   Post Confirmation Quarterly Fees.  US Trustee Fees continue to be payable to the Office

2  of the United States Trustee after the Confirmation Date until such time as the Chapter 11 Case is

3  converted, dismissed or closed pursuant to Final Decree.

4          DATED this 9th day of March, 2018.

5                                              **The City of Eureka**

6

7                                      By_____*/s/ Cyndy Day-Wilson*_____
                                           Cyndy Day-Wilson, City Attorney

8  Respectfully submitted by:

9  **FOX ROTHSCHILD LLP**

10 By:  ___*/s/ Michael A. Sweet*_____
          MICHAEL A. SWEET (SBN 184345)
11        msweet@foxrothschild.com
          NATHAN A. SCHULTZ
12        nschultz@foxrothschild.com
          JACK PRAETZELLIS (SBN 267765)
13        jpraetzellis@foxrothschild.com
          **FOX ROTHSCHILD LLP**
14        345 California Street, Suite 2200
          San Francisco, CA 94104

15

16 *Counsel for the City of Eureka*

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

**GLOSSARY OF DEFINED TERMS**

1.      "Administrative Claim" means a Claim for costs and expenses of administration, pursuant to Bankruptcy Code sections 503(b), 507(a)(2), 507(b) or 546(c)(2), including, but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of Debtors (such as wages, salaries or commissions for services, and payments for goods and services); (b) the value of any goods received by Debtors within twenty (20) days before the Petition Date, which goods have been sold to Debtors in the ordinary course of business; (c) compensation and reimbursement of expenses for legal, financial advisory, accounting and other services, including but not limited to, pursuant to Bankruptcy Code sections 328, 330(a) or 331 or otherwise for the period commencing on the Petition Date and ending on the Effective Date; (d) all fees and charges assessed against the Estate pursuant to chapter 123 of the Judicial Code and 28 U.S.C. § 1930; and (e) all Bankruptcy Court approved requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case, pursuant to Bankruptcy Code sections 503(b)(3), (4) and (5).

2.      "Allowed" means, with reference to any Claim:  (a) any Claim against Debtors or the Estate that has been listed by Debtors in its Schedules, as such Schedules may be amended by Debtors or the Estate Manager or Liquidating Trustee from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been Filed; (b) any Claim allowed (i) under this Plan, (ii) by Final Order, or (iii) as to which the liability of Debtors and the amount thereof are determined by a final order of a court of competent jurisdiction other than the Bankruptcy Court; or (c) any Claim as to which a Proof of Claim has been timely Filed in a liquidated amount with the Bankruptcy Court, pursuant to the Bankruptcy Code or any order of the Bankruptcy Court, or has been Filed with leave of the Bankruptcy Court after notice and a hearing, provided that no objection to the allowance of such Claim or motion to expunge such Claim has been interposed by any party in interest before any final date for the Filing of such objections or motions set forth in this Plan, the Confirmation Order or other order of the Bankruptcy Court.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount

1

equal to the amount of any valid and enforceable Claim that Debtors may hold against the Holder thereof, to the extent such Claim may be validly offset, recouped or otherwise reduced under applicable law.

3. "Assets" means all of Debtors' right, title and interest of any nature in property of any kind, wherever located, as specified in Bankruptcy Code section 541, which includes, without limitation, the Avoidance Actions and all of Debtors' rights and benefits under any license, permit, development order, zoning approval or other governmental or quasi-governmental undertaking or action.

4. "Avoidance Actions" means all Causes of Action of the Estate under the Bankruptcy Code, including but not limited to those set forth in sections 506(c), 506(d), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553, regardless of whether or not such actions have been commenced prior to the Effective Date.

5. "Ballot" means a ballot in the form or forms approved by the Bankruptcy Court pursuant to the Disclosure Statement Order on which the Holder of an Allowed Claim who is entitled to vote accept or reject the Plan, or Debtors, actually votes to accept or reject the Plan.

6. "Bankruptcy Code" means Title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

7. "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of California, or such other court as may from time to time have jurisdiction over the Chapter 11 Case.

8. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as heretofore or hereafter amended, and the general, local and chambers rules and orders of the Bankruptcy Court.

9. "Bar Date" means the date or dates established by order of the Bankruptcy Court, or the Bankruptcy Code or the Bankruptcy Rules by which all Persons (except Holders of Claims that appear in the Schedules not scheduled as disputed, contingent or unliquidated, but only with respect to such Claims) asserting a Claim against Debtors (except the Administrative Claims, which are governed by the Pre-Confirmation Administrative Claims Bar Date and the Post-Confirmation Administrative Claims Bar Date) must File a Proof of Claim or forever be barred from asserting a Claim against Debtors or the Estate, voting on the Plan, and sharing in distributions under the Plan.

