MARK S. ADAMS, SB#68300
ANDREW F. ADAMS, SB#275109
California Receivership Group, PBC
2716 Ocean Park Blvd., Suite 3010
Santa Monica, California 90405
Tel. (310) 471-8181
Fax (310) 471-8180
madams@calreceivers.com

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SANTA ROSA DIVISION

| | |
|---|---|
| In re<br><br>FLOYD E. SQUIRES, III and BETTY J. SQUIRES,<br><br>        Debtors. | Case No.: 17-10828 WJL<br><br>Chapter 11<br><br>**MARK S. ADAMS AND CALIFORNIA RECEIVERSHIP GROUP'S JOINDER TO CITY OF EUREKA'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE; DECLARATION OF MARK ADAMS IN SUPPORT**<br><br>Date: March 26, 2018<br>Time: 9:00 a.m.<br>Judge: William J. Lafferty III<br>Location: U.S. Courthouse<br>       3140 Boeing Avenue<br>       McKinleyville, CA 95519 |

**TO THE HONORABLE JUDGE OF THE ABOVE-ENTITLED COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

Please take notice that Creditor Mark S. Adams and California Receivership Group, PBC (collectively "Adams") hereby join in the City of Eureka's ("City") request that this Court appoint a Chapter 11 Trustee for the bankruptcy estate. Adams also supports the United States Trustee's ("US Trustee") Motion, but only in as far as it requests the Appointment of a Chapter 11 Trustee.

-1-

**MARK S. ADAMS JOINDER IN REQUEST FOR CHAPTER 11 TRUSTEE**

Debtors Floyd and Betty Squires ("Debtors") submitted their Petition on November 8, 2017. The City filed a "Motion to Appoint Chapter 11 Trustee" on December 22, 2017 ("Motion"), and a Supplemental Memorandum in Support on March 5, 2018 ("Supplement"), along with supporting declarations and documentation. The Motion and Supplement are set for hearing on March 26, 2018. The U.S. Trustee filed a Motion to Dismiss or Convert on February 20, 2018, which was heard on shortened notice on February 28, 2018, and then continued to be heard alongside the City's Motion on March 26, 2018.

This Joinder and the attached Declaration of Mark Adams are submitted to support and to join the City's request for a Chapter 11 Trustee to be appointed. As has been put to this Court multiple times before in other contexts, based on seven years of experience with them, Adams has zero faith in Debtors to willingly pay off the amounts owed, and believes that without a neutral, independent Trustee appointed, neither he nor any creditor will be paid in full on the amounts owed within a reasonable timeframe. In addition, Debtors have materially misled the Court on matters such as the enforceability of the Superior Court orders, misstated the values of the properties, the total amount of debt, the conditions, etc. all surrounding this case, and so the equity cushion that they allege exists and rely on simply does not exist in the form they present to this Court. The Trustee is an absolute necessity, both to ensure the payment of Adams and other creditors, but at the same time to ensure that if the creditors are unleashed to collect on the bankruptcy estate, there is an orderly and measured way to proceed.

## I. CAUSE EXISTS TO APPOINT A TRUSTEE

The Court's legal authority is briefed at length in the City's Motion to Appoint, and Supplemental Memorandum, and those same authorities and showing that a Trustee is justified and necessary here are not copied here. With relation to Adams (and other creditors), "cause" under 11 U.S.C. §1004(a)(1) exists because there is "fraud, dishonesty, incompetence, [and] gross mismanagement" on the properties providing security for Adams's debt. Squires not only refuses to comply with existing California law and the Eureka Municipal Code, but all evidence

**MARK S. ADAMS JOINDER IN REQUEST FOR CHAPTER 11 TRUSTEE**

Case: 17-10828    Doc# 156    Filed: 03/12/18    Entered: 03/12/18 14:34:12    Page 2 of 27

submitted to this Court suggests he is committing fraud by secreting estate assets (see below, section III). Beyond that, Squires cannot keep his buildings from burning to the ground, or being boarded up because of the danger they present to residents and the neighbors (see section IV). So, while this Court has wide discretion in appointing a Trustee, and the evidence provided by the City in its Motion and Supplement more than justifies using the discretion to appoint – there is a separate, distinct justification presented by creditors calling for appointment.

This Court could appoint a Trustee purely on the basis of the fact that it is in "the interests of the creditors, equity security holders, and other interests of the estate." 11 U.S.C. §1104(a)(2). Creditors holding millions of dollars of debt (even those with only a purely pecuniary interest in the estate) all have an interest in a Chapter 11 Trustee. Right now, Debtors and the state court receiver are in possession and have been managing the properties. That has led to hundreds of citations, countless injuries, innumerable lawsuits and wastes of court time, all in the service of Debtor's abject failure as a landlord and property owner. Creditors will not be paid unless a Trustee is appointed, and the law was written to enable this Court to appoint a Trustee for situations just like this. Cause exists to appoint a Trustee multiple times over in this matter for the fundamental reason that Debtors are objectively failing in all responsibilities as real estate owners and operators. A neutral, skilled Trustee without any ties or connection to Debtors has to be appointed to undo the years of mismanagement and neglect.

