Exhibit 12     September 6, 2016 Opposition to Motion
for Interim Fee Order

1  Bradford C Floyd (State Bar #136459)
   Carlton D. Floyd (State Bar #275958)
2  FLOYD LAW FIRM
   819 Seventh Street
3  Eureka, California 95501
   Telephone:    (707) 445-9754
4  Facsimile:    (707) 445-5915

5
   Attorney for Respondents
6

7

8            SUPERIOR COURT OF CALIFORNIA, COUNTY OF HUMBOLDT

9   The CITY OF EUREKA, a municipal          Case No. DR110040
    corporation ("the City") and the PEOPLE
10  OF THE STATE OF CALIFORNIA ("the        **RESPONDENTS' OPPOSITION TO**
    People"), by and through Jones & Mayer,  **PRIOR RECEIVER MARK ADAMS'**
11  Special Counsel to the City of Eureka,   **MOTION FOR INTERIM FEE**
                                             **ORDER**
12                         Petitioners,

13  v.

14  FLOYD SQUIRES, an individual;
    FLOYD E. SQUIRES, an Individual;
15  FLOYD E. SQUIRES, III, an Individual;
    BETTY J. SQUIRES, an Individual; FB
16  SQUIRES FAMILY TRUST; BETTY J'S
    BUILDING, a California corporation; and
17  DOES ONE through SIXTY,

18                         Respondents.

19      Respondents submit the following opposition to prior receiver Mark Adam's motion

20  for interim fee order.

21                              **I. BACKGROUND**

22      The procedural background stated in this Court's September 13, 2013, ruling

23  appropriately summarizes the case up until that time.

24      1.   On January 18, 2011, City filed a complaint alleging substandard and
25           unsafe conditions at 26 properties owned by Squires. Among other
             remedies, City sought 1) an emergency appointment of a receiver for the
26           properties and a temporary restraining order, and 2) an order to show
             cause regarding the issuance of a preliminary injunction and the
27           appointment of a receiver.

28
   ────────────────────────────────────────────────────────────────
   RESPONDENTS' OPPOSITION TO PRIOR RECEIVER MARK ADAMS' MOTION FOR INTERIM FEE ORDER
                               DR110040

2.   The ex parte application for emergency appointment of a receiver and issuance of a temporary restraining order was denied on February 3, 2011.

3.   On February 28, 2011, a hearing on the Order to Show Cause Re: Appointment of a Receiver and Issuance of a Preliminary Injunction commenced.

4.   The Court appointed Mark Adams as provisional receiver for the 26 properties identified in the complaint on March 10, 2011. Mr. Adams was directed to investigate alleged violations at the properties, and submit a report to the Court within 30 days of appointment.

5.   Squires filed a notice of appeal of the order appointing Mr. Adams on March 11, 2011, and posted an undertaking in the amount of $50,000 on March 21, 2011. Enforcement of the order appointing the provisional receiver was stayed pending appeal. The Court of Appeal dismissed the appeal of the March 10, 2011 order as moot on February 7, 2012.

6.   The hearing on the Order to Show Cause Re: Appointment of a Receiver and Issuance of Preliminary Injunction concluded on June 13, 2011. The Court issued a ruling granting City's application for appointment of an interim receiver and for issuance of a preliminary injunction as to six properties owned by Squires on September 27, 2011. Counsel for City was directed to submit an order consistent with the ruling.

7.   On October 12, 2011, Squires filed an objection to the proposed order submitted by the City.

8.   On October 19, 2011, Floyd Squires Ill, Betty J. Squires and additional plaintiffs filed a complaint for trespass and intentional invasion of privacy against Mark Adams, Andrew Adams and California Receivership Group, LLC, case number DR 110803. The complaint concerns alleged conduct occurring on October 5 and October 6, 2011 on one or more of the six properties owned by Squires.

9.   On October 20, 2011, a hearing was conducted on Squire's objections to the proposed order submitted by the City. The Court entered an Order Appointing Receiver and Granting Preliminary Injunction on October 24, 2011.

10.  On October 25, 2011, Squires filed a Notice of Appeal o the October 24, 2011 order. Squires was ordered to post an undertaking pending the appeal, an undertaking in the amount of $50,000 was posted and the October 24, 2011 Order was stayed pending appeal on or about November 2, 2011.

11.  The trial on City's complaint seeking issuance of a permanent injunction, declaratory relief, civil penalties and the appointment of a receiver because of alleged nuisances and other substandard conditions at the 26 properties owned by Squires commenced on October 9, 2012.

12.  An Interim Ruling entered July 2, 2013. The Court found as follows:

1         a.    The evidence did not support a finding that the subject properties were presently maintained in such a manner as to come within the provisions of Health and Safety Code sections 17980.6 and 17980.7;

2

3

4         b.    The evidence presented concerning the current condition of the subject properties did not support a finding that any of the subject properties constituted a public nuisance as defined by Civil Code sections 3479 and 3480 or Eureka Municipal Code sections 150.162 or 150.163; and

5

6

7         c.    The evidence supported a finding that the violations of the Applicable codes and local ordinances at the subject properties constituted violations of Business and Professions Code section 17200 et. seq.

8

9    The Court further ordered that a receiver be appointed pursuant to Business and Professions Code section 17203 to 1) inspect the 26 properties in conjunction with City Building Department officials and 2) report to the Court concerning the current condition of the properties. City and Squires were directed to submit nominations for the receiver.

10

11

12    Respondents have attached the September 13, 2013, ruling as **Exhibit A.**

13    Since the September 13, 2013 ruling, the unrelated trespassing case went to jury trial.

14 However, beyond the March 10, 2011 and the October 24, 2011 orders, Adams was never

15 appointed again as receiver in this case. Adams has already been awarded receivership fees

16 for his limited times as receiver and everything Adams claims beyond that occurred when he

17 was not acting as a court appointed receiver. Therefore, Adams' request for additional

18 monies should be denied.

