Exhibit 13    September 9, 2016 Reply to Opposition to
Motion for Interim Fee Order



FILED

SEP 1 3 2016

SUPERIOR COURT OF CALIFORNIA
COUNTY OF HUMBOLDT

1　MARK S. ADAMS, SB#68300
　　ANDREW F. ADAMS, SB#275109
2　California Receivership Group, PBC
　　2716 Ocean Park Blvd., Suite 3010
3　Santa Monica, California 90405
　　Tel. (310) 471-8181
4　Fax (310) 471-8180
　　madams@calreceivers.com
5　Court-Appointed Receiver

6

7　　　　　SUPERIOR COURT OF THE STATE OF CALIFORNIA

8　　　　　　　　FOR THE COUNTY OF HUMBOLDT

9

10　CITY OF EUREKA, a municipal　　　　　| Case No.: DR110040
　　corporation, ("the City") and the PEOPLE　|
11　OF THE STATE OF CALIFORNIA, ("the　| **PRIOR RECEIVER MARK S. ADAMS'**
　　People") by and through Jones & Mayer,　| **REPLY TO RESPONDENTS OPPOSITION**
12　Special Counsel of the City of Eureka,　　| **TO MOTION FOR INTERIM FEE ORDER;**
　　　　　　　　　　　　　　　　　　　　　| **DECLARATION OF ANDREW ADAMS**
13　　　　　　　　　　Petitioner,　　　　　|
　　　　　　　　　　　　　　　　　　　　　| Date: September 16, 2016
14　　　　vs.　　　　　　　　　　　　　　| Time: 1:45 p.m.
　　　　　　　　　　　　　　　　　　　　　| Dept.: 8
15　FLOYD SQUIRES; FLOYD E. SQUIRES;　|
16　FLOYD E. SQUIRES III; BETTY J.　　　|
　　SQUIRES; FB SQUIRES FAMILY　　　　|
17　TRUST; BETTY J'S BUILDING, INC; and　|
　　DOES ONE through SIXTY,　　　　　　|
18　　　　　　　　　　　　　　　　　　　|
　　　　　　　　　　Respondents.　　　　|
19

20

21

22　　　　Receiver Mark Adams ("Receiver") hereby submits the following Reply Memorandum of

23　Points and Authorities in response to Respondents' Opposition.

24

25　　　　　　　　　　　　**I.　　INTRODUCTION**

26　　　　Health and Safety Code §17980.7(c)(15) authorizes the court to require the receivership

27　property owner to pay "all unrecovered costs associated with the receivership." The Court has

28　full discretion on awarding any pre-appointment receivership fees and costs, and there is ample

**PRIOR RECEIVER'S REPLY TO RESPONDENTS' OPPOSITION TO INTERIM FEE MOTION**

RECEIVED

SEP 1 3 2016

SUPERIOR COURT OF CALIFORNIA
COUNTY OF HUMBOLDT

Case: 17-10828　　Doc# 286-13　　Filed: 05/25/18　　Entered: 05/25/18 15:34:02　　Page 2
of 46

1  justification for pre-appointment preparations made by Mark Adams for both the 26-property and

2  the six-property appointment orders. The pre-appointment receivership fees and costs should be

3  paid for.

4  However, the costs of the defense, incurred from November 2011-current are not

5  similarly left up to the discretion of the Court alone. Those outside counsel costs and the time

6  billed by CRG in successfully defending against the tort claims must be paid under California

7  law. Over a hundred years of case law is absolutely clear that an appointed receiver is to recover

8  the costs of a successful defense, and that recovery is to come from the receivership estate and/or

9  the receivership property owner. In this way, those defense fees are not discretionary.

10  The Respondents' Opposition argues that Adams should recover only for the two periods

11  when he was appointed, ignoring the authority for the Court to award preparation and pre-

12  appointment fees and costs. The Opposition does not address or dispute that the legal defense

13  costs have to be paid under California law, relying instead on a claim that they sued Adams

14  personally instead of in his official capacity. The distinction between personal and official

15  liability was relevant at the outset of the tort case and in the jury's Judgment; however now that

16  the Respondents' claims have been denied and their spurious nature laid bare, that distinction

17  means nothing. This Court should award all of the pre-appointment fees and costs, and must

18  award the legal fees and costs incurred after 2011.

19

20  ## II.  THE SQUIRES V. ADAMS SUIT SETTLED THE SQUIRES' CLAIMS

21  The pre-appointment preparatory fees and costs are up to this Court's discretion, and this

22  Court should award those as fees and costs incurred within the scope of the two appointment

23  orders. Receivers do pre-appointment preparatory work on nearly all cases, and the appointing

24  Court has discretion to determine whether or not those fees are reasonable and should be paid.

25  Defense costs in a separate tort suit, and the costs of defending against unfounded challenges to

26  the receivership work, are not similarly left entirely to the Court's discretion: California law

27  requires that those fees and costs be paid for by the Respondents. The Judgment in the tort case

28  provides this Court with the only factual determination necessary to order those fees paid.

-2-

**PRIOR RECEIVER'S REPLY TO RESPONDENTS' OPPOSITION TO INTERIM FEE MOTION**

### a. This Court has broad discretion in awarding the receivership fees

This Court can award fees for time spent pursuant to the Appointment Order. This can be for all pre-appointment time, post-appointment time, or any of the time and hard costs that the Court believes should be paid. Miller & Starr, 12 Cal. Real Est. 41:22 (4th ed.), fn. 3. This was summarized in Section III of the Motion, but in a receivership, the appointing court has "broad discretion" in issuing payment orders as needed, which, if reviewed, are subjected to the "highly deferential standard of review." *City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 933, 934; see also *City of Riverside v. Horspool* (2014) 223 Cal.App.4th 670, 685, citing *Melikian v. Aquila, Ltd.*(1998) 63 Cal.App.4th 1364, 1368 and *People v. Riverside University* (1973) 35 Cal.App.3d 572, 587.

That discretion does not end when it comes to fees and costs incurred prior to the filing of the oath or the purchase of the bond. Code Civ. Proc., § 567 requires that oath and bond, and states that "Before entering upon the duties of the receiver," the oath and bond are to be issued. But there is no bar on payment for time spent prior to the oath and bond (presumably before entry upon the duties of a receiver). Respondents argue in the Opposition: "[t]here is no provision for a receiver to receive fees or costs incurred before the receivership is in place and the receivership oath and bond are in place," without any attribution or justification. That sentence is not backed up by any case law, statute, or even some commentator or secondary source postulating on a receiver's acceptable fees and costs. And it runs contrary to receivership practice throughout the state. Very few categories of fees and costs are included or excluded by statute, as they are entirely left to the appointing court's discretion. By way of example, security costs are not explicitly approved by statute, but they are often necessary. Or fencing or board-up costs are not explicitly authorized. Or even sometimes, post-discharge work is necessary, and that is paid if the appointing court sees fit to pay it. Every single category of fee is not set by statute, but is instead left to the discretion of the appointing court because that is the court familiar with the reason for the appointment. *Venza v. Venza* (1951) 101 Cal.App.2d 678, 680.

Below are some examples that show the logic behind receivers doing pre-appointment work, proving not only is there no bar on an appointing court awarding fees and costs, but that

pre-appointment time and costs are quite common. As was summarized in footnote 3 of the Motion, in the matter of *City of Eureka v. Mary Smith* (Case #CV100395) which was before this Court, the City petitioned for appointment of a receiver under Health and Safety Code §17980.7(c), Adams inspected the Property and obtained a bid – all before the Appointment Order was signed. Because of this prep work, five days after appointment, a rehabilitation plan was in place for the Court to review and approve and the Property located at 1805 2nd Street, Eureka CA was fully demolished and the threat of the burned-out house addressed within weeks.[1]

As another example of the practice of paying pre-appointment fees, a Securities and Exchange Commission receiver does plenty of work prior to the appointment because the takeover and seizure of assets (often done ex parte) has to be done quickly and immediately to prevent the squandering of assets.[2] An appointed receiver in that context does not just walk into a business, he has to do quite a bit of preparation so as to properly seize and/or freeze any assets he is appointed to preserve.

