MARK S. ADAMS, SB#68300
ANDREW F. ADAMS, SB#275109
California Receivership Group
2716 Ocean Park Boulevard, Suite 3010
Santa Monica, CA 90405
Tel.: (310) 471-8181
Fax: (310) 471-8180
madams@calreceivers.com
Creditor and State Court Receiver

# IN THE UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SANTA ROSA DIVISION

| | |
|---|---|
| IN RE:<br><br>FLOYD E. SQUIRES, III and<br>BETTY J. SQUIRES,<br><br>        Debtors. | Case No: 17-10828 WJL<br><br>Chapter 11<br><br>**MARK ADAMS AND CALIFORNIA RECEIVERSHIP GROUP'S OBJECTION TO DEBTORS' EX PARTE APPLICATION TO EMPLOY BRADFORD FLOYD AS SPECIAL COUNSEL**<br><br><u>No Hearing Scheduled</u> |

### I.    INTRODUCTION

State Court Receiver and Creditor Mark Adams and California Receivership Group and assignees (collectively "CRG") hereby submit this Objection ("Objection") to Debtors' Ex Parte Application for Entry of Order Authorizing Employment of Bradford Floyd as Special Counsel ("Application," Doc# 367, August 22, 2018).

Neither Mr. Floyd (in his ex parte application) nor Mr. Squires have made it easy to find the information demonstrating that Mr. Floyd has an "adverse interest" as well as not being "disinterested" but Mr. Floyd's claim of almost $800,000 in unpaid fees by the Squires as well as the deed of trust he holds on a number of the properties in this case demonstrate clearly that he is

1

**CRG'S OBJECTION TO DEBTORS' EX-PARTE APPLICATION TO EMPLOY
BRADFORD FLOYD AS SPECIAL COUNSEL**
Case: 17-10828   Doc# 369   Filed: 08/28/18   Entered: 08/28/18 11:41:25   Page 1 of 9

barred from serving as Special Counsel in this matter under applicable state and federal law. Beyond that, Mr. Floyd is in large part the reason for this very contentious proceeding and so is no friend of the Debtors' Estate nor of any of the creditors herein and should be barred on that basis also.

The Squires of course are entitled to retain Mr. Floyd (and pay his fees) out of their own funds not encumbered by the bankruptcy proceeding.

## II. APPLICABLE LAW

The Application is subject to this Court's review under 11 U.S.C. § 327. Section 327(a) provides, "[e]xcept as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title. (emphasis added)" This applies equally to trustees and a debtor in possession. *In re Shirley*, 134 B.R. 940, 943 (B.A.P. 9th Cir. 1992). Further, the term "disinterested person" is defined as a person that "is not a creditor." 11 U.S.C. § 101(14)(A). A disinterested person "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(C). The appropriate standards are not met here, thus this Court must deny the request.

Mr. Floyd in his original ex parte application[1] alleges that his fee claim and deed of trust complied with California Rule of Professional Conduct 3-300 et seq. It goes without saying that Mr. Floyd doesn't even pretend to submit any documentary evidence that that Rule was complied with either by Mr. Floyd or Mr. Squires or that, as alleged in the Declaration, Mr.

---

[1] See Doc# 90 (Declaration of Brad Floyd) filed 1/29/18 a copy of which is attached as **Exhibit 1** to the concurrently filed Declaration of Mark Adams.

2

**CRG'S OBJECTION TO DEBTORS' EX-PARTE APPLICATION TO EMPLOY BRADFORD FLOYD AS SPECIAL COUNSEL**

Floyd "fully disclosed" the terms of his deed of trust either to Mr. Squires, to the Examiner or to the bankruptcy estate's creditors. There is simply no evidentiary support for any such assertion.

But Mr. Floyd also seems to misunderstand the governing law. Even assuming compliance with the CRPC (again unproven) the law is that the Bankruptcy Court rules independently of such professional rules in finding either or both an adverse interest or whether the professional is not disinterested, see In Re Bell 212 B.R. 654 (1997) Both grounds for denying the Ex Parte Application apply here.