10. "Business Day" means any day, other than a Saturday, Sunday, or "legal holiday", as defined in Bankruptcy Rule 9006(a).

11. "Cash" means legal tender of the United States of America, which may be conveyed by check or wire transfer.

12. "Causes of Action" means any Claim, Avoidance Action, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, including through the Effective Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

13. "Chapter 11 Case" shall have the meaning given to it in the Preamble of the Plan.

14. "Claim" has the meaning set forth in Bankruptcy Code section 101(5).

15. "Claims Register" means the official register of Claims and Interests maintained in the Chapter 11 Case.

16. "Class" means a class of Claims or interests pursuant to Bankruptcy Code section 1122(a) and as described in Article II of the Plan.

17. "Class 3 Beneficial Interests" means beneficial interests in the Liquidating Trust distributed to Holders of Allowed General Unsecured Claims pursuant to this Plan, which (subject to the terms of the Liquidating Trust Agreement) shall entitle such Holders to receive their Pro Rata share of Distributable Trust Proceeds not to exceed (a) the amount of such Allowed General Unsecured Claim as of the Petition Date, plus (b) interest on such amount accruing at the Class 3 Interest Rate from and after the Effective Date.

18. "Class 3 Interest Rate" means the prevailing rate under 28 U.S.C. 1961 on of the Effective Date.

19. "Class 4 Beneficial Interests" means beneficial interests in the Liquidating Trust distributed to Debtors pursuant to this Plan, which (subject to the terms of the Liquidating Trust Agreement) shall entitle each of the Debtors to receive their Pro Rata share of any and all remaining

Distributable Trust Proceeds after all final distributions have been made on behalf of all Class 3 Beneficial Interests.

20.     "Confirmation" means the entry by the Bankruptcy Court of the Confirmation Order in the Chapter 11 Case.

21.     "Confirmation Date" means the date upon which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

22.     "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan in accordance with the Bankruptcy Code.

23.     "Consummation" means the implantation of this Plan in accordance with its terms and the Confirmation Order by the Estate Manager, Liquidating Trustee or any other party.

24.     "Contingent Claim" means a Claim which is contingent, unmatured or unliquidated on or immediately before the Effective Date.

25.     "Creditor" means a Holder of a Claim.

26.     "Debtors" means Floyd E. Squires III and Betty J. Squires.

27.     "Debtors' Interests" mean the interests of the Debtors in the Estate that would have the priority identified in section 726(a)(6) of the Bankruptcy Code in a case under Chapter 7 of the Bankruptcy Code.

28.     "Deficiency Claim" means a Claim for the difference between the amount of an Allowed Secured Claim and the value of the collateral which secures such Allowed Secured Claim.

29.     "Disallowed Claim" or "Disallowed," when used in connection with the term "Claim," means any Claim or portion thereof that has been disallowed by a Final Order of the Bankruptcy Court or scheduled as disputed, contingent or unliquidated that is not superseded by a timely filed Proof of Claim.

30.     "Disclosure Statement" means the solicitation materials and disclosure statements, including all exhibits and schedules thereto, as amended, supplemented or modified from time to time, that are found by the Bankruptcy Court under the circumstances of the Chapter 11 Case to contain adequate information to solicit acceptances and rejections of the Plan.

31. "Disclosure Statement Order" means the order of the Bankruptcy Court approving the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code, as the order may be amended from time to time.

32. "Disputed Claim" means: (a) any Claim or portion of a Claim (including any Administrative Claim, Priority Tax Claim or Other Priority Claim) listed in the Schedules as disputed, contingent or unliquidated; or (b) any Claim, as to which an objection to the allowance thereof has been Filed with the Bankruptcy Court within any time limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or an order of the Bankruptcy Court, which objection has not been settled, withdrawn or determined, in whole or in part, by a Final Order.

33. "Distributable Trust Proceeds" means the net proceeds of the Trust Assets available for distribution to the Trust Beneficiaries according to the terms of the Liquidating Trust Agreement after payment of (or the funding of a reserve for): (a) the fees and expenses of Liquidating Trustee (including any professionals hired by Liquidating Trustee); (b) any other costs of maintaining, disposing or otherwise administering all of the Trust Assets; and (c) Administrative Claims, Priority Tax Claims and Other Priority Claims that have not been paid, Disallowed or otherwise reserved for as of the Effective Date.