## II. CRG'S PRIORITY JUDGMENT ITSELF SHOWS WHY A TRUSTEE IS NECESSARY

As has been recounted to this Court multiple times, Adams's interest as a creditor in this matter stems from two separate interim fee orders [1] for the time that he served as the state court Receiver. Those orders include Adams' legal fees in defending against Debtor's failed tort

---

[1] The Court will recall that at last week's hearing counsel for Squires had no good explanation for why his pleadings referred to these two court orders as "purported" debt. The Court rightly chastised counsel for not having done his own due diligence on whether enforceable court orders were properly considered "purported" debt.

**MARK S. ADAMS JOINDER IN REQUEST FOR CHAPTER 11 TRUSTEE**

lawsuit.[2] The first judgment was a January 9, 2014 award of $15,317, solely for the fees incurred in Adams's time spent as the receiver in 2011 when he was appointed in the state court. See the January 9, 2014 Order, attached as **Exhibit 1** to the Declaration of Mark Adams. That Order made the $15,317 a joint and several liability of the Debtors, but also authorized a priority Receiver's Certificate on all 26 properties that he had been appointed upon. The February 21, 2017 Order, a copy of which is attached as **Exhibit 2**, increased that Certificate to $158,107.36 (inclusive of the previous amount) and had the same terms and authorization on a priority Certificate.

Right now, Creditor Mark Adams and CRG has that $158,107.36 Certificate secured by a deed of trust, collecting interest. There have been substantial additional fees incurred in simply trying to collect on that Judgment and Certificate in the past year. But as detailed in the March 7, 2018 "Opposition to Motion for Order Authorizing Use of Cash Collateral," Debtors wish to contest these orders as if they were not absolutely clear as to their terms, and as if each one were not already final. Debtors have not taken any steps to pay the 13-month old Judgment, and they certainly have not done anything to pay the 50-month old Judgment. Left to their own devices, Debtors will never pay, and are attempting to use the bankruptcy courts to again, improperly challenge and cast doubt on those state court orders. If Debtors are to remain in possession, then the only way the Certificate and judgments will be paid is through a foreclosure, which will obviously satisfy Adams' debt, but all parties have to reckon with what will necessarily be far-ranging and serious impacts of a foreclosure sale on the 26 state court receivership properties. That foreclosure sale will pay the taxes and the Certificate, but this Court can imagine what a foreclosure sale on all properties in just a few months will result in.

Along those lines, if the bankruptcy is dismissed, then there will be a run on Debtor's assets as all creditors attempt to get paid at the same time. This Petition and process has laid out that Debtor does not have the assets they claim to, and as the disconnect between their

---

[2] Squires sued Adams for trespass for posting notice of his original appointment as receiver on various properties. After two years of litigation including a large number of dilatory tactics and delays by Squires it took a jury approximately two hours to totally reject Squires' claims.

-4-
**MARK S. ADAMS JOINDER IN REQUEST FOR CHAPTER 11 TRUSTEE**

values/income/costs shows, Debtors are likely just pocketing or otherwise secreting away cash (and likely have been for some years). So, if a Chapter 11 Trustee is not appointed, not only are all creditors at risk, but there will likely be below-market foreclosure sales and lost assets and value in the stampede to get paid. All of this screams out for a neutral third party to be appointed to handle this complicated process and to satisfy all of the needs and interests at play in this matter.

### III. DEBTORS HAVE LIKELY BEEN SECRETING FUNDS AND A TRUSTEE IS NECESSARY TO RECOVER THOSE FRAUDULENT TRANSFERS

As noted above, based on the schedules filed in this case, and the history of Debtor's actions, it very likely that Debtor is secreting away assets and cash. It certainly appears that the Debtors are concealing assets and inflating liabilities because the amounts claimed in their revised Schedules (Docket No. 24, December 1, 2017) are wildly different from the amounts listed in the MORs. For instance, in the November MOR (Docket No. 80, January 18, 2018), it states that as of November 30, 2017, the total assets are $16,695,000 and (conveniently), the total liabilities are also $16,695,000, leaving a net worth of zero.[3] Then, in the Revised Schedules, which were filed the very next day, it says that the total assets are $18,905,928.44 and the total liabilities are $3,041,507.90. Then, in the December MOR (Docket No. 93, January 31, 2018), it says that the current assets are $17,141,000 and the total liabilities are back to $16,695,000.

How did the Debtors go from having a net worth of zero on November 10, to a net worth of $15.9M on December 1, to a net worth of $450K on December 31? At best, this reflects utter incompetence on the part of Debtors, but it is more likely that this reflects Debtors' attempt to deceive the Court about their true financial situation.