19                                  **II. ARGUMENT**

20    A.    **The Court Should Not Approve Any Payment of Attorney's Fees and/or Costs Incurred in Defending the Separate Trespass Action**

21

22       1.    <u>The trespass case was filed against Adams in his capacity as an individual and not as receiver</u>

23    On October 5 and 6, 2011[1], Mr. Adams wrongfully entered onto Respondents'

24 properties and posted the properties, made contact with the tenants and entered into several

25 of the units by claiming the Court had appointed him receiver when it had not.

26

27

28     [1]The Order appointing Mr. Adams as the receiver was entered by the Court on October 24, 2011.

1   Upon learning that Mr. Adams was trespassing onto Respondents' properties and

2   asserting control over those properties without a court order or court authorization, Bradford

3   C Floyd, attorney for Respondents, contacted Mr. Adams and informed him that his entering

4   onto these properties constituted a trespass and demanded Mr. Adams cease and desist the

5   above described conduct. Mr. Adams informed Mr. Floyd that he believed that the Ruling

6   was in fact an order, that the properties were under his control and that he could proceed as

7   receiver in whatever manner he chose.

8   On October 19, 2011, a lawsuit was filed in the Superior Court of California, County

9   of Humboldt against Mark Adams, Andrew Adams and the California Receiver Group for

10  trespass and invasion of privacy, case number DR110803. The named plaintiffs include

11  respondents and 5 tenants that reside at some of the subject properties.

12  Now Mr. Adams is asking the Court to have Respondents pay the attorney's fees he

13  will incur in this matter. This is inappropriate as Mr. Adams was not the receiver at the time

14  he wrongfully entered the properties and claimed they were under his control. The Court

15  should not approve any payment of attorney fees incurred in defending the trespass case filed

16  against Mr. Adams in his capacity as an individual and not as a receiver in this matter.

17     2.   The instant action and the trespass action are unrelated, and Adams should
            not be compensated for his defense of the trespass action from the receivership
18          action

19  A pending civil case is related to another pending civil case, or to a civil case that was

20  dismissed with or without prejudice, or to a civil case that was disposed of by judgment, if

21  the cases: (1) involve the same parties and are based on the same or similar claims; (2) arise

22  from the same or substantially identical transactions, incidents, or events requiring the

23  determination of the same or substantially identical questions of law or fact; (3) involve

24  claims against, title to, possession of, or damages to the same property; or (4) are likely for

25  other reasons to require substantial duplication of judicial resources if heard by different

26  judges. (Cal. Rules of Court, rule 3.300.)

27

28

1    Here, none of the requirements to constitute a related case exist, as follows:

2        a.    *The parties in the receivership case are not the same as the parties in the instant*

3    *action.* The parties in the receivership action are the City of Eureka and the People of the

4    State of California (Petitioners) and  Floyd Squires, Betty J. Squires, Fb Squires Family

5    Trust; Betty J's Building (Respondents). The parties in the instant case are Floyd E. Squires,

6    Betty Squires, Larry White, Judith White, Andrew Root, Deon Dekelaita, Darla Craig,

7    Edward "Eddie" Hamline (Plaintiffs) and Mark Adams, Andrew Adams, California

8    Receivership, LLC (Defendants).

9        b.    *The cases do not arise from the same or substantially identical questions of law*

10   *or fact* (one is in equity (receivership) and the other involves the tort of trespass). The former

11   involves a court trial and the latter involves a jury trial–which plaintiffs would request.

12   Although intent to commit the act or acts constituting the trespass is an essential element of

13   the tort, an intention to cause damage is not. (*Meyer v. Pacific Employers Ins. Co.* (1965) 233

14   Cal.App. 2d 321.) Therefore, trespass is characterized as an intentional tort, regardless of the

15   actor's motivation. To satisfy the intent requirement of trespass, the trespasser need only

16   intend to enter the property of another or cause some other object to enter the property.

17   (*Maye v. Yappen* (1863) 23 Cal. 306.) Whereas, a receivership is merely an equitable remedy

18   that is ancillary to a pending court action involving property. (*Yore v. Superior Court of City*

19   *and County of San Francisco* (1895) 108 Cal. 431, 435; *Steinberg v. Goldstein* (1954) 129

20   Cal. App. 2d 682, 686; *Hobson v. Pacific States Mercantile Co.* (1907) 5 Cal. App. 94, 101.)

21       c.    *There are no claims in the instant action involving property.* Although this case

22   does involve claims of possession of the same properties, it is solely a claim for trespass and

23   invasion of privacy and does not involve any issues of substandard condition of the property as in

24   the receivership case.

25       Trespass is an unauthorized or wrongful entry or intrusion onto land owned or

26   occupied by another that disrupts the other's right to exclusive possession of the land. (*Civic*

27   *Western Corp. v. Zila Industries, Inc.* (1977) (2nd Dist) 66 Cal App 3d 1.)  Invasion of

28

RESPONDENTS' OPPOSITION TO PRIOR RECEIVER MARK ADAMS' MOTION FOR INTERIM FEE ORDER
DR110040                                                  - 5 -

1    privacy is an act against a person's constitutional right. The constitutional right to privacy

2    is protected not merely against state action; it is considered an inalienable right which may

3    not be violated by anyone. Thus the right to privacy under the state constitution creates a

4    right of action against private as well as government entities. (*Ortiz v. Los Angeles Police*

5    *Relief Ass'n* (2002) 98 Cal. App. 4th 1288, as modified (June 19, 2002) and review denied

6    (Sept. 25, 2002); *Barbee v. Household Automotive Finance Corp* (2003) 113 Cal. App. 4th

7    525.)

8         With regard to the City's action, which is equitable, City is seeking the permanent

9    appointment of a receiver over the Subject Properties as well as 20 other properties that are

10    unrelated to this matter.