Clearly, there is almost always pre-appointment work necessary for a proposed receiver. The only situation where a receiver might not do pre-appointment work is on true ex parte emergency appointments, where a city is seeking appointment immediately and there are no written papers filed or time to prepare. But as was done here, for all appointments, a proposed receiver submits a declaration stating that he/she is able and capable to serve as a receiver, and that he/she has no contracts, agreements, arrangements or understandings with any of the parties, per Rules of Court, rule 3.1179(b). For those declarations a receiver usually inspects the ownership and financial history of the property, and possibly inspects it in person – is that work supposedly non-compensable? Of course that is not the case.

---

[1] This was a drug flophouse that had languished for years, but just weeks after a fire destroyed the property and killed an illegal tenant that had been sleeping in the attic, the Property was a flat lot and no longer a danger, all because Adams had engaged in pre-appointment preparations lining up the lender and demolition contractor. The Court can track this progress on Google Streetview, which shows the dangerous and dilapidated property in September of 2007, as a flat lot in January 2011, and then as it is now – a commercial building used by Hamanaka Painting.

[2] A summary of the Madoff SEC receivership appointment can be found in the New York Law Journal, December 30, 2008, Vol. 240, No. 125 available at https://media2.mofo.com/documents/20081230nylj_ponzi.pdf. A copy of the SEC's complaint is available at https://www.sec.gov/litigation/complaints/2008/comp-madoff121108.pdf.

-4-

**PRIOR RECEIVER'S REPLY TO RESPONDENTS' OPPOSITION TO INTERIM FEE MOTION**

These examples are provided because most every case requires a proposed or potential receiver to do work before the appointment order is issued. If the appointment order is not granted, then the receiver can seek to recover that time from the city or county that requested the appointment. Had he not been appointed twice, Adams would have considered that option. However, here the Court issued an Appointment Order that named Mark Adams as Receiver. In that respect, this particular receivership was no different than any other of the 140+ Health and Safety receiverships Mark Adams has performed, in which preliminary prep work was part and parcel of the receivership, and for which full compensation for that prep work was thereafter awarded by the court. A receiver is a "drastic remedy,"[3] and in the few situations where it is called for, often pre-appointment preparations and research is required.

That general principle applies here. When this Court appointed Adams for 26 properties on March 10, 2011, Adams was to inspect them (with a Squires' representative) and present recommendations for how best to abate the nuisances at all 26 properties. The September 28, 2011 Ruling limited the Appointment to six properties, but required a Report to be filed by November 14 with "the feasibility of making said repairs." That Ruling set in motion a ticking clock, allowing 35 days to notice the inspections, inspect and determine immediate dangers that absolutely have to be dealt with that day (like fire dangers, squatters, severe pest infestations, etc.), create a list of the current violations and nuisances, prepare a scope of work, present that to contractors for bidding, collect the bids, chose one to recommend for each property, and then conceptualize how to finance that work through a lien on every property (requiring analysis of equity, whether the lenders were named as parties, discussions with the lenders, etc.). This was an extremely short amount of time to perform the scope of work directed by the court on September 28. Accordingly – and as was his standard practice – Mark Adams began to perform the preliminary prep work necessary to accomplish the directives of the court.

Pointedly, the jury verdicts in the *Squires v. Adams* case found for Mark and Andrew Adams on every cause of action brought, confirming the legitimacy of their rationale for being in the public areas of the properties, and rejecting each and every one of the Respondents'

---

[3] *City and County of San Francisco v. Daley* (1993) 16 Cal.App.4th 734, 744.

**PRIOR RECEIVER'S REPLY TO RESPONDENTS' OPPOSITION TO INTERIM FEE MOTION**

contentions to the contrary. As noted in the attached declaration of Andrew Adams, pre-appointment work is the industry standard, and the standard practice for all of the 140+ appointments that Adams has completed. If Adams is not appointed, then that time and costs are not a receivership property expense; but if he is appointed, then that is part of the compensation requested from the court. Here, Adams was appointed twice, and both times was given a short timeframe to complete a very complicated and detailed set of assignments. This Court has full discretion in awarding these, and clearly they should be paid.

### b. The Adams' defense costs have to be paid

The Opposition argues that the tort defense costs (essentially all of the November 2011-current costs) are not recoverable because the tort and receivership cases were not formally related and the defense costs were incurred during a time that Adams was not the receiver. Neither of these points are relevant – of course often defense costs are incurred *after* a receiver is done with his tasks (usually the claims made by the parties are based upon the work done). Or the challenge comes at the discharge, when the work is already done. And there is no requirement that the cases be related, especially when as is the case here, the property owner spent the better part of a year requesting a separate trial instead of having his supposed grievances heard in the receivership action itself.[4]

What the Opposition does not respond to is the clear case law outlined in Section IV that requires this Court to pay for the fees and costs of the tort suit. The Opposition does not once cite or discuss the case that Adams relies on *Macmorris Sales Corp v. Kozak* (1967) 249 Cal.App.2d 998. As summarized: "In a nutshell, a receiver is required to expose himself to inquiry and attack, and thus, the defense costs associated with that have to be paid by the receivership property or owner if those attacks result in no showings of wrong doing." Motion, page 6, lines 9-11. That case is crystal clear that 1) a receiver has to subject himself to challenge, and that 2) the cost of that challenge and the outside defense counsel, is necessarily a receivership cost, and

---

[4] This Court will remember that most of 2012 was spent on two major issues: 1) the three demurrers Adams filed to the complaints, requesting that these supposed tort claims be heard in this matter (which were overruled), 2) discovery issues where the Respondents required an absurd amount of discovery, part of which the Court ordered was not to be responded to on August 22, 2013.

1  thus must be paid by the receivership property or property's owners. At 1004-05; *see also People*

2  *v. Riverside Univ.* 35 Cal.App.3d 572, 587.

3        Respondents do not offer a response or attempt to differentiate the cases because there is

4  no response or differentiation to be made. A receiver appointed by a court is entitled to recover

5  his legal fees incurred in defending against unsuccessful challenges to his work. *Macmorris* is

6  directly on point here – as the Squires demanded a separate trial, lost and now must be made to

7  pay for the cost of that needless defense.

8        In addition, the supposed capacity that the Squires sought to sue Mark and Andrew

9  Adams means nothing. They do not get to choose which "capacity" they want to file suit against;

10 they are to file their suit, and then if there is evidence of "mismanagement or misconduct" then at

11 the discharge hearing the appointing Court can make a finding as to the personal capacity of the

12 receiver. *Aviation Brake Systems, Ltd. v. Voorhis* (1982) 133 Cal.App.3d 230, 235; *Rochat v.*

13 *Gee* (1902) 137 Cal. 497, 502 and *Macmorris Sales Corp. v. Kozak* (1967) 249 Cal.App.2d 998,

14 1004–05.

15       A receiver is never personally liable if he/she obeys the appointing court's orders.

16 *Havemeyer v. Superior Court of City and County of San Francisco* (1890) 84 Cal. 327, 384. And

17 a receiver is never personally liable for acts undertaken in his official capacity of a receiver.

18 *Chiesur v. Superior Court* (1946) 76 Cal.App.2d 198, 202-03. But if a party wishes to even seek

19 that personal liability, they have to get an order as against the receiver in his official capacity,

20 and then present it at the discharge hearing as proof of the "misconduct or mismanagement" and

21 request that the receiver personally be ordered to pay that amount. *Aviation Brake,* 133

22 Cal.App.3d at 235. Per the requirement of Code of Civil Procedure §568.5[5] and *Aviation Brake,*

23 the Respondents were suing the Adams in his official capacity, and if they prevailed, they would

24 then return to this Court to request that Adams personally be made to pay the judgment. That did

25 not happen, and thus this distinction is not necessary to make. Mark Adams, as the appointed

26

27 _____

   [5] "The receiver has, under the control of the Court, power **to bring and defend actions in his own name, as**
28 **receiver;** to take and keep possession of the property, to receive rents, collect debts, to compound for and
   compromise the same, to make transfers, and generally to do such acts respecting the property as the Court may
   authorize." Code Civ. Proc., § 568 emphasis added.