### III. BRADFORD FLOYD IS NOT DISINTERESTED

Bradford Floyd should not even be considered to be special counsel as he is not disinterested and has a clear conflict of interest with the Debtors per 11 U.S.C. § 101(14)(A). Further, his involvement in the state court action has done nothing but cause delays, burden the other parties and prevent final resolution of the issues presented there. Below are some of the most pressing and apparent issues based on the Application.

Appointment of a Special Counsel first requires a finding by the Court that the Counsel does not have an adverse interest and also that such a proposed Special Counsel is disinterested. Only then can the Court exercise its discretion in determining whether such a Special Counsel is warranted by the facts, Collier on Bankruptcy ¶ 327.04 (16th Ed. 2010). "It is for the court to decide whether the attorney's proposed interest carries with it a sufficient threat of material adversity to warrant prophylactic action (say, disqualification or disgorgement or invalidation of a lien). Sincerity or protestations of good faith, no matter how genuine, will not be enough. The test must be more an objective one. The question is not necessarily whether a conflict exists-- although an actual conflict of any degree of seriousness will obviously present a towering obstacle--but whether a potential conflict, or the perception of one, renders the lawyer's interest materially adverse to the estate or the creditors." *In re Martin*, 817 F.2d 175, 182 (1st Cir. 1987).

"Usually, professionals with a potential conflict of interest are not approved for employment." *In re Roper & Twardowsky, LLC*, 566 B.R. 734, 755 (Bankr. D.N.J. 2017).

There is no dispute that Mr. Floyd is a creditor in the case, and that alone prevents him from qualifying as a disinterested person under §101(14). Not only is Mr. Floyd not a disinterested person, Mr. Floyd also holds an interest that is adverse to the estate. "An 'adverse interest… is usually defined to mean 'any economic interest that would tend to lessen the value of the bankruptcy or that would create either an actual or potential dispute in which the estate is a rival claimant.'" *In re Roper & Twardowsky, LLC*, 566 B.R. at 754–55. (*citing In re eToys, Inc*., 331 B.R. 176, 189 (Bankr. D. Del. 2005).

Mr. Floyd and Mr. Squires have done their best to bury the information about Mr. Floyd's almost $800,000 claim against the bankruptcy estate. For example, the Proof of Claim submitted by Mr. Floyd on July 3, 2018 is signed by Mr. Floyd as a "creditor".

That claim would seem to be dispositive on Mr. Floyd's status. Beyond that, however, he claims the amount due is $516,475 and denies that any portion of the claim is secured by a lien on property (see page 2, number 9 of Bradford Floyd's Proof of Claim, attached as **Exhibit 2** to the concurrently filed Declaration of Mark Adams). Even Mr. Squires acknowledges that Mr. Floyd is a secured creditor, see page 7 of Doc# 144 (Declaration of Floyd Squires attached as **Exhibit 3** to the concurrently filed Declaration of Mark Adams).

Respectfully, Mr. Floyds's assertion that his claim is not "secured" is simply false as is demonstrated by the Debtors' own pleadings. Attached to the concurrently filed Declaration of Mark Adams as **Exhibit 4** is p. 32 of Doc# 24 filed in this Petition: Debtors' Summary of Assets and Liabilities. Despite Mr. Floyd's allegations above, the <u>Summary clearly states that Mr. Floyd holds deeds of trust on at least 2 of Mr. Squires' properties</u>.[2]

---

[2] It appears that Mr. Floyd might hold more deeds of trust, see **Exhibit 5** attached to the Declaration of Mark Adams. This Property Profile shows that Bradford Floyd held or holds a deed of trust on 225 Wabash Ave. Conceivably that deed of trust was reconveyed but there is no record of that happening in the Profile. Also included in **Exhibit 5** is page 38 of Doc# 24 filed in this Petition: Debtors' Summary of Assets and Liabilities referring to this property.

Mr. Floyd clearly has adverse interests and is not disinterested. Furthermore the false statements denying that he has a "secured interest" in Squires' properties raise a legitimate question about his credibility on any subject relating to this proceeding. That in itself is the grounds to deny the ex parte.