34. "Distribution Record Date" means the Confirmation Date unless the Bankruptcy Court establishes a different date for the Distribution Record Date in the Confirmation Order.

35. "Effective Date" means the first Business Day after the date on which the conditions specified in Article IX of the Plan have been satisfied in full or waived.

36. "Effective Date Funds" means Cash on hand as of the Effective Date.

37. "Entity" has the meaning as set forth in Bankruptcy Code section 101(15).

38. "Estate" means the estate of Debtors that was created by the commencement of the Chapter 11 Case pursuant to Bankruptcy Code section 541, and shall be deemed to include any and all Assets of Debtors, whether real, personal or mixed, rights, Causes of Action, avoidance powers or extensions of time that Debtors or the estate shall have had effective as of the Petition Date or thereafter, whether by virtue of Bankruptcy Code sections 544, 545, 546, 547, 548, 549 or 550 or otherwise.

39. "Estate Manager" means (a) if no Chapter 11 trustee is appointed by the Bankruptcy Court prior to the Confirmation Date, then the party appointed as of the Confirmation Date with authority to manage the Estate, including, without limitation, authority to act on behalf of the Debtors pursuant to sections 327, 328, 362, 363, 364, 365, 366, 502, 503, 505, 506, 507, and 510 of the Bankruptcy Code, on the terms set forth in the Plan Supplement, or (b) any Chapter 11 trustee appointed by the Bankruptcy Court prior to the Confirmation Date.

40. "Exculpated Party" means each of the City, the Estate Manager, Liquidating Trustee, each of their predecessors, successors, assigns and present and former affiliates (whether by operation of law or otherwise), and each of their respective current and former officers, directors, principals, employees, shareholders, members (including ex officio members), partners, agents, financial advisors, attorneys, accountants, investment bankers, investment advisors, consultants, representatives and other professionals.

41. "Executory Contract" means an executory contract or unexpired lease to which either or both of Debtors are/is a party that is subject to assumption or rejection under Bankruptcy Code section 365 or under the Plan.

42. "Exempt Assets" means only those Assets that are the subject of a proper exemption claimed by Debtors under section 522 of the Bankruptcy Code as to which either (a) the time for objection has expired without objection, or (b) any and all timely objections have been overruled.

43. "File" means to duly and properly file with the Bankruptcy Court as reflected on the Bankruptcy Court's docket or the Claims Register in the Chapter 11 Case.

44. "Final Decree" means an order of the Bankruptcy Court closing the Chapter 11 Case pursuant to Bankruptcy Code section 350.

45. "Final Order" means an order or judgment entered by the Bankruptcy Court: (a) that has not been reversed, stayed, modified, amended, revoked, varied or set aside, and as to which (i) any right to appeal or seek certiorari, review, reargument, stay or rehearing has been waived, or (ii) the time to appeal or seek certiorari, review, reargument, stay or rehearing has expired and no appeal or petition for certiorari, review, reargument, stay or rehearing is pending; or (b) as to which an appeal has been taken or petition for certiorari, review, reargument, stay or rehearing has been filed, and (i) such appeal

6

or petition for certiorari, review, reargument, stay or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay or rehearing was sought, and (ii) the time to appeal further or seek certiorari, review, reargument, stay or rehearing has been waived or expired and no such further appeal or petition for certiorari, review, reargument, stay or rehearing is pending, provided, however, that no order or judgment shall fail to be a "Final Order" hereunder solely because of the possibility that a motion pursuant to Bankruptcy Code sections 502(j) or 1144, Rules 59 or 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be Filed with respect to such order or judgment.

46. "General Unsecured Claims" means any Claim against Debtors or the Estate that is not a/an (a) Administrative Claim, (b) Priority Tax Claim, (c) Other Priority Claim, or (d) Secured Claim; provided that for avoidance of doubt, a Deficiency Claim is a General Unsecured Claim.

47. "Holder" means any Person or Entity that is the record or beneficial owner of a Claim or Beneficial Interest.

48. "Impaired" means with respect to any Class of Claims or interests, a Class of Claims or interests that is impaired within the meaning of Bankruptcy Code section 1124.

49. "Lien" has the meaning set forth in Bankruptcy Code section 101(37).

50. "Liquidating Trust" means that certain trust established on the Effective Date under the Plan to hold and administer the Trust Assets for the benefit of the Trust Beneficiaries from and after the Effective Date

51. "Liquidating Trust Agreement" means the agreement setting forth the terms and conditions governing the Liquidating Trust, which shall be filed as part of the Plan Supplement.