In the Declaration of D A Clarke Finneran, the UST's Bankruptcy Analyst (Docket No. 103, February 20, 2018), Finneran analyzed Debtors' Cash Collateral Budgets (Docket Nos. 72, 80, and 93), Debtors' Schedules A/B (Docket No. 24 at 24), and November and December

---

[3] The DIP did not even take the time to add the figures in the asset column of the November MOR (*see* p. 2).

-5-

### MARK S. ADAMS JOINDER IN REQUEST FOR CHAPTER 11 TRUSTEE

MORs, and concluded that "with respect to the total projected gross rental income, the gross rental income used by Debtors in the Cash Collateral Budget may not be realistic." *Id.* at 3. "Not realistic" is a generous depiction of the situation, and the muted language is not what the creditors involved here would use. Debtor's estimates and reports are not realistic, nor are they even consistent.

Debtors' MORs do not truly disclose their financial situation. In the December MOR, Debtors provided their bank statement, showing debit card purchases for groceries, charter flights, pizzas, etc., but the large withdrawals are in the form of traditional checks, where only the amount is shown, but not the recipient of the funds. Who are Debtors paying with these checks? Creditors would guess that they are made out to "CASH" or something similar, but it is not clear from reports. Between November 30 and December 6, 2017, for example, there are several checks for over $1,000, totaling over $13,000 in payments to undisclosed recipients. The January 2018 MOR (Docket No. 149, March 8, 2018), lists $24,000.49 in checks written to undisclosed recipients. How are creditors, the UST, or the Court to review Debtors' expenditures when the recipients are unknown? This shoddy record-keeping, along with the lack of insurance is exactly what led to the UST's Motion.

As another example, is impossible to learn anything meaningful from comparing MORs month to month. A comparison of the December MOR to the January MOR reveals:

| Disbursement | December | January | Change |
|---|---|---|---|
| Administrative | $4,156 | $7,296 | $3,140 |
| Rent/Lease Personal Property | $1,100 | $0 | ($1,100) |
| Rent/Lease Real Property | $6,232 | $18,615 | $12,383 |
| Amount Paid to Owner - Draw | $9,962 | $4088 | ($5,554) |
| Salaries | $7,115 | $8,427 | $1,312 |

These figures are not accompanied by any explanation, making it impossible to determine

-6-

**MARK S. ADAMS JOINDER IN REQUEST FOR CHAPTER 11 TRUSTEE**

whether or not Debtors are spending their income in a manner consistent with their Cash Collateral Motion. These figures also bear no relation to Debtors' Form 122B, Statement of Monthly Income (Docket No. 27, December 1, 2017), where they stated, under penalty of perjury, that they each had monthly income of $6,750, totaling $13,500 monthly for both Debtors. It should be clear to this Court that these fluctuating values and reports are evidence that the bankruptcy Petition was filed in bad faith, as a pretense to buy time only.[4]

In addition, the January MOR reveals the incompetence and waste in the management of Debtors' affairs. In the space of two weeks, Debtors racked up 12 overdraft fees of $36.00 each. January MOR at 19. As the City notes in their motions, these are not the actions of a sophisticated operation and business. Just like a last-minute pre-petition loan made to pay the Debtor's counsel likely shows bad faith,[5] these overdraft fees show incompetence. It would be foolish to trust Debtors to manage payments to creditors any differently than they manage (or mismanage) their own affairs currently.

Overall, it seems that Debtors are submitting dollar amounts in their filings with the expectation that if they just file *something* they can continue to do whatever they want with property of the estate. A Trustee should be appointed to ensure that Adams and all creditors are paid properly from the property of the estate.

## IV.  WITHOUT A TRUSTEE THE ESTATE WILL CONTINUE TO LOSE VALUE

Finally, in the four+ months since Debtors filed their Petitions, several of the properties that are the security for Adams's debt have fallen apart. The post-Petition dereliction of duties is detailed in the City's March 5, 2018 Supplemental Memorandum and attached declarations. Insurance, Trustee fees, tax returns, etc. all go unpaid or undelivered. Meanwhile tenants and squatters in Debtors' properties live in their own filth and have to be rushed to medical care. This was the behavior that led to the appointment of a receiver three separate times in state court, but

---

[4] Debtors' previous bankruptcy stretched on for years, and the intention here was likely to buy a similar amount of time for some unsaid purpose.
[5] As alleged in the January 30, 2018 adversarial action filed by National Funding.

-7-

**MARK S. ADAMS JOINDER IN REQUEST FOR CHAPTER 11 TRUSTEE**

it is clear that Debtors do not have any intention of changing it or complying with the law, even post-Petition.

Similarly, on August 17, 2017 the Blue Heron Motel, a large piece of Debtor's assets, burned to the ground. Per police and media reports, this was a retaliatory arson based on Debtor Floyd Squires' actions with the arsonist. Then properties on 3rd Street were closed due to nuisance conditions that made them unsafe for human habitation. So, in addition to the above-referenced needs for a neutral, third-party Trustee, the simple fact that Debtors are losing buildings from their properties calls for a Trustee. Debtors cannot even do the absolute bare minimum of preserving the buildings, and in light of that abject failure to do so, creditors have no choice but to request that the Court appoint a Trustee.