11         Adams argues that the jury found that Adams did nothing wrong. This is not entirely

12    true. The jury found that with respect to both Floyd and Betty Squires Adams entered onto

13    their property without permission. However, the jury found the Squires were not damaged

14    by the unauthorized entry. The verdict forms have been attached collectively as **Exhibit B**

15    As stated above, all these actions occurred prior to the October 24, 2011 order appointing

16    Adams as a receiver and before he had filed the receiver's oath and posted bond. Therefore,

17    the trespass action defense should not be paid by the Squires.

18      **B.**    **The Receiver Is Not Entitled To Additional Receivership Fees and Costs**

19         California Rules of Court, rule 3.1183(a) gives the court authority to review and

20    approve fees claimed by the receiver and to award either a greater or lessor amount of the

21    "full, fair and final value of the services rendered" as receiver. There is no provision for a

22    receiver to receive fees or costs incurred before the receivership is in place and the

23    receivership oath and bond are in place.

24         It appears that Adams is seeking reimbursement for costs and fees that have already

25    been sought in Adam's second receiver's report. The court already ruled on all those issues

26    back in the September 13, 2013 ruling and the subsequent order and essentially what Adams

27    is asking is for is to modify the previous order, which procedurally is improper.

28

1    Adams was never appointed as receiver after November 2011, therefore any

2  "receivership" fees incurred after November 2, 2011 should not be paid by Squires because

3  Adams never acted as receiver after that time. Therefore, the $150,606.49 requested in

4  receivership fees is also improper.

## III.  CONCLUSION

6    Based on the foregoing, the Court should disregard the receiver's request for fees and

7  costs, as at no time was the receiver authorized to act in that capacity. The receiver is not

8  entitled to reimbursement for fees and costs incurred in the separate and distinct trespass

9  action. The receiver is not entitled to additional receivership costs and fees because he has

10  already sought and been awarded those fees in a previous Court Order and has never been

11  appointed as receiver again since that time.

12                              Respectfully submitted,

13  Dated:  September 6, 2016         FLOYD LAW FIRM

15                              By _____
                                     Bradford C Floyd, Attorneys for
16                                   Respondents

# EXHIBIT A

**FILED**

SEP 13 2013 _per_

SUPERIOR COURT OF CALIFORNIA
COUNTY OF HUMBOLDT

1
2
3
4
5
6
7

8    *SUPERIOR COURT OF CALIFORNIA, COUNTY OF HUMBOLDT*

9

10   CITY OF EUREKA and THE PEOPLE            CASE NO. DR110040
     OF THE STATE OF CALIFORNIA,
11                                            **RULING**

12              Plaintiffs,

13      vs.

14   FLOYD SQUIRES and BETTY
     SQUIRES, et al.,
15
                Defendants.
16   _____/

17

18          Presently before the Court is the Third Receiver's Report and Declaration of

19   Mark Adams Re Interim Fees Request and Request for Lien on Real Property to Secure

20   Payment Thereof. The Third Receiver's Report is opposed by respondents, who filed

21   an opposition to Third Receiver's Report. The Court has considered the papers

22   submitted in support and opposition to the Third Receiver's Report. In light of the

23   materials submitted, the Court rules as follows:[1]

24   _____

25   [1] Petitioners are referred to herein collectively as "City," and the respondents are referred to herein collectively as "Squires."

     N:\DR110040\dkr
     _____ - 1 -
     RULING

1                                    DISCUSSION

2

3    Procedural History

4          The procedural history in this matter relevant to the issues before the Court is as

5    follows:

6          1. On January 18, 2011, City filed a complaint alleging substandard and unsafe

7    conditions at 26 properties owned by Squires. Among other remedies, City sought 1)

8    an emergency appointment of a receiver for the properties and a temporary restraining

9    order, and 2) an order to show cause regarding the issuance of a preliminary injunction

10   and the appointment of a receiver.

11         2. The ex parte application for emergency appointment of a receiver and

12   issuance of a temporary restraining order was denied on February 3, 2011.

13         3. On February 28, 2011, a hearing on the Order to Show Cause Re:

14   Appointment of a Receiver and Issuance of a Preliminary Injunction commenced.

15         4. The Court appointed Mark Adams as provisional receiver for the 26 properties

16   identified in the complaint on March 10, 2011. Mr. Adams was directed to investigate

17   alleged violations at the properties, and submit a report to the Court within 30 days of

18   appointment.

19         5. Squires filed a notice of appeal of the order appointing Mr. Adams on March

20   11, 2011, and posted on an undertaking in the amount of $50,000 on March 21, 2011.

21   Enforcement of the order appointing the provisional receiver was stayed pending

22   appeal.

23         The Court of Appeal dismissed the appeal of the March 10, 2011 order as moot

24   on February 7, 2012.

25         6. The hearing on the Order to Show Cause Re: Appointment of a Receiver and

N:\DR110040\dkr
                                          - 2 -
RULING

1  Issuance of a Preliminary Injunction concluded on June 13, 2011. The Court issued a

2  ruling granting City's application for appointment of an interim receiver and for issuance

3  of a preliminary injunction as to six properties owned by Squires on September 27,

4  2011.

5        Counsel for City was directed to submit an order consistent with the ruling.

6        7. On October 12, 2011, Squires filed an objection to the proposed order

7  submitted by the City.

8        8. On October 19, 2011, Floyd Squires III, Betty J. Squires and additional

9  plaintiffs filed a complaint for trespass and intentional invasion of privacy against Mark

10  Adams, Andrew Adams and California Receivership Group, LLC, case number

11  DR110803. The complaint concerns alleged conduct occurring on October 5 and

12  October 6, 2011 on one or more of the six properties owned by Squires.

13        9. On October 20, 2011, a hearing was conducted on Squire's objections to the

14  proposed order submitted by the City. The Court entered an Order Appointing Receiver

15  and Granting Preliminary Injunction on October 24, 2011.

16        10. On October 25, 2011, Squires filed a Notice of Appeal of the October 24,

17  2011 order. Squires was ordered to post an undertaking pending the appeal, an

18  undertaking in the amount of $50,000 was posted and the October 24, 2011 Order was

19  stayed pending appeal on or about November 2, 2011.