**PRIOR RECEIVER'S REPLY TO RESPONDENTS' OPPOSITION TO INTERIM FEE MOTION**

1    Receiver, CRG and CRG's employee Andrew Adams prevailed at the trial so there is no

2    official/personal liability question to settle.

3         Here, the Respondents filed their complaint (before the second appointment Order was

4    even signed), suing Mark Adams, Andrew Adams and California Receivership Group, LLC. This

5    newly-invented purported justification of "we sued Adams as an individual" does not mean

6    anything. The tort suit failed and was exposed as bluff in the form of a lawsuit and trial that was

7    not actually meant to prevail – it was meant just to scare off Adams from accepting another

8    appointment.

9         The jury came back with no finding of trespass or emotional distress, and thus there is no

10   misconduct or mismanagement. The Squireses' allegations were rejected. Respondents make no

11   response beyond "Adams was never appointed as receiver after November 2011, therefore any

12   'receivership' fees incurred after November 2, 2011 should not be paid by Squires because

13   Adams never acted as receiver after that time." The Squires leave unaddressed the clear,

14   unambiguous law laid out in Section IV of the Motion that requires them to pay for the Prior

15   Receiver's fees and costs, as well as the defense costs.

16        That line of cases developed to protect court agents, whose appointments into tense and

17   high-stakes situations like this make them "lightning rods for litigation." *New Alaska*

18   *Development Corp. v. Guetschow* (9th Cir. 1989) 869 F.2d 1298, 1203, citing *Kermit Const. v.*

19   *Banco Credito Y Ahorro Ponceno* (1st Cir.1976) 547 F.2d 1, 2. The justification for making

20   dangerous property owners pay the receivership costs, including the defense costs for their

21   spurious and meritless law suits is clear and is meant for property owners just like the Squireses,

22   who operate their properties in a way that "substantially endangers" (September 28, 2011 Ruling

23   and October 24, 2011 Order) the public, and then when a Court is so concerned of the danger the

24   properties present that it utilizes the "drastic remedy to be employed only in extreme

25   circumstances" (*City and County of San Francisco v.* Daley (1993) 16 Cal.App.4th 734, 744),

26   the Squires then turn around and sue that neutral, third-party court agent. California law grew to

27   require that the fees be paid by owners like the Squires, and the justification and logic behind

28   that is clear upon even a quick review of the facts here.

### c. Respondents alone chose the separate trial

The Opposition appears to argue in the first six pages that even though every single one of the trespass and infliction of emotional distress causes of actions were rejected at trial, that there was still wrong-doing on the part of Adams.[6] They point to the jury forms that show an "unauthorized entry," as if that settled the matter, but of course there are unauthorized entries every day that are not trespasses. Receiver would posit that there are unauthorized entries in the Squires' properties' common areas every day that are not authorized, yet are not trespasses and are not torts.

The Opposition continues to use the words "wrongfully" and "trespass" when it describes the actions taken pursuant to this Court's September 28, 2011 Ruling. These characterizations were rejected by the jury in the matter of *Squires v. Adams*. Thus, they are not just arguments made by counsel, or shadings of the truth – they are false accusations. Trespass is a legal term, and it is being used improperly in the Opposition. The August 19, 2016 Judgment on Jury Verdict that is attached to the Declaration of Andrew Adams proves that there was no Trespass.

If nothing else at all, the past five+ years of litigation and the trial in *Squires v. Adams* at the very least provided certainty for this Court's review. The allegations of wrong-doing that seem so absurd do not have to be rejected based solely on their absurdity, they can be rejected because a jury of 12 men and women already rejected them. So the judicial process has already come to a conclusion on these claims, and thus they have already been proven false.

One point that the Squires ignore is that they could have had this Court, in the receivership action, review claims and causes of action. They could have raised their objections and sought damages in the form of unpaid wages, or surcharge of Adams. Instead, they chose a separate proceeding, and took what they knew were absurd, meritless, claims to trial. And now that they lost at trial, now they want this Court to review. They cannot have it both ways where

---

[6] By way of example, the aspects of trespass are discussed on pages 5-6 of the Opposition, and the Opposition claims that because the jury found an entry onto Floyd and Betty Squireses' properties, that was still a trespass. Of course, as they note, there was a clear defense to that entry *and thus there was no trespass*. The Squireses appear not to be taking the Jury at its word, or are trying to play games with this Court to claim that a defense to a cause of action does not defeat that cause of action. The Jury agreed with Adams, and found that there was no violation or tort. At all.

**PRIOR RECEIVER'S REPLY TO RESPONDENTS' OPPOSITION TO INTERIM FEE MOTION**

they force a five-day trial in place of this Court's summary ruling, and then ask for this Court's review when the jury sees their claims for what they are. The jury settled this already: Adams did not trespass, and the Squires and their tenants suffered no harm.

Respondents chose going to trial, in part as a strategy to bully and try to force Adams into abandoning the appointment or to abandon claims about the fees and costs already incurred. That strategy lost, and this Court need not allow them to switch strategies and arguments. In some cases, a court appointing a receiver has to make preliminary decisions, and evaluate the actions of the receiver without the benefit of much briefing or outside review. This can involve allegations of waste of receivership funds, or inefficiency that might rely on experts or a Court making judgment calls. But that is not the case here, because Squires' have forced the Receiver to submit to five+ years of challenges and review, all of which came back in the Receiver's favor. A jury was empaneled, asked to make findings of facts, and they did. The Squireses' continued allegations of wrong-doing, or claims that they are not responsible for the years of legal fees have already been reviewed and rejected. They are responsible for the defense costs.

### III.    WHAT IS NOT IN THE OPPOSITION

As noted above, there is no response in the Opposition to the case law cited in Section III of the Motion calling for unrecovered receivership fees and costs to be paid. Or any of the crystal clear requirement laid out in Section IV that legal defense costs of a receiver are to be paid by the receivership property and/or the owner. But beyond the legal arguments that went without a response, there are other points that this Court must note are missing from the Opposition.

First, Respondents do not respond to the equitable concerns raised by the Motion. The Receiver argued that a property owner who is stripped of possession and control of those properties because of the danger they present, who responds not by doing the work quickly but instead by suing the court agent, must be made to pay for the fees and costs, including the defense costs. The Opposition claims that those should not be paid because the Receiver was never appointed again (p. 7), but that is not a response to the equities.

**PRIOR RECEIVER'S REPLY TO RESPONDENTS' OPPOSITION TO INTERIM FEE MOTION**

It is simply unfair to appoint a receiver, then let the property owners file a meritless separate suit, and let those defense costs go unpaid. This Court appointed Mark Adams, who has absolutely no relationship to this case or the parties, and who did nothing but comply with the Court's orders and attempt to anticipate the work necessary to meet the Court's short deadlines. California law is clear, and the equities of this case are clear: Adams has to be paid for his own time, as well as for his defense costs, spent based on this Court's appointment orders and direction.

Second, Respondents make no objection to the rates, the hours billed, the overall amount or any of the specifics of the requested fees and costs. This may be because the rates (from the 2011 appointment orders) are eminently reasonable, and are very much below market.[7] But one might expect that with five+ years of invoices and billings, and outside counsel's invoices, that the Respondents might find one or two examples of waste or inefficiency. But their inability to cite even an example shows the reasonableness of the fees and costs, and waives their right to any other objection to the fees and costs at issue.

California law requires that the Respondents be ordered to pay for the fees and costs that their baseless, and unsuccessful lawsuit caused. Even if the equities of this case (where again, a neutral third party was appointed for dangers properties that "substantially endangered" the community and the owners of the Property then unsuccessfully sued that court agent for *trespass*) were not so clear, the Squires should be made to pay for the fees that their actions necessitated. But because both the law, and the equities of this case require the Squires to pay, there is no reason for the Court to do anything different.