Presumably Mr. Floyd wishes to be paid the $516,475.00 (or almost $800,000.00 he claims elsewhere) he claims he is owed by Debtors in his July 3, 2018 Claim No. 61, ideally with interest. And presumably Mr. Chandler will attempt to negotiate payoffs to creditors that are less than the full amount claimed or do the same in the chapter 11 plan. If Mr. Floyd's claims were to be paid in full (or even in part) it certainly "would tend to lessen the value of the bankruptcy" or "would create either an actual or potential dispute in which the estate is a rival claimant." Therefore Mr. Floyd cannot be employed under § 327(a).

Section 327(e) provides that the trustee (or debtor in possession) may employ an attorney that has represented the debtor, for a special purpose: (A) "if in the best interest of the estate;" *and* (B) "if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. 327(e) (emphasis added). Section 327(c) provides that the court "shall disapprove" employment of a person who was employed by or represented a creditor, if: (A) there is an objection by another creditor; and (B) there is an actual conflict of interest.

Here, Mr. Floyd *himself* is the creditor, and he is "employing" or "representing" himself, and Mr. Adams is "another creditor" making an objection. The phrase "actual conflict of interest" is defined on a case-by-case basis using the specific facts of the case. *In re Roper & Twardowsky, LLC*, 566 B.R. at 754–55. The specific facts here show that the Debtors have reported to the court in their schedules that they owe Mr. Floyd $135,000.00, but Mr. Floyd filed Claim No. 61 stating that he is owed $516,475.00. This is certainly a conflict of interest. Therefore, Mr. Floyd must be disapproved by the court under §327(c).

The court in *In re Running Horse, L.L.C.*, 371 B.R. 446 (Bankr. E.D. Cal. 2007) explained:

> The language of § 327(e) sets up a three-prong test for the employment of special counsel. First, the employment may only be authorized for a "specified special purpose" other than "conducting the case." The "special purpose" must be unrelated to the debtor's reorganization and must be "explicitly defined or described in the application seeking approval of the attorney's employment." 3 Collier on Bankruptcy (15th Ed. Rev.) ¶ 327.04[9][d] (2006).
> The second and third prongs of the "special counsel" test are dependent upon the first. Once the purpose for special counsel's employment is adequately and specifically defined, then the debtor must show that the proposed attorney or law firm "does not represent or hold any interest adverse to the debtor or to the estate" with respect to the specified purpose of the proposed employment. The Debtor must also show that the employment of special counsel for a specified purpose is in the "best interest of the estate."

*Id.* at 451.

### IV. MR. FLOYD IS IN LARGE PART WHY THIS PROCEEDING IS PENDING. HE SHOULD BE BARRED FROM TRYING TO DO FURTHER DAMAGE EITHER TO DEBTORS' OR THEIR CREDITORS

It would hardly be in the best interest of the estate to employ Mr. Floyd as special counsel in the bankruptcy. "In the best interest of the estate" means "property of the estate is threatened and the need for services is real. Employment cannot be based on some 'hypothetical or speculative benefit.'" *In re Roper & Twardowsky, LLC*, 566 B.R. at 752. Here, although the Debtors' properties are subject to a receivership action in the state court, that action has been automatically stayed by the bankruptcy, and although CRG filed a relief from stay motion to litigate in a non-bankruptcy forum, that will not come for hearing until October 4, 2018. Indeed, the City is trying to resolve the multitude of problems with the Debtors' properties within the framework of the bankruptcy. Therefore, at this time, the property of the estate is not "threatened," and the "need for services" is not "real."

Moreover, even if the need for services was real, Mr. Floyd would be the last attorney the Debtors should hire, if they were truly operating in the "best interest of the estate." The Debtors

6
**CRG'S OBJECTION TO DEBTORS' EX-PARTE APPLICATION TO EMPLOY BRADFORD FLOYD AS SPECIAL COUNSEL**
Case: 17-10828    Doc# 369    Filed: 08/28/18    Entered: 08/28/18 11:41:25    Page 6 of 9

argue that Mr. Floyd has knowledge of the receivership action, but that is only because his handling of the action has been so misguided that it has produced disastrous results, including the action that precipitated the Debtors' filing of the present bankruptcy.[3] As shown in the attached Superior Court Order (**Exhibit 6**), Mark Adams of CRG was the Court Appointed Receiver for Debtors properties, charged with remediating them because they had serious and extensive health and safety code violations twice in 2011. In that role, Adams incurred fees and expenses of $15,317.00, then 10 times that for defense costs in the misguided, abusive tort action that went to trial in 2016. Further, Adams was granted a first position lien on 26 of Debtors' properties, and after Debtors refused to pay Adams as ordered by the court, he was forced to foreclose on Debtors' properties, which led Debtors to file this bankruptcy.