52. "Liquidating Trustee" means a trustee of the Liquidating Trust appointed in accordance with the terms of the Plan and the Liquidating Trust Agreement, who shall be the Estate Manager unless otherwise set forth in the Plan Supplement.

53. "Operative Document" means any contract, instrument, release, settlement agreement or other agreement or document, if any, that is reasonably necessary to effectuate and implement the transactions provided for in the Plan, including Plan Supplement.

54.     "Other Priority Claims" means any Claim entitled to priority under Bankruptcy Code sections 507(a) other than under subsections (a)(2) and (a)(8) thereof.

55.     "Person" means any individual, corporation, partnership, limited liability company, joint venture, association, trust or organization, or other "person" as defined in Bankruptcy Code section 101(41), as well as any governmental agency, governmental unit or political subdivision.

56.     "Petition Date" means November 8, 2017.

57.     "Plan" means the Chapter 11 Plan of Liquidating Proposed By The City of Eureka dated March 9, 2018 to which this Exhibit A is attached, either in its present form or as the same may be altered, amended or modified from time to time pursuant to the Bankruptcy Code or Final Order.

58.     "Plan Supplement" means supplemental documentation in relation to the Plan that will be filed not later than fourteen (14) days before the deadline to object to the Plan.

59.     "Post-Confirmation Administrative Claim" means an Administrative Claim that arises from the Confirmation Date through the Effective Date.

60.     "Post-Confirmation Administrative Claims Bar Date" means the date that is thirty (30) days after the Effective Date.

61.     "Pre-Confirmation Administrative Claim" means an Administrative Claim that arises prior to the Confirmation Date.

62.     "Pre-Confirmation Administrative Claims Bar Date" means the date that is thirty (30) days after the Confirmation Date.

63.     "Priority Tax Claims" means any Claim that is entitled to priority under Bankruptcy Code sections 502(i) or 507(a)(8). Priority Tax Claims do not include *ad valorem* tax Claims if such Claims under applicable state law are Secured by a Lien on Debtor's Assets.

64.     "Pro Rata" means, with respect to an amount of Cash or other consideration to be paid or distributed on a particular date to a Holder of an Allowed Claim or a Trust Beneficiary, that such distribution shall be made in accordance with the ratio, as of such date, of (a) the amount such Allowed Claim is to the aggregate of the amounts of all Allowed Claims in the Class to which such Allowed Claim belongs, or (b) the beneficial interest held by such Trust Beneficiary is to the aggregate of all beneficial interests in the class to which such Trust Beneficiary belongs.

65.    "Proof of Claim" means a proof of claim for a Claim which has been Filed.

66.    "Rejected Contracts" means all of the Executory Contracts other than (i) any Executory Contract as to which the Bankruptcy Court approves the assumption thereof under section 365 of the Bankruptcy Code pursuant to a motion or other request filed by Debtors or the Estate Manager prior to the Effective Date, and (ii) any Executory Contract as to which the Bankruptcy Court has entered an order approving the rejection thereof under section 365 of the Bankruptcy Code prior to the Effective Date.

67.    "Schedules" means the schedules of Assets and liabilities and the statements of financial affairs Filed by Debtors under Bankruptcy Code section 521 and Bankruptcy Rule 1007, and all amendments and modifications thereto through the Confirmation Date.

68.    "Section 1129(a)(15)(B) Requirement" means the requirement under section 1129(a)(15)(B) of the Bankruptcy Code for Debtors to contribute disposable income to fund distributions under the Plan.

69.    "Secured" means, when referring to a Claim, that the Claim is secured by a Lien on any Assets, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to Bankruptcy Code section 553, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Bankruptcy Code section 506(a); provided that for avoidance of doubt, a Secured Claim excludes an Deficiency Claim.

70.    "Secured Parties" means any and all Holders of Secured Claims.

71.    "Trust Assets" means (a) all Assets of the Estate as of the Effective Date other than the Exempt Assets, and (b) if Debtors do not provisionally vote to accept the Plan, any disposable income that Debtors are required to contribute pursuant to the Section 1129(a)(15)(B) Requirement.

72.    "Trust Beneficiaries" means the Persons or Entities who receive Class 3 Beneficial Interests and/or Class 4 Beneficial Interests pursuant to the Plan.

73.    "US Trustee Fees" means fees payable pursuant to 28 U.S.C. § 1930.

| | |
|---|---|
| 1 | 74. "Voting Record Date" means the date for determining which Holders of Claims, are |
| 2 | entitled to receive the Disclosure Statement and vote to accept or reject the Plan, as established by the |
| 3 | Disclosure Statement Order. |