## V.     CONCLUSION

For all of the above reasons, and as laid out in the City of Eureka's Motion, Supplemental Brief, and the U.S. Trustee's Motion, this Court should appoint a Chapter 11 Trustee.


MARK S. ADAMS & CALIFORNIA RECEIVERSHIP GROUP, PBC


Dated: March 11, 2018          ____/s/Andrew Adams_____
                               Creditors Mark Adams and California Receivership Group

-8-
**MARK S. ADAMS JOINDER IN REQUEST FOR CHAPTER 11 TRUSTEE**

MARK S. ADAMS, SB#68300
ANDREW F. ADAMS, SB#275109
California Receivership Group, PBC
2716 Ocean Park Blvd., Suite 3010
Santa Monica, California 90405
Tel. (310) 471-8181
Fax (310) 471-8180
madams@calreceivers.com

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SANTA ROSA DIVISION

In re

FLOYD E. SQUIRES, III and BETTY J.
SQUIRES,

        Debtors.

Case No.:  17-10828 WJL

Chapter 11

**DECLARATION OF MARK S. ADAMS IN
SUPPORT OF JOINDER AND CITY
MOTION TO APPOINT CHAPTER 11
TRUSTEE**

I, MARK ADAMS, declare as follows:

1.    The following is true and correct to the best of my knowledge. If called upon to do so, I could and would testify competently thereto in a court of law.

2.    Attached as **Exhibit 1** is a true and correct copy of the January 9, 2014 Order made the $15,317 a joint and several liability of the Debtors, but also authorized a priority Receiver's Certificate on all 26 properties that he had been appointed upon.

3.    Attached as **Exhibit 2** is a copy of the February 21, 2017 Order increasing that Certificate to $158,107.36

Dated: March 11, 2018               /s/ Mark S. Adams_____

                               MARK S. ADAMS

-1-

**DECLARATION OF MARK S. ADAMS**

Exhibit 1

1  MARK S. ADAMS, SB#68300
   California Receivership Group, LLC
2  150 S. Barrington Ave., Suite 100
   Los Angeles, CA 90049
3  Court-Appointed Receiver
   (310) 471-8181
4  Fax (310) 471-8180

5

6            SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                 FOR THE COUNTY OF HUMBOLDT

8

9  CITY OF EUREKA, a municipal          Case No.: DR110040
   corporation, ("the City") and the PEOPLE
10 OF THE STATE OF CALIFORNIA, ("the    (PROPOSED) ORDER ON RECEIVER'S
   People") by and through Jones & Mayer, THIRD REPORT
11 Special Counsel of the City of Eureka,

12              Petitioner,

13      vs.

14 FLOYD SQUIRES; FLOYD E. SQUIRES;
   FLOYD E. SQUIRES III; BETTY J.
15 SQUIRES; FB SQUIRES FAMILY
   TRUST; BETTY J'S BUILDING, INC; and
16 DOES ONE through SIXTY,

17              Respondents.

18

19

20       The Court, having considered the Third Report of the Receiver of Mark Adams

21 ("Receiver") and the exhibits attached thereto, and the Respondent's Objection to the Third

22 Report, and good cause appearing therefore,

23       NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

24       1.    The request in the Third Report for fees and costs incurred prior to March 10,

25 2011 is denied.

26       2.    The request in the Third Report for fees and costs expended in defense of *Squires*

27 *v. Adams*, case number DR110803, is denied without prejudice.

28

                                    1
                     ORDER ON THIRD RECEIVER'S REPORT

3.      The requests in the Third Report for the Receiver's costs and fees for work as provisional and interim Receiver are granted for the active appointment period of March 10-21, 2011 and October 24-November 2, 2011. The Report's request for costs and fees not for these periods of time is denied.

4.      The cost of all premiums on the bond required by this Court is granted.

5.      In compliance with the above findings by the Court, Mark Adams is hereby awarded the above described costs and fees as follows:

     a. $8,983.34 for work and costs stemming from the work completed during the period March 10-21, 2011.

     b. $3,320.85 for work and costs stemming from the work completed during the period October 24-November 2, 2011.

     c. $2,000 for the premiums on the two required receiver bonds.

     d. $1,012.81 as reimbursement for advances by the Receiver for costs during the two time periods stated above.

6.      The total amount due to Receiver of $15,317 is a joint and several personal obligation of the named Respondents in this matter. Receiver is authorized to collect the full amount of this judgment from Floyd Squires, Floyd E. Squires, Floyd E. Squires III, Betty J. Squires, FB Squires Family Trust, and Betty J's Building, Inc.

7.      As requested in the Third Report, Receiver is authorized to issue a Receiver's Certificate ("the Certificate") in his official capacity as Receiver with first lien (super priority) status in an amount not to exceed $15,317 to recover the above listed costs and fees. This Certificate is to be secured by a deed of trust on the properties listed in the appointment order dated March 10, 2011 and the appointment order dated October 24, 2011.