20        11. The trial on City's complaint seeking issuance of a permanent injunction,

21  declaratory relief, civil penalties and the appointment of a receiver because of alleged

22  nuisances and other substandard conditions at the 26 properties owned by Squires

23  commenced on October 9, 2012.

24        12. An Interim Ruling entered July 2, 2013. The Court found as follows:

25        a. The evidence did not support a finding that the subject properties were

N:\DR110040\dkr
                                        - 3 -
RULING

1       presently maintained in such a manner as to come within the provisions of Health

2       and Safety Code sections 17980.6 and 17980.7;

3       b. The evidence presented concerning the current condition of the subject

4       properties did not support a finding that any of the subject properties constituted

5       a public nuisance as defined by Civil Code sections 3479 and 3480 or Eureka

6       Municipal Code sections 150.162 or 150.163; and

7       c. The evidence supported a finding that the violations of the Applicable codes

8       and local ordinances at the subject properties constituted violations of Business

9       and Professions Code section 17200 et. seg.

10       The Court further ordered that a receiver be appointed pursuant to Business and

11 Professions Code section 17203 to 1) inspect the 26 properties in conjunction with City

12 Building Department officials and 2) report to the Court concerning the current condition

13 of the properties. City and Squires were directed to submit nominations for the receiver.

14 Analysis

15       California Rules of Court, Rule 3.1181 provides that the receiver is the agent of

16 the Court and not of any party.

17       The City filed an ex parte application for emergency appointment of a receiver

18 and issuance of a temporary restraining order on January 18, 2011. The ex parte

19 application was denied on February 3, 2011. Mr. Adams' work on the case at this stage

20 of the proceedings would appear to be at the behest of the City; he was not acting as an

21 agent of the Court.

22       The Court initially appointed Mr. Adams as its agent in this matter on March 10,

23 2011. Mr. Adams was authorized to investigate alleged violations at the 26 properties,

24 and submit a report to the Court within 30 days. Enforcement of the order appointing

25

N:\DR110040\dkr
                  - 4 -

RULING

1  were incurred prior to Mr. Adams appointment by the Court as its agent as provisional

2  receiver on March 10, 2011. The request for fees and costs incurred prior to

3  appointment as the Court's agent should be directed to the party requesting the

4  services and requiring Mr. Adams attendance at Court hearings.

5      2. The request for fees and costs expended in defense of *Squires v. Adams*,

6  case number DR110803, is denied without prejudice.

7      Plaintiffs allege in that matter that defendants were not acting within the scope of

8  their authority as duly appointed receiver when they engaged in the conduct alleged to

9  have occurred on October 5 and October 6, 2011. Until this issue is determined, the

10  request for fees and costs is denied without prejudice.

11      3. The request for the following fees and costs is granted:

12      a. Fees and costs expended when performing duties as provisional receiver for

13  the 26 properties identified in the complaint between March 10, 2011 and March

14  21, 2011;

15      b. Fees and costs expended when performing duties as interim receiver for six

16  properties owned by Squires between October 24, 2011 and November 2, 2011;

17  and

18      c. Premiums for bond for receiver required by the Court.

19      The Receiver shall submit an order consistent with this ruling, approved as to

20  form by counsel for Squires, for signature by the Court.

21  Dated: September 13, 2013

          DALE A. REINHOLTSEN

22                                      Dale A. Reinholtsen, Judge of the Superior Court

23

24

25

N:\DR110040\dkr
                                        - 6 -
RULING

STATE OF CALIFORNIA,        )
COUNTY OF HUMBOLDT          ) SS. AFFIDAVIT OF SERVICE BY MAIL

I, **Susan C. Edwards** , say:

That I am a citizen of the United States, over 18 years of age, a resident of the County of Humboldt, State of California, and not a party to the within action; that my business address is 825 5th Street, Humboldt County Courthouse, Eureka, California, 95501; that I served a true copy of the attached RULING by placing said copies in the attorney's mail delivery box in the Court Operations Office at Eureka, California on the date indicated below, or by placing said copies in envelope(s) and then placing the envelope(s) for collection and mailing on the date indicated below following our ordinary business practices. I am readily familiar with this business practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service at Eureka, California in a sealed envelope with postage prepaid. These copies were addressed to:

Dean Pucci, Jones and Mayer, 3777 N. Harbor Blvd., Fullerton, CA 92835

Krista MacNevin Jee, Jones and Mayer, 3777 N. Harbor Blvd., Fullerton, CA 92835

Bradford Floyd, Court Operations Box #102

California Receivership Group, LLC, 150 So. Barrington Ave., #100, Los Angeles, CA 90049

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on the _16_ day of September, 2013, at the City of Eureka, County of Humboldt, State of California.

KERRI L. KEENAN, Clerk of the Court

By **Susan C. Edwards**

Deputy Clerk

# EXHIBIT B

**FILED**

JUL 2 2 2016

SUPERIOR COURT OF CALIFORNIA
COUNTY OF HUMBOLDT

SUPERIOR COURT OF CALIFORNIA, COUNTY OF HUMBOLDT

| | |
|---|---|
| FLOYD E. SQUIRES, III, BETTY SQUIRES, LARRY WHITE, JUDITH WHITE, ANDREW ROOT, DEON DEKELAITA, DARLA CRAIG, EDWARD "EDDIE" HAMLINE,<br><br>Plaintiffs,<br><br>v.<br><br>MARK ADAMS, ANDREW ADAMS, CALIFORNIA RECEIVERSHIP, LLC, a California limited liability company, and DOES 1-50,<br><br>Defendants. | Case No. DR110803<br><br>**VERDICT FORM FOR FLOYD SQUIRES** |

We answer the questions submitted to us as follows:

## VF-1800 INTRUSION INTO PRIVATE AFFAIRS

We answer the questions submitted to us as follows:

1. Did Floyd Squires have a reasonable expectation of privacy in the 6 properties?

    ✓ Yes
    ___ No

If your answer to question 1 is yes, then answer question 2. If you answered no, do not answer any more questions about Floyd Squires' first claim and, proceed to the questions about Floyd Squires' second claim.