## IV.    THE CASES NEED NOT BE RELATED FOR SQUIRES TO PAY

Section II.A.2 recycles Squires' argument opposing relating the tort and receivership cases from the first two years of the tort case when Adams filed a November 14, 2011 Notice of

---

[7] This is particularly true in light of *Melikian v. Aquila, Ltd.* (1998) 63 Cal.App.4th 1364, 1368, where the receiver was paid $25,464.71 in hourly fees, with a $202,000 kicker by way of a percentage of the sale price. There, a sale fee of eight times the hourly fees were proper compensation, so the basic hourly rates already approved by the Court in both appointment orders should be non-controversial here.

-11-

**PRIOR RECEIVER'S REPLY TO RESPONDENTS' OPPOSITION TO INTERIM FEE MOTION**

Related Case, and Respondents filed a November 17, 2011 Response in Opposition to Notice of Related Case. This was when Adams was attempting to head off the need for a separate trial and to have the spurious claims heard in a single hearing or at discharge in this matter. There were three demurrers filed, and each time the Respondents' continued to object to having their claims heard in the receivership proceeding where they belong.

When a receivership court is faced with a potential suit against its receiver, it is "discretionary" as to whether or not to grant leave to file that separate suit. *De Forrest v. Coffey* (1908) 154 Cal. 444, 454. To accord due process, a court cannot deny both the leave to sue and refuse to hear the claims in the receivership action – it just has to allow one. *Jun v. Myers* (2001) 88 Cal.App.4th 117, 125. Here, this Court could have heard the tort claims in this action, but declined to. The "relating" of the cases was Adams' attempt to bring everything back into one proceeding.

The tort claims did go to trial, and were not combined or related with this matter. And thus, the line of argument on the relating of the cases is irrelevant. Whether the Court finds the cases related or not has no bearing on the Respondents' requirement under California law to pay the outstanding fees and costs. Respondents chose this path – they demanded a separate trial and were given one. That trial took place, and their claims were outright denied. The Motion simply asks that this Court abide California law and the clear equities of this situation and require that the receivership fees and costs, and defense fees and costs are paid.

## V. CONCLUSION

For the reasons stated in the Motion for Interim Fees, and in this Reply, the Court should order the named Respondents to pay the unpaid receivership fees and costs, and Receiver's attorney fees in the amount of $223,715.39.

Dated September 9, 2016

Mark Adams, Receiver

-12-

PRIOR RECEIVER'S REPLY TO RESPONDENTS' OPPOSITION TO INTERIM FEE MOTION

1  MARK S. ADAMS, SB#68300
   ANDREW F. ADAMS, SB#275109
2  California Receivership Group, PBC
   2716 Ocean Park Blvd., Suite 3010
3  Santa Monica, California 90405
   Tel. (310) 471-8181
4  Fax (310) 471-8180
   madams@calreceivers.com
5  Court-Appointed Receiver

6

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                     FOR THE COUNTY OF HUMBOLDT

9

10 CITY OF EUREKA, a municipal            Case No.: DR110040
   corporation, ("the City") and the PEOPLE
11 OF THE STATE OF CALIFORNIA, ("the      **DECLARATION OF ANDREW ADAMS**
   People") by and through Jones & Mayer,
12 Special Counsel of the City of Eureka,  Date:  September 9, 2016
                                          Time:  8:30 a.m.
13            Petitioner,                  Dept.: 4

14       vs.

15 FLOYD SQUIRES; FLOYD E. SQUIRES;
   FLOYD E. SQUIRES III; BETTY J.
16 SQUIRES; FB SQUIRES FAMILY
   TRUST; BETTY J'S BUILDING, INC; and
17 DOES ONE through SIXTY,

18            Respondents.

19

20

21      I, Andrew Adams, declare as follows:

22      1.      The following is true and correct to the best of my knowledge. If called upon to

23 do so, I could and would testify competently thereto in a court of law.

24      2.      I am employed by California Receivership Group and Mark Adams in this matter,

25 and participated in both the underlying receivership, and the resulting tort suit that went to trial

26 in Humboldt Superior Court, July 18-22, 2016. I testified in that matter as to the general practice

27 and the standard procedures for CRG appointments and Health and Safety Code appointments

28

                                    -1-

1  generally. A copy of the August 19, 2016 Judgment on Jury Verdict is attached as Exhibit 1.

2      3.      In addition to participating in the trial, I also conducted much of the September-

3  October 2011 work, and did the initial discussions and inspections on October 5-6, 2011 that led

4  to the claims that were heard in *Squires v. Adams.*

5      4.      In the approximately 50 receiverships that I have overseen for CRG, it is my

6  standard practice, and it is CRG's standard practice to undertake pre-appointment work. This

7  consists of different tasks and analysis for each property, but always includes at least:

8          a.  My office prepares and analyzes a property profile that includes relevant

9              information on the Property itself, the estimated value, the debt load, etc. In

10             2011 I created almost all of these profiles and reviewed them for discussion,

11             and estimation for as to whether the property might be a good candidate for a

12             receivership.

13         b.  The next step is often inspecting the property from the street or the public

14             areas. This is to observe any pressing and noticeable problems that might

15             exist, and often we can get a general idea of what the violations are from the

16             street.  As was discussed (and the Jury found) on October 5-6, 2011 I only

17             entered one individual unit of the six properties– and that was at the explicit

18             request of the tenant Mr. Andrew Root. In all of the other properties, I

19             remained in the public areas and discussed the appointment with the residents.

20             This is the standard process and the first "round" of inspections for our

21             appointments, that we continue to use to this day.

22         c.  The next step is to prepare for taking over the Property. This can include

23             boarding and/or fencing the Property, removing any illegal occupants,

24             relocating legal tenants that might be at risk, pest control, fire assessment and

25             any other type of immediate tasks that have to be done to address the reasons

26             for the appointment.

27         d.  Also, there has to be some substantial financial analysis to determine how the

28             receivership might pay for the work necessary. This involves reviewing the

-2-

**DECLARATION OF ANDREW ADAMS**

profile and estimates, but also discussions with a local agent to gauge value and with potential lenders.

5.      My office did just that, and much more in the way of preparations for the 26 and then six property appointments. I spent considerable time both vetting and negotiating with local inspectors, and property managers, and by the time the October 24, 2011 Order was issued, I had arranged for Ralph Brady to come on and bill hourly for his inspections. I had also arranged for a property manager to take over all of the properties.

6.      Beyond that, I analyzed all of the Properties in the two appointment orders, determined what equity might exist, whether a priority certificate would be needed, and tried to determine whether the rental income might cover the cost of the work necessary. Additionally, I reviewed the list of violations for each property and discussed with a general contractor that was to set up a scope of work.

7.      I have reviewed the invoices and the time spent on this matter and on the two appointments in 2011, and I know it to be more than reasonable. I know that the work undertaken was the standard, necessary tasks of a receivership. Receivers do pre-appointment preparatory work on most all cases, and that work is left to the appointing Court to determine whether or not to order the fees paid. It is my experience in the cases that I work that all of those incurred fees are left up entirely to the appointing judge.

8.      Respondents did not serve a copy of their Opposition on me or my office. We received a faxed copy of the Opposition dated September 16, 2016 9:31 a.m. I do not have any agreement with any of the parties to this matter to accept fax or email service.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 9th day of September 2016, at Santa Monica, California.