Based on Mr. Floyd's previous representation and results, it is not in the best interest of the estate for him to represent Debtors in the state court receivership action. In the interest of the estate and in the interest of creditors, the court should require Debtors to hire counsel that will work with the City of Eureka to ensure that Debtors' properties are remediated in a manner that is also cost-efficient for the estate, and will not incur excessive legal fees that could compromise repayment of creditors.

The second requirement of § 327(e) is that the potential special counsel "does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." This is the same analysis as briefed above as to 11 U.S.C. § 101(14)(A). Mr. Floyd and Debtors cannot agree on what is owed, and if the larger amount is to be believed, then almost no lawyer in America could be counted on to be unbiased

---

[3] Floyd astonishingly claims that he "earned" almost $800,000 fighting with the City of Eureka. A receiver having been appointed three different times in that case obviously raises an estate claim AGAINST Mr. Floyd, not in his favor. And it is worth noting that it was the specious case he filed, then dragged on for two years before a jury in less than three hours found against Squires and in my favor. Furthermore, the super priority lien approved by Judge Reinholtsen was in large part for my fees and costs in defending that case. Mr. Floyd wasted everyone's time and his client's money. That is not a reason to reward him by appointment as Special Counsel.

7

**CRG'S OBJECTION TO DEBTORS' EX-PARTE APPLICATION TO EMPLOY BRADFORD FLOYD AS SPECIAL COUNSEL**

with over half a million dollars in fees at issue. These reasons all require the Court to decline the request for the estate to retain the services of Mr. Floyd.

## V. THIS APPLICATION IS A WASTE OF ESTATE FUNDS

Debtors are again using estate funds to try to settle a decade-old score. Debtors' ability to harass CRG and use litigation as an intimidation tactic ended the day they filed a Petition and the estate became a separate entity. Debtors and proposed special counsel Bradford Floyd have too much emotion tied up in this matter. The civil trespass suit they brought against CRG in *Squires v. Adams*, DR110803, which went to a jury trial and was laughed out of court, is emblematic of this. This Court should not allow Debtors to continue to avail themselves of the protections brought by their bankruptcy petition, but not preserve the (quickly dwindling) estate for creditors by spending money on emotional death matches.

It would be one thing if the Examiner was asking for this, because her role in this matter is clear and she does not carry years of baggage or the same enmity that drives Debtors. Debtors' current counsel David Chandler can continue to represent them in this matter. Chandler is an experienced attorney in this Court and certainly in this field. This Court has faith in him to act appropriately and not confuse his obligations here. However, Mr. Floyd has no such track record, and in fact his work in the state court proceedings, as discussed below, shows the opposite. Bringing in Bradford Floyd as special counsel just asks for that line to disappear.

## VI. IMPROPER FOR AN EX PARTE

The substance of this Application is improper for an Ex Parte. Debtors' cannot try and piggyback on having a state court attorney for certain issues now represent them in a substantial matter separate from what could have ever been discussed seven plus months ago. If the Court does not wish to outright reject this Application, it could require Debtors to brief it, or set it for hearing when CRG's Motion for Relief from the Automatic Stay is heard on October 4, 2018.

8
**CRG'S OBJECTION TO DEBTORS' EX-PARTE APPLICATION TO EMPLOY BRADFORD FLOYD AS SPECIAL COUNSEL**
Case: 17-10828   Doc# 369   Filed: 08/28/18   Entered: 08/28/18 11:41:25   Page 8 of 9

## VII. CONCLUSION

For the reasons stated herein, CRG requests that the Court deny the Debtors' Ex Parte Application to Employ Special Counsel.

Dated: August 28, 2018           /s/ Andrew F. Adams
                                 California Receivership Group