8.      The Receiver is authorized to sign any Receivership Certificate and accompanying deed of trust with power of sale that he deems complies with the terms of this Order. The Certificate shall be executed in favor of any lender as may willing to finance such a Receiver's Certificate on such terms as are commercially reasonable and acceptable to the Receiver and as are subsequently reported to the Court.

2
**ORDER ON THIRD RECEIVER'S REPORT**

1    9.    The sums due under the Certificate shall be due and payable at such time as the

2  Receiver and the lender shall agree and subsequently report to the Court but in no case later than

3  the date on which the Court approves the Receiver's final accounting and the Receiver is

4  discharged.

5    10.    The Certificate and Deed of Trust shall be a lien with priority over any and all

6  existing liens or encumbrances (including the existing first trust deed on the property) other than

7  any lien recorded by a governmental entity for taxes on the property.  The Certificate, the

8  accompanying Deed of Trust and this Order shall be recorded with the Office of the Humboldt

9  County Recorder.

10

11  IT IS SO ORDERED.

12

13  DATED:  __JAN 0 9 2014__, 2013-          _____

14                                          DALE A. REINHOLTSEN
                                           Judge of the Superior Court

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

3

**ORDER ON THIRD RECEIVER'S REPORT**

Exhibit 2

FILED

FEB 2 1 2017  *ecc*

SUPERIOR COURT OF CALIFORNIA
COUNTY OF HUMBOLDT

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF HUMBOLDT**

| | |
|---|---|
| CITY OF EUREKA and THE PEOPLE OF THE STATE OF CALIFORNIA, et al., | CASE NO. DR110040 |
| Plaintiffs, | RULING RE: REQUEST FOR INTERIM FEES |
| vs. | |
| FLOYD SQUIRES and BETTY SQUIRES, et al., | |
| Defendants. | |

Before the Court is the motion of prior receiver Mark S. Adams for an order directing respondents to pay outstanding fees, costs and advances and expenses of the prior receiver. The Court issued a Preliminary Ruling on Motion for Interim Fee Order December 14, 2016. The Court requested that Mr. Adams submit a supplemental declaration in support of the request for fees and costs which has been received.

The Court, having considered the papers filed in support and opposition to the motion, the supplemental declaration filed by Mr. Adams and arguments of counsel, rules as follows.

Case: 17-10828    Doc# 156    Filed: 03/12/18    Entered: 03/12/18 14:34:12    Page 15 of
27

Finding in Preliminary Ruling

The Preliminary Ruling on Motion for Interim Fee Order is incorporated herein by this reference. Specifically, the Court previously determined that:

1. The request for fees and costs incurred prior to March 11, 2011 is denied. Mr. Adams was first appointed as receiver in this matter by the Court on March 10, 2011. Mr. Adams' work on the case prior to the initial date of appointment was at the behest of petitioner/plaintiff the City of Eureka.

2. The defense of the case of *Squires v. Adams,* case number DR110803, by prior receiver Adams was a necessary expense incurred in the course of his duties as a receiver in this matter. Accordingly, receiver Mark Adams is entitled to fees and costs reasonably incurred in defense of the case of *Squires v. Adams. MacMorris Sales Corp. v. Kozak* (1967) 249 Cal.App.2d 999, 1005.

3. The fees and costs incurred by the receiver in the sum of $35,171.25 for outside trial counsel for the defense of the case of *Squires v. Adams* [Matthews, Kluck, Walsh & Wykle, LLP] were reasonably incurred.

Analysis

In the Preliminary Ruling, the Court requested a supplemental declaration from prior receiver Adams in support of the fees and costs claimed in the defense of the case of *Squires v. Adams.*[1] The supplemental declaration submitted does not adequately

---

[1] Specifically, the Court requested the following:
"…Concerning the balance of the unpaid fees and costs claimed in defense of the case of *Squires v. Adams* by prior receiver Adams, the Court requests that Mr. Adams submit a supplemental declaration in support of the request for the fees and costs sought in a format similar to Exhibit 8, the billing statement of Mr. Latt. The supplemental declaration should state in chronological order the following: a description of the service performed, the time expended and the identity, job title and hourly rate of the person performing the service…."

describe the services performed in some entries.  The Court has reviewed the billings

submitted to determine, to the extent possible, the reasonable fees and costs necessary

and proper in defense of the case.

As previously stated, respondents contend that Mr. Adams was not acting within

the course and scope of his authority as receiver at the time of the events complained of

in the case of *Squires v. Adams*.  As a result, respondents contend that the Court

should not approve payment of any attorney fees or costs incurred in defending the

case.  Respondents did not address the hourly rates claimed or time spent by

Mr. Adams and his associates in defense of the case.