2. Did any defendants intentionally intrude in Floyd Squires' properties?

    ___ Yes

1    √ No

If your answer to question 2 is yes, then answer question 3. If you answered no, do not answer any
2    more questions about Floyd Squires' first claim and, proceed to the questions about Floyd Squires'
     second claim.
3
          3. Would defendant's intrusion be highly offensive to a reasonable person?
4
          _____ Yes
5         _____ No

6    If your answer to question 3 is yes, then answer question 4. If you answered no, do not answer any
     more questions about Floyd Squires' first claim and, proceed to the questions about Floyd Squires'
7    second claim.

8         4. Was defendant's conduct a substantial factor in causing harm to Floyd Squires? ·

9         _____ Yes
          _____ No
10
     If your answer to question 4 is yes, then answer question 5. If you answered no, do not answer any
11   more questions about Floyd Squires' first claim and, proceed to the questions about Floyd Squires'
     second claim.
12
          5. As to each of the properties at issue in this case were all of them under the legal control
13   of defendants at the time of the alleged invasion of privacy?

14        _____ Yes
          _____ No
15
     If your answer to question 5 is yes, do not answer any more questions about Floyd Squires' first
16   claim, and proceed to questions about Floyd Squires second claim.

17        6.    What are Floyd Squires' damages?

18
          Economic Loss:      $ _____
19
          Noneconomic Loss:   $ _____
20
          TOTAL               $ _____
21

22   **VF 2000-TRESPASS**

23        1. Did Floyd Squires own the properties?

24        √ Yes
          _ No
25
     If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no
26   further questions, and have the presiding juror sign and date this form.

27

28   _____

                              VERDICT FORM

1    2. Did any defendants intentionally enter or cause another person to enter Floyd Squires'
     properties?

2        ___√___ Yes
3        _____ No

4    If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no
     further questions, and have the presiding juror sign and date this form.
5
        3.      Did any defendants enter the properties without Floyd Squires' permission?
6
         ___√___ Yes
7        _____ No

8    If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no
     further questions, and have the presiding juror sign and date this form.
9
        4.      Was defendant's conduct a substantial factor in causing harm to Floyd Squires?
10
         _____ Yes
11       ___√___ No

12   If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no
     further questions, and have the presiding juror sign and date this form.
13
        5.      As to each of the properties at issue in this case, were all of them under the legal
14   control of defendants at the time of the alleged trespass?

15       _____ Yes
         _____ No
16
     If your answer to question 5 is yes, stop here, answer no further questions, and have the presiding
17   juror sign and date this form.

18      6.      What are Floyd Squires' damages?

19
         Economic Loss:        $_____
20
         Noneconomic Loss:    $_____
21
         TOTAL                $_____
22

23

24   Signed: Presiding Juror

25
     Dated:  _7/22/2016_
26
     After this verdict form has been signed, notify the bailiff that you are ready to present your
27   verdict in the courtroom.

28   _____
                                    VERDICT FORM

1

2

3

4

5

6

7

8    SUPERIOR COURT OF CALIFORNIA, COUNTY OF HUMBOLDT

9

| FLOYD E. SQUIRES, III, BETTY SQUIRES, LARRY WHITE, JUDITH WHITE, ANDREW ROOT, DEON DEKELAITA, DARLA CRAIG, EDWARD "EDDIE" HAMLINE, | Case No. DR110803 |
|---|---|
| | **VERDICT FORM FOR BETTY SQUIRES** |
| Plaintiffs, | |
| v. | |
| MARK ADAMS, ANDREW ADAMS, CALIFORNIA RECEIVERSHIP, LLC, a California limited liability company, and DOES 1-50, | |
| Defendants. | |

FILED

JUL 2 2 2016

SUPERIOR COURT OF CALIFORNIA,
COUNTY OF HUMBOLDT

19    We answer the questions submitted to us as follows:

20    **VF-1800 INTRUSION INTO PRIVATE AFFAIRS**

21    We answer the questions submitted to us as follows:

22    1. Did Betty Squires have a reasonable expectation of privacy in the 6 properties?

23    ___√___ Yes
        ___ No

24

25    If your answer to question 1 is yes, then answer question 2. If you answered no, do not answer any more questions about Betty Squires' first claim and, proceed to the questions about Betty Squires' second claim.

26    2.    Did any defendants intentionally intrude in Betty Squires' properties?

27    ___ Yes

28

VERDICT FORM
DR110803

1     ✓   No

2 If your answer to question 2 is yes, then answer question 3. If you answered no, do not answer any more questions about Betty Squires' first claim and, proceed to the questions about Betty Squires' second claim.

3

      3. Would defendant's intrusion be highly offensive to a reasonable person?

4

5     _____ Yes
    _____ No

6 If your answer to question 3 is yes, then answer question 4. If you answered no, do not answer any more questions about Betty Squires' first claim and, proceed to the questions about Betty Squires'
7 second claim.

8       4. Was defendant's conduct a substantial factor in causing harm to Betty Squires?

9     _____ Yes
    _____ No

10

11 If your answer to question 4 is yes, then answer question 5. If you answered no, do not answer any more questions about Betty Squires' first claim and, proceed to the questions about Betty Squires' second claim.

12

      5. As to each of the properties at issue in this case were all of them under the legal control
13 of defendants at the time of the alleged invasion of privacy?

14     _____ Yes
    _____ No

15

16 If your answer to question 5 is yes, do not answer any more questions about Betty Squires' first claim, and proceed to questions about Betty Squires second claim.

17     6.     What are Betty Squires' damages?

18

    Economic Loss:     $_____
19

    Noneconomic Loss:    $_____
20

    TOTAL       $_____
21

22 **VF 2000-TRESPASS**

23     1. Did Betty Squires own the properties?