Andrew Adams

-3-

**DECLARATION OF ANDREW ADAMS**

Exhibit 1

1  Neal G. Latt, SBN 294409
   MATHEWS, KLUCK, WALSH & WYKLE, LLP
2  100 M Street
   Eureka, California 95501
3  Telephone (707) 442-3758
   Facsimile (707) 442-0813
4

5  Attorneys for Mark Adams, Andrew Adams
   and California Receivership Group, LLC
6

7

8              SUPERIOR COURT OF CALIFORNIA

9                 COUNTY OF HUMBOLDT

10 FLOYD E. SQUIRES, III, BETTY        Case No.: DR 110803
   SQUIRES, LARRY WHITE, JUDITH
11 WHITE, ANDREW ROOT, DEON            **JUDGMENT ON JURY VERDICT**
   DEKELAITA, DARLA CRAIG, EDWARD
12 "EDDIE" HAMLINE,                    **Judge: Hon. John T. Feeney**
13
                Plaintiffs,
14
        vs.
15
   MARK ADAMS, ANDREW ADAMS,
16 CALIFORNIA RECEIVERSHIP, LLC, a
   California limited liability company, and
17 DOES 1-50,
18
                Defendants.
19

20

21      This action came on regularly for trial on July 18, 2016 in Department 1 of the above-

22 entitled court, the Honorable John T. Feeney presiding.  Plaintiff FLOYD E. SQUIRES, III

23 appeared together with his counsel, Carlton Floyd; co-plaintiff BETTY SQUIRES did not

24 appear; and co-plaintiffs ANDREW ROOT, DARLA CRAIG and EDWARD "EDDIE"

25 HAMLINE appeared ~~in propria persona~~ with their counsel, Carlton Floyd. Co-plaintiffs LARRY WHITE, JUDITH WHITE and

Case: 17-10828    Doc# 286-13    Filed: 05/25/18    Entered: 05/25/18 15:24:02    Page 18
                                 of 46

DEON DEKELAITA did not appear and were dismissed by oral motion by Mr. Floyd to the court at the outset of trial proceedings. Neal G. Latt appeared for Defendants MARK ADAMS, ANDREW ADAMS, and CALIFORNIA RECEIVERSHIP, LLC.

A jury of twelve persons was regularly empaneled and sworn. Witnesses were sworn and testified. After hearing the evidence and arguments of counsel, the jury was duly instructed by the court, and the cause was submitted to the jury with directions to return a verdict on special issues. The jury deliberated and thereafter returned into court with its verdict as follows:

AS TO PLAINTIFF **FLOYD E. SQUIRES, III:**

### INTRUSION INTO PRIVATE AFFAIRS

1. Did Floyd Squires have a reasonable expectation of privacy in the 6 properties?

___X_ Yes

_____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, do not answer any more questions about Floyd Squires' first claim and, proceed to the question about Floyd Squires' second claim.

2. Did any defendants intentionally intrude in Floyd Squires' properties?

_____ Yes

___X_ No

If your answer to question 2 is yes, then answer question 3. If you answered no, do not answer any more questions about Floyd Squires' first claim and, proceed to the questions about Floyd Squires' second claim.

### TRESPASS

1. Did Floyd Squires own the properties?

2

Case: 17-10828   Doc# 286-13   Filed: 05/25/18   Entered: 05/25/18 15:24:02   Page 19 of 46

_X_ Yes

____ No

If your answer to question 1 is yes, then answer question 2.  If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2.  Did any defendants intentionally enter or cause another person to enter Floyd Squires' properties?

_X_ Yes

____ No

If your answer to question 2 is yes, then answer question 3.  If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Did any defendants enter the properties without Floyd Squires' permission?

_X_ Yes

____ No

If your answer to question 3 is yes, then answer question 4.  If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Was defendant's conduct a substantial factor is causing harm to Floyd Squires?

____ Yes

_X_ No

If your answer to question 4 is yes, then answer question 5.  If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

Signed: ___Mathew Koelling_____
                    Presiding Juror

Dated: _____7/22/2016_____

3

AS TO PLAINTIFF **BETTY SQUIRES**:

## INTRUSION INTO PRIVATE AFFAIRS

1. Did Betty Squires have a reasonable expectation of privacy in the 6 properties?

__X__ Yes

_____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, do not answer any more questions about Betty Squires' first claim and, proceed to the question about Betty Squires' second claim.

2. Did any defendants intentionally intrude in Betty Squires' properties?

_____ Yes

__X__ No

If your answer to question 2 is yes, then answer question 3. If you answered no, do not answer any more questions about Betty Squires' first claim and, proceed to the questions about Betty Squires' second claim.

## TRESPASS

1. Did Betty Squires own the properties?

__X__ Yes

_____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Did any defendants intentionally enter or cause another person to enter Betty Squires' properties?

__X__ Yes

_____ No

4

Humboldt County Superior Court Case No. DR 110803
Judgment on Jury Verdict

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Did any defendants enter the properties without Betty Squires' permission?

___X___ Yes

_____ No

If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Was defendant's conduct a substantial factor is causing harm to Betty Squires?

_____ Yes

___X___ No

If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

Signed: ___Mathew Koelling_____
     Presiding Juror

Dated: _____7/22/2016_____

AS TO PLAINTIFF ANDREW ROOT:

## INTRUSION INTO PRIVATE AFFAIRS

1. Did Andrew Root have a reasonable expectation of privacy in his place of residence?

___X___ Yes

_____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, do not answer any more questions about Andrew Root's first claim and, proceed to the question about Andrew Root's second claim.

Case: 17-10828 Doc# 286-13 Filed: 05/25/18 Entered: 05/25/18 15:24:02 Page 22 of 46

2. Did any defendants intentionally intrude in Andrew Root's place of residence?

\_\_\_\_ Yes

\_X\_ No

If your answer to question 2 is yes, then answer question 3. If you answered no, do not answer any more questions about Andrew Root's first claim and, proceed to the questions about Andrew Root's second claim.

### TRESPASS

1. Did Andrew Root lease and occupy the property?

\_X\_ Yes

\_\_\_\_ No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Did any defendants intentionally enter or cause another person to enter Andrew Root's property?

\_X\_ Yes

\_\_\_\_ No

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Did any defendants enter the properties without Andrew Root's permission?

\_\_\_\_\_ Yes

\_X\_ No

If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

Case: 17-10828    Doc# 286-13    Filed: 05/25/18    Entered: 05/25/18 15:24:02    Page 23 of 46

Signed: _____Mathew Koelling_____
            Presiding Juror

Dated: _____7/22/2016_____

AS TO PLAINTIFF DARLA CRAIG:

### INTRUSION INTO PRIVATE AFFAIRS

1. Did Darla Craig have a reasonable expectation of privacy in her place of residence?

__X__ Yes

_____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, do not answer any more questions about Darla Craig's first claim and, proceed to the question about Darla Craig's second claim.

2. Did any defendants intentionally intrude Darla Craig's place of residence?

_____ Yes

__X__ No

If your answer to question 2 is yes, then answer question 3. If you answered no, do not answer any more questions about Darla Craig' first claim and, proceed to the questions about Darla Craig's second claim.

### TRESPASS

1. Did Darla Craig lease and occupy the property?

__X__ Yes

_____ No

Case: 17-10828    Doc# 286-13    Filed: 05/25/18    Entered: 05/25/18 15:24:02    Page 24
of 46

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Did any defendants intentionally enter or cause another person to enter Darla Craig's property?

_____ Yes

__X__ No

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

Signed: ___Mathew Koelling_____
            Presiding Juror

Dated: _____7/22/2016_____

AS TO PLAINTIFF **EDWARD HAMLINE**:

### INTRUSION INTO PRIVATE AFFAIRS

1. Did Edward Hamline have a reasonable expectation of privacy in his place of residence and the surrounding area?

_____ Yes

__X__ No

If your answer to question 1 is yes, then answer question 2. If you answered no, do not answer any more questions about Edward Hamline's first claim and, proceed to the question about Edward Hamline's second claim.

### TRESPASS

1. Did Edward Hamline lease and occupy the property?

__X__ Yes

Case: 17-10828    Doc# 286-13    Filed: 05/25/18    Entered: 05/25/18 15:24:02    Page 25 of 46

_____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2. Did any defendants intentionally enter or cause another person to enter Edward Hamline's property?

_____ Yes

__X__ No

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

Signed: ___Mathew Koelling_____
                  Presiding Juror

Dated: _____7/22/2016_____

True and correct copies of the jury verdict forms on Plaintiff's First Amended Complaint are attached hereto as **Exhibit A** and incorporated herein by reference.