Prior receiver Adams bears the burden of proof on the reasonableness of the

claimed attorney fees.  The California Supreme Court generally addressed the issue in

*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084 as follows at page 1095:

> "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar', i.e. the number of hours reasonably expended multiplied by the reasonable hourly rate. 'California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award.'  The reasonable hourly rate is that prevailing in the community for similar work.  The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided.  Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary...." (citations omitted).

The factors the Court may consider in adjusting the lodestar figure include the

nature and difficulty of the litigation, the amount of money involved, the skill required

and employed to handle the case, the attention given, the success or failure, and other

circumstances in the case.  *PLCM Group, Inc. v. Drexler, supra,* at page 1096; *EnPalm,*

*LLC v. Teitler* (2008) 162 Cal.App.4th 770, 774.

In the absence of evidence to the contrary, the Court finds the hourly rates

requested by Mark Adams and Andrew Adams are reasonable hourly rates.  The Court

further finds, upon an examination of the billing records submitted as Exhibit 1 to the

1  Supplemental Declaration of Mark Adams, that the reasonable and necessary fees

2  expended in defense of the case of *Squires v. Adams* is $28,501.64 for Mark Adams

3  and $64,570.82 for Andrew Adams.

4  <u>ORDER</u>

5  Based on the foregoing, the Court orders as follows:

6  1. The request for fees and costs incurred by prior receiver Mark Adams prior to

7  March 11, 2011 is denied.

8  2. In the Order filed January 13, 2014, receiver Mark Adams was awarded fees and

9  costs in the amount of $15,317.00. The fees and costs were calculated as follows:

10  a. $8,983.34 for work and costs stemming from the work completed during the

11  period of March 10 thru March 21, 2011;

12  b. $3,320.85 for work and costs stemming from the work completed during the

13  period of October 24, 2011 thru November 2, 2011;

14  c. $2,000.00 for the premiums on the two required receiver bonds; and

15  d. $1,012.81 as reimbursement for advances by the receiver for costs during the

16  two time periods stated above.

17  The fees and costs previously awarded in the sum of $15,317.00 are

18  acknowledged and remain payable.

19  3. The request for fees and costs incurred in defense of the case of

20  *Squires v. Adams,* case number DR110803, is granted as follows:

21  a. $93,072.46 as reasonable fees expended in the defense of the case

22  calculated as follows:  $28,501.64 for Mark Adams and $64,570.82 for

23  Andrew Adams;

24  b. fees and costs incurred by outside trial counsel Matthews, Kluck, Walsh &

25  Wykle, LLP, in the amount of $35,105.00, $34,625.00 in fees and $480.50 in

1    costs [Exhibit 8, prior receiver Mark S. Adams' Motion for Interim Fee Order];

2    and

3    c.   costs in the sum of $14,612.90.

4    An Order will be filed concurrently with this Ruling.

5

6    Dated:  February 21, 2017

                                          DALE A. REINHOLTSEN

7                                         _____
                                          Dale A. Reinholtsen, Judge of the Superior Court

8

```
STATE OF CALIFORNIA,       )
COUNTY OF HUMBOLDT         ) SS. AFFIDAVIT OF SERVICE BY MAIL
```

I, **Susan C. Edwards**, say:

That I am a citizen of the United States, over 18 years of age, a resident of the County of Humboldt, State of California, and not a party to the within action; that my business address is Humboldt County Courthouse, 825 Fifth Street, Eureka, California, 95501; that I served a true copy of the attached <u>RULING RE: REQUEST FOR INTERIM FEES</u> by placing said copies in the attorney's mail delivery box in the Court Operations Office at Eureka, California on the date indicated below, or by placing said copies in envelope(s) and then placing the envelope(s) for collection and mailing on the date indicated below following our ordinary business practices. I am readily familiar with this business practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service at Eureka, California in a sealed envelope with postage prepaid. These copies were addressed to:

Dean Pucci & Krista MacNevin Jee - Jones and Mayer - 3777 N. Harbor Blvd., Fullerton, CA 92835

Bradford Floyd, Court Operations Box #102

Receiver - Lenders Construction Services, Jeffrey Smith, PO Box 6218, Eureka, CA 95502

District Attorney's Office, Court Operations Box #64

Cyndy Day-Wilson, Eureka City Attorney, Court Operations Box #63

Neal Latt, Court Operations Box #92

Mark Adams, 2716 Ocean Park Blvd # 3010, Santa Monica, CA 90405

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on the 22nd day of <u>February, 2017,</u> at the City of Eureka, County of Humboldt, State of California.