24     ✓   Yes
    _____ No

25

26 If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

27

28

_____

VERDICT FORM

1    2. Did any defendants intentionally enter or cause another person to enter Betty Squires'
     properties?
2
         ✓  Yes
3           No

4    If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no
     further questions, and have the presiding juror sign and date this form.
5
         3.    Did any defendants enter the properties without Betty Squires' permission?
6
         ✓  Yes
7           No

8    If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no
     further questions, and have the presiding juror sign and date this form.
9
         4.    Was defendant's conduct a substantial factor in causing harm to Betty Squires?
10
            Yes
11        ✓  No

12   If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no
     further questions, and have the presiding juror sign and date this form.
13
         5.    As to each of the properties at issue in this case, were all of them under the legal
14   control of defendants at the time of the alleged trespass?

15          Yes
            No
16
     If your answer to question 5 is yes, stop here, answer no further questions, and have the presiding
17   juror sign and date this form.

18       6.    What are Betty Squires' damages?

19
         Economic Loss:        $_____
20
         Noneconomic Loss:  $_____
21
         TOTAL                    $_____
22

23

24   Signed:  Presiding Juror

25
     Dated:  _7/22/2016_.
26
     After this verdict form has been signed, notify the bailiff that you are ready to present your
27   verdict in the courtroom.

28
_____
                              VERDICT FORM

FILED

JUL 2 2 2016

SUPERIOR COURT OF CALIFORNIA
COUNTY OF HUMBOLDT

SUPERIOR COURT OF CALIFORNIA, COUNTY OF HUMBOLDT

| | |
|---|---|
| FLOYD E. SQUIRES, III, BETTY SQUIRES, LARRY WHITE, JUDITH WHITE, ANDREW ROOT, DEON DEKELAITA, DARLA CRAIG, EDWARD "EDDIE" HAMLINE,<br><br>Plaintiffs,<br><br>v.<br><br>MARK ADAMS, ANDREW ADAMS, CALIFORNIA RECEIVERSHIP, LLC, a California limited liability company, and DOES 1-50,<br><br>Defendants. | Case No. DR110803<br><br>**VERDICT FORM FOR ANDREW ROOT** |

We answer the questions submitted to us as follows:

**VF-1800 INTRUSION INTO PRIVATE AFFAIRS**

We answer the questions submitted to us as follows:

1. Did Andrew Root have a reasonable expectation of privacy in his place of residence?

   √ Yes
   ___ No

If your answer to question 1 is yes, then answer question 2. If you answered no, do not answer any more questions about Andrew Root's first claim and, and proceed to the questions about Andrew Root's second claim.

2. Did any defendants intentionally intrude in Andrew Root's place of residence?

   ___ Yes
   √ No

VERDICT FORM

1    If your answer to question 2 is yes, then answer question 3. If you answered no, do not answer any more questions about Andrew Root's first claim and, and proceed to the questions about Andrew
2    Root's second claim.

3       3. Would defendant's intrusion be highly offensive to a reasonable person?

4         _____ Yes
         _____ No
5

6    If your answer to question 3 is yes, then answer question 4. If you answered no, do not answer any more questions about Andrew Root's first claim and, and proceed to the questions about Andrew
7    Root's second claim.

      4. Was defendant's conduct a substantial factor in causing harm to Andrew Root?
8

9         _____ Yes
         _____ No

10 If your answer to question 4 is yes, then answer question 5. If you answered no, do not answer any more questions about Andrew Root's first claim and, and proceed to the questions about Andrew
11 Root's second claim.

12       5. As to each of the properties at issue in this case were all of them under the legal control of defendants at the time of the alleged invasion of privacy?
13

14       _____ Yes _____ No

15 If your answer to question 5 is yes, do not answer any more questions about Andrew Root's first claim, and proceed to questions about Andrew Root's second claim.

16       6.     What are Andrew Root's damages?

17

18       Economic Loss:      $_____

      Noneconomic Loss:   $_____
19

20       TOTAL          $_____

21

22 **VF 2000-TRESPASS**

23       We answer the questions submitted to us as follows:

24       1. Did Andrew Root lease and occupy the property?

25         __√__ Yes
         _____ No
26

27 If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

28 _____

VERDICT FORM
Case: 17-10828    Doc# 286-12    Filed: 05/25/18 DREntered: 05/25/18 15:24:02    Page 24
of 33    - 2 -

1    2. Did any defendants intentionally enter or cause another person to enter Andrew Root's
     property?    Yes
2

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no
3    further questions, and have the presiding juror sign and date this form.

4         3.    Did any defendants enter the property without Andrew Root's permission?
               MJK  1-22-2016
5                Yes
              ✓  No
6

If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no
7    further questions, and have the presiding juror sign and date this form.

8         4.    Was defendant's conduct a substantial factor in causing harm to Andrew Root?

9              Yes
               No
10

If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no
11   further questions, and have the presiding juror sign and date this form.

12        5.    As to each of the properties at issue in this case, were all of them under the legal
     control of defendants at the time of the alleged trespass?
13
          Yes _____ No
14

If your answer to question 5 is yes, stop here, answer no further questions, and have the presiding
15   juror sign and date this form.

16        6.    What are Andrew Root's damages?

17
          Economic Loss:      $_____
18
          Noneconomic Loss:   $_____
19
          TOTAL               $_____
20

21

22
     Signed: Presiding Juror
23

24   Dated: ___7/22/2016___

25   After this verdict form has been signed, notify the bailiff that you are ready to present your
     verdict in the courtroom.
26

27

28
                                    VERDICT FORM

FILED

JUL 2 2 2016

SUPERIOR COURT OF CALIFORNIA
COUNTY OF HUMBOLDT

1

2

3

4

5

6

7

8      SUPERIOR COURT OF CALIFORNIA, COUNTY OF HUMBOLDT

9    FLOYD E. SQUIRES, III, BETTY          | Case No. DR110803
     SQUIRES, LARRY WHITE, JUDITH
10   WHITE, ANDREW ROOT, DEON              | **VERDICT FORM FOR DARLA**
     DEKELAITA, DARLA CRAIG, EDWARD        | **CRAIG**
11   "EDDIE" HAMLINE,

12                  Plaintiffs,

13   v.