It appearing by reason of said verdict that Defendants are entitled to judgment against co-Plaintiffs Floyd E. Squires, III, Betty Squires, Andrew Root, Darla Craig, and Edward "Eddie" Hamline.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED that co-Plaintiffs take nothing from Defendants. Defendants are the prevailing parties in this action and are awarded costs in an amount to be determined.

APPROVED AS TO FORM.

_____
Carlton Floyd
Counsel for Defendant Floyd E. Squires, III

Case: 17-10828    Doc# 286-13    Filed: 05/25/18    Entered: 05/25/18 15:24:02    Page 26 of 46

IT IS SO ORDERED.

Dated: _____AUG 19 2016_____

_John T. Feeney_
The Honorable John T. Feeney

10

Case: 17-10828    Doc# 286-13    Filed: 05/25/18    Entered: 05/25/18 15:24:02    Page 27 of 46

# EXHIBIT A

FILED

⌐JUL 2 2 2016

SUPERIOR COURT OF CALIFORNIA
COUNTY OF HUMBOLDT

SUPERIOR COURT OF CALIFORNIA, COUNTY OF HUMBOLDT

| | |
|---|---|
| FLOYD E. SQUIRES, III, BETTY SQUIRES, LARRY WHITE, JUDITH WHITE, ANDREW ROOT, DEON DEKELAITA, DARLA CRAIG, EDWARD "EDDIE" HAMLINE, | Case No. DR110803 |
| Plaintiffs, | **VERDICT FORM FOR FLOYD SQUIRES** |
| v. | |
| MARK ADAMS, ANDREW ADAMS, CALIFORNIA RECEIVERSHIP, LLC, a California limited liability company, and DOES 1-50, | |
| Defendants. | |

We answer the questions submitted to us as follows:

## VF-1800 INTRUSION INTO PRIVATE AFFAIRS

We answer the questions submitted to us as follows:

1. Did Floyd Squires have a reasonable expectation of privacy in the 6 properties?

  √ Yes

 _____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, do not answer any more questions about Floyd Squires' first claim and, proceed to the questions about Floyd Squires' second claim.

2. Did any defendants intentionally intrude in Floyd Squires' properties?

 _____ Yes

$\checkmark$ No

If your answer to question 2 is yes, then answer question 3. If you answered no, do not answer any more questions about Floyd Squires' first claim and, proceed to the questions about Floyd Squires' second claim.

      3. Would defendant's intrusion be highly offensive to a reasonable person?

      _____ Yes
      _____ No

If your answer to question 3 is yes, then answer question 4. If you answered no, do not answer any more questions about Floyd Squires' first claim and, proceed to the questions about Floyd Squires' second claim.

      4. Was defendant's conduct a substantial factor in causing harm to Floyd Squires?

      _____ Yes
      _____ No

If your answer to question 4 is yes, then answer question 5. If you answered no, do not answer any more questions about Floyd Squires' first claim and, proceed to the questions about Floyd Squires' second claim.

      5. As to each of the properties at issue in this case were all of them under the legal control of defendants at the time of the alleged invasion of privacy?

      _____ Yes
      _____ No

If your answer to question 5 is yes, do not answer any more questions about Floyd Squires' first claim, and proceed to questions about Floyd Squires second claim.

      6.     What are Floyd Squires' damages?

Economic Loss:    $_____

Noneconomic Loss:  $_____

TOTAL        $_____

**VF 2000-TRESPASS**

      1. Did Floyd Squires own the properties?

      $\checkmark$ Yes
      _____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

VERDICT FORM
DR110803

- 2 -

2. Did any defendants intentionally enter or cause another person to enter Floyd Squires' properties?

_____√_____ Yes

_____ No

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3.    Did any defendants enter the properties without Floyd Squires' permission?

_____√_____ Yes

_____ No

If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4.    Was defendant's conduct a substantial factor in causing harm to Floyd Squires?

_____ Yes

_____√_____ No

If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5.    As to each of the properties at issue in this case, were all of them under the legal control of defendants at the time of the alleged trespass?

_____ Yes

_____ No

If your answer to question 5 is yes, stop here, answer no further questions, and have the presiding juror sign and date this form.

6.    What are Floyd Squires' damages?

Economic Loss:       $_____

Noneconomic Loss:  $_____

TOTAL                    $_____

Signed: Presiding Juror _____

Dated: _7/22/2016_____

After this verdict form has been signed, notify the bailiff that you are ready to present your verdict in the courtroom.

Case: 17-10828    Doc# 286-13    Filed: 05/25/18    Entered: 05/25/18 15:24:02    Page 31 of 46

SUPERIOR COURT OF CALIFORNIA, COUNTY OF HUMBOLDT

| | |
|---|---|
| FLOYD E. SQUIRES, III, BETTY SQUIRES, LARRY WHITE, JUDITH WHITE, ANDREW ROOT, DEON DEKELAITA, DARLA CRAIG, EDWARD "EDDIE" HAMLINE,<br><br>              Plaintiffs,<br><br>v.<br><br>MARK ADAMS, ANDREW ADAMS, CALIFORNIA RECEIVERSHIP, LLC, a California limited liability company, and DOES 1-50,<br><br>              Defendants. | Case No. DR110803<br><br>**VERDICT FORM FOR BETTY SQUIRES** |

We answer the questions submitted to us as follows:

**VF-1800 INTRUSION INTO PRIVATE AFFAIRS**

We answer the questions submitted to us as follows:

1. Did Betty Squires have a reasonable expectation of privacy in the 6 properties?

   √ Yes

      No

If your answer to question 1 is yes, then answer question 2. If you answered no, do not answer any more questions about Betty Squires' first claim and, proceed to the questions about Betty Squires' second claim.

2.     Did any defendants intentionally intrude in Betty Squires' properties?

       Yes

✓ No

If your answer to question 2 is yes, then answer question 3. If you answered no, do not answer any more questions about Betty Squires' first claim and, proceed to the questions about Betty Squires' second claim.

    3. Would defendant's intrusion be highly offensive to a reasonable person?

_____ Yes
_____ No

If your answer to question 3 is yes, then answer question 4. If you answered no, do not answer any more questions about Betty Squires' first claim and, proceed to the questions about Betty Squires' second claim.

    4. Was defendant's conduct a substantial factor in causing harm to Betty Squires?

_____ Yes
_____ No

If your answer to question 4 is yes, then answer question 5. If you answered no, do not answer any more questions about Betty Squires' first claim and, proceed to the questions about Betty Squires' second claim.

    5. As to each of the properties at issue in this case were all of them under the legal control of defendants at the time of the alleged invasion of privacy?

_____ Yes
_____ No

If your answer to question 5 is yes, do not answer any more questions about Betty Squires' first claim, and proceed to questions about Betty Squires second claim.

    6.    What are Betty Squires' damages?

Economic Loss:    $_____

Noneconomic Loss:    $_____

TOTAL    $_____

**VF 2000-TRESPASS**

    1. Did Betty Squires own the properties?

✓ Yes
_____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

Case: 17-10828    Doc# 286-13    Filed: 05/25/18    Entered: 05/25/18 15:24:02    Page 33 of 46

2. Did any defendants intentionally enter or cause another person to enter Betty Squires' properties?

   √   Yes

       No

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Did any defendants enter the properties without Betty Squires' permission?

   √   Yes

       No

If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Was defendant's conduct a substantial factor in causing harm to Betty Squires?

       Yes

   √   No

If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. As to each of the properties at issue in this case, were all of them under the legal control of defendants at the time of the alleged trespass?

       Yes

       No

If your answer to question 5 is yes, stop here, answer no further questions, and have the presiding juror sign and date this form.

6. What are Betty Squires' damages?

Economic Loss:   $_____

Noneconomic Loss:   $_____

TOTAL        $_____

Signed: Presiding Juror _____

Dated: ___7/22/2016___

After this verdict form has been signed, notify the bailiff that you are ready to present your verdict in the courtroom.