KIM M. BARTLESON, Clerk of the Court

By **Susan C. Edwards**
_____
Deputy Clerk

1  MARK S. ADAMS, SB#68300
   ANDREW F. ADAMS, SB#275109
2  California Receivership Group, PBC
   2716 Ocean Park Blvd., Suite 3010
3  Santa Monica, California 90405
   Tel. (310) 471-8181
4  Fax (310) 471-8180
   madams@calreceivers.com
5  Court-Appointed Receiver

6

7                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                          FOR THE COUNTY OF HUMBOLDT

9

10  CITY OF EUREKA, a municipal            Case No.: DR110040
    corporation, ("the City") and the PEOPLE
11  OF THE STATE OF CALIFORNIA, ("the      (PROPOSED) ORDER
    People") by and through Jones & Mayer,
12  Special Counsel of the City of Eureka,  Date: No Hearing Set
                                           Dept.: 8
13                  Petitioner,

14         vs.

15  FLOYD SQUIRES; FLOYD E. SQUIRES;
    FLOYD E. SQUIRES III; BETTY J.
16  SQUIRES; FB SQUIRES FAMILY
    TRUST; BETTY J'S BUILDING, INC; and
17  DOES ONE through SIXTY,

18                  Respondents.

19

20

21

22

23         The Court, having considered the Receiver Mark Adams ("Adams") Motion for Interim

24  Fees and Costs, the previous receiver's reports and accountings, the documents and testimony in

25  this case, and good cause appearing therefor,

26         NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

27         1.     Adams's Motion for Interim Fees and Costs is hereby approved, and the actions

28  described therein ratified.

                                            -1-
                                    (PROPOSED) ORDER

2.     Respondents Floyd Squires, Floyd E. Squires, Floyd E. Squires III, Betty J. Squires, FB Squires Family Trust, and Betty J's Building, Inc. are hereby ordered to immediately pay the Receiver the amount of $ _158,107.36_. [Includes the sum of $15,317 previously ordered.] (OAR)

3.     The total amount due to Adams of $ _158,107.36_ is a joint and several personal obligation of the named Respondents in this matter.  Adams is authorized to collect the full amount of this judgment from Floyd Squires, Floyd E. Squires, Floyd E. Squires III, Betty J. Squires, FB Squires Family Trust, and Betty J's Building, Inc.

4.     As the former appointed Receiver in this matter, Adams is authorized to issue a Receiver's Certificate ("the Certificate") or increase the existing Certificate with first lien (super priority) status in an amount not to exceed the total of $ _158,107.36_ to recover the costs and fees.  This Certificate is to be secured by a deed of trust on the properties listed in the appointment order dated March 10, 2011, appointment order dated October 24, 2011, and again listed below:

     a) 609 Summer Street, Eureka, CA (APN: 001-042-012)

     b) 119 W. 6th Street, Eureka, CA (APN: 001-042-13)

     c) 202 3rd Street, Eureka, CA; 315 C. Street, Eureka, CA (APN: 001-066-00 1)

     d) 216 3rd Street, Eureka, CA (APN: 001-066-022)

     e) 205 4th Street, Eureka, CA; 317 C Street, Eureka, CA; 325 C Street, Eureka, CA
        (APN: 001-066-007)

     f) 117-119 5th Street, Eureka, CA (APN: 001-071-004)

     g) 211-219 5th Street, Eureka, CA (APN: 001-103-004)

     h) 1637 3rd Street, Eureka, CA (APN: 002-063-005)

     i) 2325 2nd Street, Eureka, CA (APN: 002-123-004)

     j) 1410 Union Street, Eureka, CA (APN: 004-033-003)

     k) 1233 A Street, Eureka, CA (APN: 004-112-008)

     l) 241 Wabash Avenue, Eureka, CA (APN: 004-196-007)

     m) 1803 C Street, Eureka, CA (APN: 004-203-001)

     n) 833 H Street, Eureka, CA (APN: 005-012-005)

**(PROPOSED) ORDER**

o) 705 151h Street, Eureka, CA (APN: 005-012-008)

p) 1623 G Street, Eureka, CA; 1625 G Street, Eureka, CA (APN: 005-053-006)

q) 1635 G Street, Eureka, CA (APN: 005-053-007)

r) 1925 H Street, Eureka, CA (APN: 005-075-009)

s) 1429 Sunny Avenue, Eureka, CA (APN: 006-191-015)

t) 2245 Broadway, Eureka, CA (APN: 008-011-007)

u) 2235 Broadway, Eureka, CA (APN: 008-001-010)

v) 204 W. Hawthorne Street, Eureka, CA (APN: 009-122-005)

w) 2941 California Street, Eureka, CA; 2969 California Street, Eureka, CA (APN: 010-061-010)

x) 2927 California Street, Eureka, CA (APN: 010-061-011)

y) 2535 I Street, Eureka, CA (APN: 011-153-005)

z) 2445 Russ Street, Eureka, CA (APN: 013-171-010)

5.      Adams is authorized to sign any Receivership Certificate and accompanying deed of trust with power of sale that he deems complies with the terms of this Order. The Certificate shall be executed in favor of any lender as may willing to finance such a Receiver's Certificate on such terms as are commercially reasonable and acceptable to Adams and as are subsequently reported to the Court.

6.      The sums due under the Certificate shall be due and payable at such time as the Receiver and the lender shall agree and subsequently report to the Court but in no case later than the date on which the Court approves the replacement receiver's final accounting and is discharged.