14   MARK ADAMS, ANDREW ADAMS,
     CALIFORNIA RECEIVERSHIP, LLC, a
15   California limited liability company, and
     DOES 1-50,
16

17                  Defendants.

18       We answer the questions submitted to us as follows:

19   **VF-1800 INTRUSION INTO PRIVATE AFFAIRS**

20       We answer the questions submitted to us as follows:

21       1. Did Darla Craig have a reasonable expectation of privacy in her place of residence?

22       __√__ Yes
         ____ No
23

24   If your answer to question 1 is yes, then answer question 2. If you answered no, do not answer any
     more questions about Darla Craig's first claim and, and proceed to the questions about Darla Craig's
25   second claim.

26       2.   Did any defendants intentionally intrude in Darla Craig's place of residence?

27       ____ Yes
         __√__ No
28

1   If your answer to question 2 is yes, then answer question 3. If you answered no, do not answer any
    more questions about Darla Craig's first claim and, and proceed to the questions about Darla Craig's
2   second claim.

3       3. Would defendant's intrusion be highly offensive to a reasonable person?

4   _____Yes
        _____No
5

    If your answer to question 3 is yes, then answer question 4. If you answered no, do not answer any
6   more questions about Darla Craig's first claim and, and proceed to the questions about Darla Craig's
    second claim.
7

    4. Was defendant's conduct a substantial factor in causing harm to Darla Craig?
8

9   _____Yes
        _____No

10  If your answer to question 4 is yes, then answer question 5. If you answered no, do not answer any
    more questions about Darla Craig's first claim and, and proceed to the questions about Darla Craig's
11  second claim.

12      5.      As to each of the properties at issue in this case, were all of them under the legal
    control of defendants at the time of the alleged trespass?
13

14  _____ Yes
    _____ No

15      If your answer to question 5 is yes, do not answer any more questions about Darla Craig's
    first claim, and proceed to questions about Darla Craig's second claim.
16

17      6.      What are Darla Craig's damages?

    Economic Loss:         $_____
18
    Noneconomic Loss:      $_____
19
    TOTAL                  $_____
20

21  VF 2000-TRESPASS  .

22      We answer the questions submitted to us as follows:

23      1. Did Darla Craig lease and occupy the property?

24   √  Yes
        _____No
25

    If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no
26  further questions, and have the presiding juror sign and date this form.

27

28

1      2. Did any defendants intentionally enter or cause another person to enter Darla Criag's property?

2

     \_\_\_\_Yes

3     \_✓\_No

4  If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5

6      3.    Did any defendants enter the property without Darla Craig's permission?

     \_\_\_\_Yes

7     \_\_\_\_No

8  If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

9

      4.    Was defendant's conduct a substantial factor in causing harm to Darla Craig?

10

     \_\_\_\_Yes

11    \_\_\_\_No

12  If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

13

      5.    As to each of the properties at issue in this case, were all of them under the legal
14  control of defendants at the time of the alleged trespass?

15     _____ Yes
     \_\_\_\_ No

16

If your answer to question 5 is yes, stop here, answer no further questions, and have the presiding
17  juror sign and date this form.

18      6.    What are Darla Craig's damages?

19

     Economic Loss:    $_____

20

     Noneconomic Loss:  $_____

21

     TOTAL          $_____

22

23

24  Signed:  Presiding Juror

25

    Dated:    7/22/2016 .

26

After this verdict form has been signed, notify the bailiff that you are ready to present your
27  verdict in the courtroom.

28

                      VERDICT FORM

1

2

3

4

5

6

7

8    SUPERIOR COURT OF CALIFORNIA, COUNTY OF HUMBOLDT

FILED

JUL 2 2 2016

SUPERIOR COURT OF CALIFORNIA
COUNTY OF HUMBOLDT

9    FLOYD E. SQUIRES, III, BETTY            Case No. DR110803
     SQUIRES, LARRY WHITE, JUDITH
10   WHITE, ANDREW ROOT, DEON               **VERDICT FORM FOR EDWARD**
     DEKELAITA, DARLA CRAIG, EDWARD         **HAMLINE**
11   "EDDIE" HAMLINE,

12                    Plaintiffs,

13   v.

14   MARK ADAMS, ANDREW ADAMS,
     CALIFORNIA RECEIVERSHIP, LLC, a
15   California limited liability company, and
     DOES 1-50,
16

17                    Defendants.

18

19        We answer the questions submitted to us as follows:

20   **VF-1800 INTRUSION INTO PRIVATE AFFAIRS**

21        We answer the questions submitted to us as follows:

22        1. Did Edward Hamline have a reasonable expectation of privacy in his place of residence
     and the surrounding area?

23
          _____ Yes
24        __√__ No

25   If your answer to question 1 is yes, then answer question 2. If you answered no, do not answer any
     more questions about Edward Hamline's first claim and, proceed to the questions about Edward
26   Hamline's second claim.

27

28
─────────────────────────────────────────────────────────
                              VERDICT FORM
                              DR110803

1     2.     Did any defendants intentionally intrude in Edward Hamline's place of residence or the surrounding area?

2
      _____Yes
3     _____No

If your answer to question 2 is yes, then answer question 3. If you answered no, do not answer any
4  more questions about Edward Hamline's first claim and, proceed to the questions about Edward
   Hamline's second claim.
5
      3. Would defendant's intrusion be highly offensive to a reasonable person?
6
      _____Yes
7     _____No

8  If your answer to question 3 is yes, then answer question 4. If you answered no, do not answer any
   more questions about Edward Hamline's first claim and,  proceed to the questions about Edward
9  Hamline's second claim.

10     4. Was defendant's conduct a substantial factor in causing harm to Edward Hamline?