1

2

3

4

5

6

7

8      SUPERIOR COURT OF CALIFORNIA, COUNTY OF HUMBOLDT

9   FLOYD E. SQUIRES, III, BETTY      Case No. DR110803

SQUIRES, LARRY WHITE, JUDITH

10  WHITE, ANDREW ROOT, DEON      **VERDICT FORM FOR ANDREW**

DEKELAITA, DARLA CRAIG, EDWARD    **ROOT**

11  "EDDIE" HAMLINE,

12            Plaintiffs,

13  v.

14  MARK ADAMS, ANDREW ADAMS,

15  CALIFORNIA RECEIVERSHIP, LLC, a

California limited liability company, and

16  DOES 1-50,

17            Defendants.

18

19      We answer the questions submitted to us as follows:

**VF-1800 INTRUSION INTO PRIVATE AFFAIRS**

20

     We answer the questions submitted to us as follows:

21

     1. Did Andrew Root have a reasonable expectation of privacy in his place of residence?

22

    ✓ Yes

23     _____ No

24  If your answer to question 1 is yes, then answer question 2. If you answered no, do not answer any

more questions about Andrew Root's first claim and, and proceed to the questions about Andrew

25  Root's second claim.

26     2.    Did any defendants intentionally intrude in Andrew Root's place of residence?

27     _____ Yes

    ✓ No

28

If your answer to question 2 is yes, then answer question 3. If you answered no, do not answer any more questions about Andrew Root's first claim and, and proceed to the questions about Andrew Root's second claim.

     3. Would defendant's intrusion be highly offensive to a reasonable person?

    \_\_\_\_\_Yes
    \_\_\_\_\_No

If your answer to question 3 is yes, then answer question 4. If you answered no, do not answer any more questions about Andrew Root's first claim and, and proceed to the questions about Andrew Root's second claim.

     4. Was defendant's conduct a substantial factor in causing harm to Andrew Root?

    \_\_\_\_\_Yes
    \_\_\_\_\_No

If your answer to question 4 is yes, then answer question 5. If you answered no, do not answer any more questions about Andrew Root's first claim and, and proceed to the questions about Andrew Root's second claim.

     5. As to each of the properties at issue in this case were all of them under the legal control of defendants at the time of the alleged invasion of privacy?

_____ Yes   _____ No

If your answer to question 5 is yes, do not answer any more questions about Andrew Root's first claim, and proceed to questions about Andrew Root's second claim.

    6.    What are Andrew Root's damages?

Economic Loss:   $_____

Noneconomic Loss:  $_____

TOTAL         $_____

## VF 2000-TRESPASS

    We answer the questions submitted to us as follows:

    1. Did Andrew Root lease and occupy the property?

    √  Yes
       No

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

VERDICT FORM
DR110803

- 2 -

2. Did any defendants intentionally enter or cause another person to enter Andrew Root's property?  *Yes*

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3. Did any defendants enter the property without Andrew Root's permission?

_____ Yes  *mK  7-22-2016*

✓ No

If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4. Was defendant's conduct a substantial factor in causing harm to Andrew Root?

_____ Yes

_____ No

If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5. As to each of the properties at issue in this case, were all of them under the legal control of defendants at the time of the alleged trespass?

_____ Yes  _____ No

If your answer to question 5 is yes, stop here, answer no further questions, and have the presiding juror sign and date this form.

6. What are Andrew Root's damages?

Economic Loss:          $_____

Noneconomic Loss:    $_____

TOTAL                         $_____

Signed: *[signature]* Presiding Juror

Dated: *7/22/2016*

After this verdict form has been signed, notify the bailiff that you are ready to present your verdict in the courtroom.

Case: 17-10828   Doc# 286-13   Filed: 05/25/18   Entered: 05/25/18 15:24:02   Page 37 of 46

FILED

JUL 2 2 2016

SUPERIOR COURT OF CALIFORNIA
COUNTY OF HUMBOLDT

SUPERIOR COURT OF CALIFORNIA, COUNTY OF HUMBOLDT

FLOYD E. SQUIRES, III, BETTY SQUIRES, LARRY WHITE, JUDITH WHITE, ANDREW ROOT, DEON DEKELAITA, DARLA CRAIG, EDWARD "EDDIE" HAMLINE,

Plaintiffs,

v.

MARK ADAMS, ANDREW ADAMS, CALIFORNIA RECEIVERSHIP, LLC, a California limited liability company, and DOES 1-50,

Defendants.

Case No. DR110803

**VERDICT FORM FOR DARLA CRAIG**

We answer the questions submitted to us as follows:

**VF-1800 INTRUSION INTO PRIVATE AFFAIRS**

We answer the questions submitted to us as follows:

1. Did Darla Craig have a reasonable expectation of privacy in her place of residence?

√ Yes
___ No

If your answer to question 1 is yes, then answer question 2. If you answered no, do not answer any more questions about Darla Craig's first claim and, and proceed to the questions about Darla Craig's second claim.

2. Did any defendants intentionally intrude in Darla Craig's place of residence?

___ Yes
√ No

VERDICT FORM
DR110803

1  If your answer to question 2 is yes, then answer question 3. If you answered no, do not answer any
2  more questions about Darla Craig's first claim and, and proceed to the questions about Darla Craig's
   second claim.

3      3. Would defendant's intrusion be highly offensive to a reasonable person?

4      _____Yes
       _____No
5

6  If your answer to question 3 is yes, then answer question 4. If you answered no, do not answer any
   more questions about Darla Craig's first claim and, and proceed to the questions about Darla Craig's
7  second claim.

8      4. Was defendant's conduct a substantial factor in causing harm to Darla Craig?

9      _____Yes
       _____No

10 If your answer to question 4 is yes, then answer question 5. If you answered no, do not answer any
   more questions about Darla Craig's first claim and, and proceed to the questions about Darla Craig's
11 second claim.

12     5.    As to each of the properties at issue in this case, were all of them under the legal
   control of defendants at the time of the alleged trespass?
13
       _____ Yes
14     _____ No

15     If your answer to question 5 is yes, do not answer any more questions about Darla Craig's
   first claim, and proceed to questions about Darla Craig's second claim.
16
17     6.    What are Darla Craig's damages?

18     Economic Loss:     $_____

19     Noneconomic Loss:  $_____

20     TOTAL              $_____

21 **VF 2000-TRESPASS**

22     We answer the questions submitted to us as follows:

23     1. Did Darla Craig lease and occupy the property?

24     √   Yes
       ___ No
25

26 If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no
   further questions, and have the presiding juror sign and date this form.

27

28
   _____
                              VERDICT FORM
                                DR110803                              - 2 -

2. Did any defendants intentionally enter or cause another person to enter Darla Criag's property?

　　　_____ Yes
　　　__✓__ No

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3.　　Did any defendants enter the property without Darla Craig's permission?

　　　_____ Yes
　　　_____ No

If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4.　　Was defendant's conduct a substantial factor in causing harm to Darla Craig?

　　　_____ Yes
　　　_____ No

If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5.　　As to each of the properties at issue in this case, were all of them under the legal control of defendants at the time of the alleged trespass?

　　　_____ Yes
　　　_____ No

If your answer to question 5 is yes, stop here, answer no further questions, and have the presiding juror sign and date this form.

6.　　What are Darla Craig's damages?

Economic Loss:　　$_____

Noneconomic Loss:　$_____

TOTAL　　　　　　$_____

_Signed:_　Presiding Juror

Dated:　7/22/2016

After this verdict form has been signed, notify the bailiff that you are ready to present your verdict in the courtroom.

---

VERDICT FORM
DR110803

- 3 -

FILED

JUL 2 2 2016

SUPERIOR COURT OF CALIFORNIA
COUNTY OF HUMBOLDT

SUPERIOR COURT OF CALIFORNIA, COUNTY OF HUMBOLDT

FLOYD E. SQUIRES, III, BETTY SQUIRES, LARRY WHITE, JUDITH WHITE, ANDREW ROOT, DEON DEKELAITA, DARLA CRAIG, EDWARD "EDDIE" HAMLINE,

               Plaintiffs,

v.

MARK ADAMS, ANDREW ADAMS, CALIFORNIA RECEIVERSHIP, LLC, a California limited liability company, and DOES 1-50,

               Defendants.