(PROPOSED) ORDER

1    7.    The Certificate and Deed of Trust shall be a lien with priority over any and all

2    existing liens or encumbrances (including the existing first trust deed on the property) other than

3    any lien recorded by a governmental entity for taxes on the property.  The Certificate, the

4    accompanying Deed of Trust and this Order shall be recorded with the Office of the Humboldt

5    County Recorder.

6

7

8

9

10

11

12    IT IS SO ORDERED.

13

14

15    DATED:    2 - 21        2017
                              2016

16                           (DAR)           Judge of the Superior Court

17    ///

18    ///

19    ///

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

-4-
(PROPOSED) ORDER

STATE OF CALIFORNIA,                )
COUNTY OF HUMBOLDT                 ) SS. AFFIDAVIT OF SERVICE BY MAIL

I, **Susan C. Edwards** _____, say:

That I am a citizen of the United States, over 18 years of age, a resident of the County of Humboldt, State of California, and not a party to the within action; that my business address is Humboldt County Courthouse, 825 Fifth Street, Eureka, California, 95501; that I served a true copy of the attached <u>ORDER</u> by placing said copies in the attorney's mail delivery box in the Court Operations Office at Eureka, California on the date indicated below, or by placing said copies in envelope(s) and then placing the envelope(s) for collection and mailing on the date indicated below following our ordinary business practices. I am readily familiar with this business practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service at Eureka, California in a sealed envelope with postage prepaid. These copies were addressed to:

Dean Pucci & Krista MacNevin Jee - Jones and Mayer - 3777 N. Harbor Blvd., Fullerton, CA 92835

Bradford Floyd, Court Operations Box #102

Receiver - Lenders Construction Services, Jeffrey Smith, PO Box 6218, Eureka, CA 95502

District Attorney's Office, Court Operations Box #64

Cyndy Day-Wilson, Eureka City Attorney, Court Operations Box #63

Neal Latt, Court Operations Box #92

Mark Adams, 2716 Ocean Park Blvd # 3010, Santa Monica, CA 90405

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on the 22nd day of <u>February, 2017,</u> at the City of Eureka, County of Humboldt, State of California.

KIM M. BARTLESON, Clerk of the Court

By **Susan C. Edwards** _____

Deputy Clerk

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing **MARK S. ADAMS AND CALIFORNIA RECEIVERSHIP GROUP'S JOINDER TO CITY OF EUREKA'S MOTION TO APPOINT A CHAPTER 11 TRUSTEE; DECLARATION OF MARK ADAMS IN SUPPORT** was served on March 12, 2018. Service was accomplished by the method and to the following as indicated:

VIA ELECTRONIC NOTICE

**COUNSEL FOR DEBTORS**
David N. Chandler
Law Offices of David N. Chandler
1747 4th St.
Santa Rosa, CA 95404
dchandler1747@yahoo.com

**UNITED STATES TRUSTEE**
Attn: Margaret H. McGee
450 Golden Gate Ave., 5th Fl., Ste #05-0153
San Francisco, CA 94102
USTPRegion17.SF.ECF@usdoj.gov
margaret.h.mcgee@usdoj.gov

**COUNSEL FOR U.S. TRUSTEE**
Jared A. Day
Office of the United States Trustee
300 Booth Street, Suite 3009
Reno, Nevada 89509
jared.a.day@usdoj.gov

**COUNSEL FOR NEW RESIDENTIAL MORTGAGE LOAN TRUST 2017-6**
Theron S. Covey, Esq.
ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Bankruptcy Department
6409 Congress Ave., Suite 100
Boca Raton, Florida 33487
tcovey@rasflaw.com

-1-
CERTIFICATE OF SERVICE

**COUNSEL FOR JPMORGAN CHASE BANK**
Gilbert R. Yabes
ALDRIDGE PITE, LLP
4375 Jutland Drive, suite 200
P.O. Box 17933
San Diego, California 92177-0933
ecfcanb@aldridgepite.com

**COUNSEL FOR BANK OF NEW YORK MELLON**
JaVonne M. Phillips, Esq.
Kelly M. Raftery
MCCARTHY & HOLTHUS, LLP
1770 Fourth Avenue
San Diego, California 92101
kraftery@mccarthyholthus.com

**COUNSEL FOR SYNCHRONY BANK**
Valerie Smith
PRA RECEIVABLES MANAGEMENT, LLC
P.O. Box 41021
Norfolk, Virginia 23541
claims@recoverycorp.com

**COUNSEL FOR CIM TRUST 2017-9**
Kelly M. Raftery, Esq.
McCarthy & Holthus, LLP
1770 Fourth Avenue
San Diego, CA 92101
Tel: (877) 369-6122
kraftery@mccarthyholthus.com

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 12, 2018            /s/ Leah Jaques_____
                                 LEAH JAQUES

-2-
**CERTIFICATE OF SERVICE**