11     _____Yes
       _____No
12
   If your answer to question 4 is yes, then answer question 5. If you answered no, do not answer any
13 more questions about Edward Hamline's first claim and, proceed to the questions about Edward
   Hamline's second claim.
14
       5. As to each of the properties at issue in this case were all of them under the legal control
15 of defendants at the time of the alleged invasion of privacy?

16     _____Yes
       _____No
17
   If your answer to question 5 is yes, do not answer any more questions about Edward Hamline's first
18 claim, and proceed to questions about Edward Hamline's second claim.

19     6.     What are Edward Hamline's damages?

20
       Economic Loss:       $_____
21
       Noneconomic Loss:    $_____
22
       TOTAL                $_____
23

24 **VF 2000-TRESPASS**

25     1. Did Edward Hamline lease and occupy the property?

26     √ Yes
       _____No
27

28

1  | If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2

3  |     2. Did any defendants intentionally enter or cause another person to enter Edward Hamline's property?  *No*

4  | If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5

6  |     3.     Did any defendants enter the property without Edward Hamline's permission?

7  |     _____Yes
    _____No

8  | If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

9

10 |     4.     Was defendant's conduct a substantial factor in causing harm to Edward Hamline?

11 |     _____Yes
    _____No

12 | If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

13

14 |     5.     As to each of the properties at issue in this case, were all of them under the legal control of defendants at the time of the alleged trespass?

15 | _____ Yes  _____ No

16 | If your answer to question 5 is yes, stop here, answer no further questions, and have the presiding juror sign and date this form.

17 |     6.     What are Edward Hamline's damages?

18

19 | Economic Loss:    $_____

20 | Noneconomic Loss:   $_____

21 | TOTAL       $_____

22

23

24 | Signed: Presiding Juror

25

26 | Dated: _7/22/2016_

27 | After this verdict form has been signed, notify the bailiff that you are ready to present your verdict in the courtroom.

28

VERDICT FORM

POS-040

| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO.: | FOR COURT USE ONLY |
|---|---|

NAME: Bradford C Floyd SBN 136459
FIRM NAME: FLOYD LAW FIRM
STREET ADDRESS: 819 7th Street
CITY: Eureka, CA 95501 STATE: ZIP CODE:
TELEPHONE NO.: (707) 445-9754 FAX NO.: (707) 445-5915
E-MAIL ADDRESS: bcfloyd@floydlawfirm.net
ATTORNEY FOR (name): Respondents

SUPERIOR COURT OF CALIFORNIA, COUNTY OF HUMBOLDT
STREET ADDRESS: 825 Fifth Street
MAILING ADDRESS:
CITY AND ZIP CODE: Eureka, CA 95501
BRANCH NAME:

Plaintiff/Petitioner: City of Eureka, et al.
Defendant/Respondent: FLOYD E. SQUIRES, et al.

**PROOF OF SERVICE-CIVIL**

Check method of service (only one):
- [ ] By Personal Service
- [■] By Mail
- [ ] By Overnight Delivery
- [ ] By Messenger Service
- [■] By Fax

CASE NUMBER:
DR110040

JUDICIAL OFFICER:

DEPARTMENT:

*Do not use this form to show service of a summons and complaint or for electronic service.*
*See USE OF THIS FORM on page 3.*

1. At the time of service I was over 18 years of age and not a party to this action.

2. My residence or business address is:
   819 Seventh Street
   Eureka CA 95501

3. [■] The fax number from which I served the documents is (complete if service was by fax):
   707-445-5915

4. On (date): September 6, 2016 I served the following documents (specify):
   RESPONDENTS' OPPOSITION TO PRIOR RECEIVER MARK ADAMS' MOTION FOR INTERIM FEE ORDER

   [ ] The documents are listed in the Attachment to Proof of Service-Civil (Documents Served) (form POS-040(D)).

5. I served the documents on the person or persons below, as follows:
   a. Name of person served: Mark S. Adams, Esq.
   b. [■] (Complete if service was by personal service, mail, overnight delivery, or messenger service.)
      Business or residential address where person was served:
      2716 Ocean Park Blvd., Suite 3010
      Santa Monica, CA 90405
   c. [■] (Complete if service was by fax.)
      (1) Fax number where person was served:
          310-471-8180

      (2) Time of service:
      [ ] The names, addresses, and other applicable information about persons served is on the Attachment to Proof of Service-
      Civil (Persons Served) (form POS-040(P)).

6. The documents were served by the following means (specify):
   a. [ ] By personal service. I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a
      party represented by an attorney, delivery was made (a) to the attorney personally, or (b) by leaving the documents at the
      attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an
      individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by
      leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For
      a party, delivery was made to the party or by leaving the documents at the party's residence with some person not
      younger than 18 years of age between the hours of eight in the morning and six in the evening.

Page 1 of 3

| Form Approved for Optional Use Judicial Council of California POS-040 [Rev. January 1, 2016] **Essential [=] Forms™** | **PROOF OF SERVICE - CIVIL** (Proof of Service) | Code of Civil Procedure, §§ 1011, 1013, 1013a, 2015.5; Cal. Rules of Court, rule 2.306 www.courts.ca.gov |
|---|---|---|

**POS-040**

| CASE NAME City of Eureka v. Squires | CASE NUMBER: DR110040 |
|---|---|

6.  b.  ☒ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one)*:

    (1)  ☐ deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

    (2)  ☒ placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.
I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state):* Eureka, California

  c.  ☐ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

  d.  ☐ **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

  e.  ☒ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: September 6, 2016

Gina M. Emery
       (TYPE OR PRINT NAME OF DECLARANT)                         ▶                  (SIGNATURE OF DECLARANT)

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

## DECLARATION OF MESSENGER

☐ **By personal service.** I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

I served the envelope or package, as stated above, on *(date):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

           (NAME OF DECLARANT)                         ▶                (SIGNATURE OF DECLARANT)

Case: 17-10828    Doc# 286-12    Filed: 05/25/18    Entered: 05/25/18 15:24:02    Page 33
of 33