Case No. DR110803

**VERDICT FORM FOR EDWARD HAMLINE**

We answer the questions submitted to us as follows:

**VF-1800 INTRUSION INTO PRIVATE AFFAIRS**

We answer the questions submitted to us as follows:

1. Did Edward Hamline have a reasonable expectation of privacy in his place of residence and the surrounding area?

\_\_\_\_\_Yes
\_\_✓\_\_No

If your answer to question 1 is yes, then answer question 2. If you answered no, do not answer any more questions about Edward Hamline's first claim and, proceed to the questions about Edward Hamline's second claim.

VERDICT FORM
DR110803

1    2.    Did any defendants intentionally intrude in Edward Hamline's place of residence or
the surrounding area?

2
_____Yes
3        _____No
If your answer to question 2 is yes, then answer question 3. If you answered no, do not answer any
4  more questions about Edward Hamline's first claim and, proceed to the questions about Edward
Hamline's second claim.
5
3. Would defendant's intrusion be highly offensive to a reasonable person?
6
_____Yes
7        _____No

8  If your answer to question 3 is yes, then answer question 4. If you answered no, do not answer any
more questions about Edward Hamline's first claim and,  proceed to the questions about Edward
9  Hamline's second claim.

10    4. Was defendant's conduct a substantial factor in causing harm to Edward Hamline?

11       _____Yes
_____No
12
If your answer to question 4 is yes, then answer question 5. If you answered no, do not answer any
13 more questions about Edward Hamline's first claim and, proceed to the questions about Edward
Hamline's second claim.
14
5. As to each of the properties at issue in this case were all of them under the legal control
15 of defendants at the time of the alleged invasion of privacy?

16       _____Yes
_____No
17
If your answer to question 5 is yes, do not answer any more questions about Edward Hamline's first
18 claim, and proceed to questions about Edward Hamline's second claim.

19    6.    What are Edward Hamline's damages?

20
Economic Loss:       $_____
21
Noneconomic Loss:    $_____
22
TOTAL                $_____
23

24 **VF 2000-TRESPASS**

25    1. Did Edward Hamline lease and occupy the property?

26       √ Yes
_____No
27

28
Case: 17-10828   Doc# 286-13   Filed: 05/25/18   Entered: 05/25/18 15:24:02   Page 42
of 46

If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

     2. Did any defendants intentionally enter or cause another person to enter Edward Hamline's property? *No*

If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

    3.     Did any defendants enter the property without Edward Hamline's permission?

    \_\_\_\_\_Yes
    \_\_\_\_\_No

If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

    4.     Was defendant's conduct a substantial factor in causing harm to Edward Hamline?

    \_\_\_\_\_Yes
    \_\_\_\_\_No

If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

    5.     As to each of the properties at issue in this case, were all of them under the legal control of defendants at the time of the alleged trespass?

_____ Yes   _____ No

If your answer to question 5 is yes, stop here, answer no further questions, and have the presiding juror sign and date this form.

    6.    What are Edward Hamline's damages?

Economic Loss:    $_____

Noneconomic Loss:  $_____

TOTAL          $_____

Signed:  Presiding Juror _[signature]_

Dated:  _7/22/2016_

After this verdict form has been signed, notify the bailiff that you are ready to present your verdict in the courtroom.

Case: 17-10828   Doc# 286-13   Filed: 05/25/18   Entered: 05/25/18 15:24:02   Page 43 of 46

## PROOF OF SERVICE

The undersigned declares:

I am over the age of 18 years. On **August 10, 2016,** I served the following document:

**- JUDGMENT ON JURY VERDICT**

on the following parties named below:

FLOYD E. SQUIRES, III, BETTY SQUIRES, ANDREW ROOT, DARLA CRAIG, and
EDWARD "EDDIE" HAMLINE

by the following method(s) of service:

**XX**     **By Personal Delivery** of the original or true copy thereof to the following address:

ADDRESSEES:

**Carlton Floyd
The Floyd Law Firm
819 Seventh Street
Eureka, CA 95501**

I declare under penalty of perjury under the laws of the state of California that the foregoing is
true and correct. Executed on **August 10, 2016,** at Eureka, California.

Lindsey Salizzoni

**PROOF OF SERVICE**

F.R.C.P. 5 / C.C.P. 1013a (3)/ Rules of Court, Rule 2060

I am a resident of, or employed in the County of Los Angeles, State of California. I am over the age of 18 years old and not a party to the within action. My business address is 2716 Ocean Park Blvd., Suite 3010, Santa Monica, California 90405.

On **September 9, 2016** I served the following listed document(s), by method indicated below, on the parties in this action: **Prior Receiver Mark S. Adams' Reply to Respondents Opposition to Motion for Interim Fee Order; Declaration of Andrew Adams**

**\*\*\*SEE ATTACHED SERVICE LIST\*\*\***

☐     **BY U.S. MAIL**
By placing ☐ the original / X a true copy thereof enclosed in a sealed envelope(s), with postage prepaid, addressed as per the attached service list, for collection and mailings at the City of Burbank in Burbank, California following ordinary business practices. I am readily familiar with the firm's practice for collection and processing of the document for mailing. Under that practice, the document is deposited with the United States Postal Service on the same day in the ordinary course of business. I am aware that upon motion of any party served, service is presumed invalid if the postal cancellation date or postage meter date on the envelope is more than one day after date of deposit for mailing contained in this affidavit.

☐     **BY ELECTRONIC SERVICE**
**(via electronic filing service provider)**
By electronically transmitting the document(s) listed above to LexisNexis File and Serve, an electronic filing service provider, at www.fileandserve.lexisnexis.com pursuant to the Court's _____ Order mandating electronic service. *See* Cal.R.Ct.R. 2053, 2055, 2060. The transmission was reported as complete and without error.

X     **BY OVERNIGHT DELIVERY**
By delivering the document(s) listed above in a sealed envelope(s) or package(s) designated by the express service carrier, with delivery fees paid or provided for, addressed as per the attached service list, to a facility regularly maintained by the express service carrier or to an authorized courier or driver authorized by the express service carrier to received documents.

☐     **BY ELECTRONIC SERVICE**
**(to individual person)**
By electronically transmitting the document(s) listed above to the email address(es) of the person(s) set forth on the attached service list. The transmission was reported as complete and without error. *See* Rules of Court, rule 2060.

☐     **BY PERSONAL SERVICE**
    ☐By personally delivering the document(s) listed above to the offices at the addressee(s) as shown on the attached service list.
    ☐By placing the document(s) listed above in a sealed envelope(s) and instructing a registered process server to personally deliver the envelope(s) to the offices at the address(es) set forth on the attached service list. The signed proof of service by the registered process server is attached.

☐     **BY FACSIMILE**
By transmitting the document(s) listed above from Mark Adams, Esq., facsimile (310) 471-8181to the facsimile machine telephone number(s) set forth on the attached service list. Service by facsimile transmission was made pursuant to agreement of the parties, confirmed in writing.

X     STATE     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐     FEDERAL     I declare under penalty of perjury under the laws of the United States that I am employed in the office of a member of the bar of this court at whose direction the service is made.

Christmas Myers
Type or Print Name

Signature

PROOF OF SERVICE

**SERVICE LIST**

[City of Eureka v. Floyd Squires et al, and Does 1-60., Case No. DR110040]

Attorneys for Petitioner, City of Eureka

Dean J. Pucci, Esq.

JONES & MAYER

3777 N. Harbor Blvd.

Fullerton, CA 92835

Tel: (714) 446-1400

Fax: (714) 446-1448

Email: djp@jones-mayer.com

Attorney for Respondents

Bradford C. Floyd

FLOYD LAW FIRM

819 Seventh Street

Eureka, CA 95501

Tel. (707) 445-9754

Fax: (707) 445-5915

Email: floydlaw@suddenlinkmail.coms

Receiver

Jeffrey Smith

PO Box 6218

Eureka, CA 95502

*(service by First-Class US Mail only)*

PROOF OF SERVICE